**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NASHAILY ORTIZ, ISAURA LOPEZ, RUBEN LEMUS NAJARRO, NASHEMIR ORTIZ, ADRIANNA GAMBOA, STEVEN ALLICOTT, ROBERTO ROSARIO, JR., and STEPHANIE BUNDRICK, on behalf of themselves and others similarly situated, | Case No.: 1:22-cv-08957-JLR-GS |
| Plaintiffs, | |
| v. | |
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., CE SOLUTIONS GROUP, LLC, CE SOLUTIONS INC., CE FLAGGING PLUS CORP., CE RESERVE CORP., ARGANI INC., NYC 2WAY INTERNATIONAL LTD. d/b/a CTG CARS LLC, CONCORD LIMOUSINE INC., CONCORD LIMOUSINE 1, LLC, MARVELOUS MARK TRANSPORTATION CO., INC., A & M TRANSPORT TRANSPORS INC., 23 WEST GROUP INC., JEANNINE NAPOLEONE-COLBERT, in her individual and professional capacities, HASSAN SABLINI, in his individual and professional capacities, and NABIH KOUBAISSAY a/k/a NABIL SIMBA, in his individual and professional capacities, | |
| Defendants. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY...................................................................................................... 2

RELEVANT FACTS .................................................................................................................. 3

I.     BACKGROUND .................................................................................................... 3

II.    JOINT EMPLOYMENT AND CONTROL OVER EMPLOYEES' WORK ................... 5

      A.    Direction and Control over Shift Schedules ................................................. 5

      B.    Direction and Control over the Manner of Employees' Work ............................. 8

      C.    Hiring, Firing, and Discipline of Employees ....................................................... 11

      D.    Control over Employees' Wages ........................................................................ 13

      E.    Maintenance of Employee Records ..................................................................... 14

III.    FAILURE TO PAY OVERTIME WAGES THROUGH
       MISCLASSIFICATION OF EMPLOYEES AS OVERTIME-EXEMPT ...................... 15

IV.    LATE PAYMENT OF WAGES............................................................................ 16

ARGUMENT .......................................................................................................................... 17

I.     CONDITIONAL CERTIFICATION IS APPROPRIATE ......................................... 17

      A.    The FLSA's Opt-In Requirement and the Need for Expedited Notice................ 17

      B.    The Two-Step Certification Process for FLSA Collective Actions..................... 18

      C.    Plaintiffs Have Made the Required Showing That They and the
          Members of the FLSA Collective Are Similarly Situated .................................... 19

      D.    The Underlying Merits of Plaintiffs' Claims Including Joint Employer
          Liability Are Irrelevant at the Conditional Certification Stage ........................... 21

II.    THE COURT SHOULD AUTHORIZE PROMPT NOTICE OF THE
       INSTANT MATTER TO THE FLSA COLLECTIVE .......................................... 23

      A.    Expedited Notice and Disclosure of Contact Information Is Necessary.............. 23

      B.    Plaintiffs' Proposed Notices Are Appropriate in All Respects............................ 23

III.    EQUITABLE TOLLING SHOULD BE GRANTED TO PROTECT
       THE RIGHTS OF THE FLSA COLLECTIVE .................................................. 27

CONCLUSION....................................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Ballast v. Workforce7 Inc.*,
   No. 20 Civ. 3812 (ER), 2021 WL 5999202 (S.D.N.Y. Dec. 20, 2021) ............................22, 24

*Cabrera v. Stephens*,
   No. 16-CV-3234 (ADS) (SIL), 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) ....................27

*Chowdhury v. Duane Reade, Inc.*,
   No. 06 Civ. 2295(GEL), 2007 WL 2873929 (S.D.N.Y. Oct. 2. 2007) ...................................20

*Cohen v. Gerson Lehrman Grp., Inc.*,
   686 F. Supp. 2d 317 (S.D.N.Y. 2010) ...................................................................................20

*Cruz v. Ham N Eggery Inc.*,
   No. 15-CV-03228 (JBW)(MDG), 2016 WL 4186967 (E.D.N.Y. Aug. 8, 2016) ..................22

*Cunningham v. Electronic Data Systems Corp.*,
   754 F. Supp. 2d 638 (S.D.N.Y. 2010) ...................................................................................19

*Cuzco v. Orion Builders, Inc.*,
   477 F. Supp. 2d 628 (S.D.N.Y. 2007) ...................................................................................22

*Enriquez v. Cherry Hill Mkt. Corp.*,
   No. 10-CV-5616 (FB)(ALC), 2012 WL 440691 (E.D.N.Y. Feb. 10, 2012) .........................25

*Fonseca v. Dircksen & Talleyrand Inc.*,
   No. 13 Civ. 5124(AT), 2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014) ......................17, 19, 22

*Gaspar v. Personal Touch Moving, Inc.*,
   No. 13-cv-8187 (AJN), 2014 WL 4593944 (S.D.N.Y. Sept. 15, 2014) .................................27

*Gurrieri v. County of Nassau*,
   16-CV-6983 (ADS)(SIL), 2019 WL 2233830 (E.D.N.Y. May 23, 2019) ..............................29

*Hallissey v. Am. Online, Inc.*,
   No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ................................20

*Hernandez v. Immortal Rise, Inc.*,
   No. 11-CV-4360(RRM)(LB), 2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) .......................22

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) ........................................................................................18

*Huer Huang v. Shanghai City Corp*,
  No. 19-cv-7702(LJL), 2020 WL 5849099 (S.D.N.Y. Oct. 1, 2020)......................................26

*Iriarte v. Café 71, Inc.*,
  No. 15 Civ. 3217 (CM), 2015 WL 8900875 (S.D.N.Y. Dec. 10, 2015)...............................28

*Jackson v. N.Y. Tel. Co.*,
  163 F.R.D. 429 (S.D.N.Y. 1995) .........................................................................................19

*Jian Wu v. Sushi Nomado of Manhattan, Inc.*,
  No. 17-cv-04661(PGG)(DF), 2019 WL 3759126 (S.D.N.Y. July 25, 2019) ........................26

*Johnson v. Carlo Lizza & Sons Paving, Inc.*,
  160 F. Supp. 3d 605 (S.D.N.Y. 2016)..................................................................................23

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) .........................................................................................29

*Lynch v. United Services Auto. Ass'n*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007)......................................................................18, 19, 22

*Mark v. Gawker Media LLC*,
  No. 13-cv-4347(AJN) 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014)....................................26

*Martin v. Sprint/United Mgmt. Co.*,
  No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)....................................25

*Mendoza v. Ashiya Sushi 5, Inc.*,
  12 CIV. 8629 (KPF), 2013 WL 5211839 (S.D.N.Y. Sept. 16, 2013)............................18, 25

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)........................................................................................18, 19, 21

*Pippins v. KPMG LLP*,
  No. 11-cv-0377(CM)(JLC), 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)...........................25, 27

*Qiang Lu v. Purple Sushi Inc.*,
  447 F. Supp. 3d 89 (S.D.N.Y. 2020)....................................................................................26

*Qing Tian Zhuo v. Jia Xing 39th Inc.*,
  No. 14-Cv-2848 (SHS), 2015 WL 1514950 (S.D.N.Y. Apr. 1, 2015) .................................20

*Ramos v. PJJK Rest. Corp.*,
  No. 15-cv-5672 (PKC), 2016 WL 1106373 (S.D.N.Y. Mar. 10, 2016) ................................23

*Ross v. No Parking Today, Inc., et al.*,
  192 N.Y.S.3d 872 (N.Y. Sup. Ct. 2023) ..............................................................................30

iii

*Schaefer v. M & T Bank Corp.*,
    122 F. Supp. 3d 189 (S.D.N.Y. 2015) ..............................................................27, 28

*Shajan v. Barolo, Ltd.*,
    No. 10 Civ. 1385(CM), 2010 WL 2218095 (S.D.N.Y. Jun. 2, 2010) ......................................22

*Ting Qiu Qiu v. Shanghai Cuisine, Inc.*,
    No. 18 Civ. 5448(ER), 2019 WL 6002371 (S.D.N.Y. Nov. 14, 2019) ................................26

*Varghese v. JP Morgan Chase & Co.*,
    No. 14 Civ. 1718 (PGG), 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) ..........................26, 27

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011) .................................................................25

*Yahraes v. Rest. Assocs. Events Corp.*,
    No. 10-CV-935 (SLT), 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011) ......................................28

*Zaldivar v. JMJ Caterers, Inc.*,
    166 F. Supp. 3d 310 (E.D.N.Y. 2016) .................................................................20

## Statutes

29 U.S.C. § 255(a) ............................................................................27

FLSA................................................................................................ *passim*

Plaintiffs Nashaily Ortiz ("Nashaily"), Isaura Lopez ("Lopez"), Ruben Lemus Najarro ("Najarro"), Nashemir Ortiz, Adrianna Gamboa, Steven Allicott ("Allicott"), Roberto Rosario, Jr. ("Rosario"), and Stephanie Bundrick ("Bundrick") (together "Plaintiffs"), by and through their undersigned counsel, Faruqi & Faruqi, LLP, hereby submit this memorandum of law in support of their motion for conditional certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), equitable tolling of the statute of limitations, Court-facilitated notice to similarly situated persons, and expedited disclosure of contact information.

## PRELIMINARY STATEMENT

Plaintiffs allege that Consolidated Edison Company of New York, Inc. ("Con Edison"), CESG Defendants,[1] and the Subcontractors[2] (together, "Defendants") engage in a common policy and practice of violating the FLSA by denying them and all similarly situated Spotters and Flaggers overtime and timely payment of wages. Plaintiffs seek conditional certification of the proposed FLSA Collective and dissemination of notice to the members thereof. To conditionally certify a collective action under the FLSA, Plaintiffs need only make a "modest factual showing" that they and the other members of the proposed FLSA Collective were subjected to Defendants' common unlawful policies and practices.

Plaintiffs have easily satisfied this requirement. Indeed, the allegations in the Second Amended Complaint (*see* ECF No. 210), declarations and documentary evidence from seven Named Plaintiffs and two opt-in plaintiffs (*see* Declaration of Camilo M. Burr ("Burr Decl."), Exhibits[3] 2-10)—including, *inter alia*, timesheets and text messages concerning Defendants'

---

[1] The term "CESG Defendants" refers to CE Solutions Group LLC, CE Solutions, Inc., NYC 2Way International Ltd. d/b/a CTG Cars LLC, and Jeannine Napoleone-Colbert.
[2] The term "Subcontractors" refers to CE Flagging Plus Corp., CE Reserve Corp., Argani Inc., Concord Limousine Inc., Concord Limousine 1, LLC (together with Concord Limousine Inc., "Concord Defendants"), Marvelous Mark Transportation Co., Inc., A & M Transport Transpors Inc. ("A&M"), 23 West Group Inc. ("23 West"), Hassan Sablini, and Nabih Koubaissay a/k/a Nabil Simba ("Koubaissay").
[3] Unless otherwise noted, all references to exhibits to the Burr Decl. are cited as "Ex. __."

failure to pay overtime and timely wages, scheduling of shifts, determination of hours worked for payroll purposes, and detailing some of the other control exerted by Con Edison, CESG Defendants, and the Subcontractors over employees' work—clearly demonstrate Defendants' common policy and practice of failing to pay overtime and timely pay wages. Accordingly, in fulfillment of the broad remedial purposes of the FLSA, the Court should grant conditional certification as soon as possible to provide members of the proposed FLSA Collective an opportunity to stop the daily expiration of their claims for the wages that Defendants have unlawfully denied them.

Further, the Court should equitably toll the statute of limitations for all potential opt-in plaintiffs who comprise the FLSA Collective from the date Plaintiffs initiated this action until the close of any Court-ordered notice period. Equitable tolling is commonly granted in FLSA collective actions, and this case should be no exception. Given that Plaintiffs had diligently pursued conditional certification by filing their original motion for conditional certification less than one week after filing their Complaint, were twice ordered by the Court to re-file their original motion (*see* ECF Nos. 12, 205 at 2), that opt-in plaintiffs' claims will otherwise expire daily, and that Defendants cannot identify any prejudice they will suffer, equitable tolling is unquestionably appropriate here.

**PROCEDURAL HISTORY**[4]

On June 7, 2024, the Honorable Gary Stein issued a Report & Recommendation ("R&R"), recommending CESG Defendants' and Con Edison's motions to dismiss Plaintiffs' First Amended Complaint ("FAC") be granted and denied in part, and that Plaintiffs be afforded an opportunity

---

[4] For a complete summary of the case's procedural history from October 20, 2022 (its inception) through October 13, 2023 (when Plaintiffs filed their second motion for conditional certification), Plaintiffs respectfully refer the Court to Plaintiffs' second motion for conditional certification. *See* ECF No. 154 at 2-4.

to amend the FAC.  *See* ECF Nos. 100, 104, 202 at 88-89. On June 24, 2024, the Honorable Jennifer L. Rochon adopted the R&R, granted Plaintiffs' request to amend the FAC pursuant to the R&R, and denied Plaintiffs' second motion for conditional certification "as moot, without prejudice to refiling the motion no later than 60 days from the filing of the" Second Amended Complaint ("SAC").  *See* ECF Nos. 203, 205 at 2. On August 7, 2024, Plaintiffs filed their SAC, rendering October 7, 2024 as the deadline for Plaintiffs to refile this motion. *See* ECF No. 205 at 2; ECF No. 210; *See* Burr Decl. ¶ 23.

Lastly, since Plaintiffs filed their second motion for conditional certification on October 13, 2023 (ECF No. 154), four additional Flaggers and/or Spotters (together, "Employees" and each individually an "Employee") have opted into this action, bringing the total number of plaintiffs (including the Named Plaintiffs) to 25.  *See* ECF Nos. 5, 11, 15, 37, 52, 66-67, 95, 110, 126, 145, 148, 157, 179, 183; *See* Burr Decl. ¶ 24.

## RELEVANT FACTS

### I.    BACKGROUND

Plaintiffs are or were Spotters and/or Flaggers for Defendants.  *See* Burr Decl., Ex. 1 ("SAC") ¶¶ 347, 384, 396, 437, 443, 476, 510, 536, 570, 609; All Plaintiffs' Declarations[5] ¶ 3. Defendants employ Flaggers to redirect traffic away from and cordon off Con Edison jobsites and Spotters to ensure that Con Edison could access jobsites and reserve parking spaces for Con Edison vehicles. *Id.*; SAC ¶¶ 147-48.

As a condition of employment, Defendants require Employees take a brief flagging course and provide proof of completion.  *Id.* ¶¶ 227, 272, 275; All Plaintiffs' Declarations ¶ 4; Ex. 19 at

---

[5] "All Plaintiffs' Declarations" collectively refers to the Declaration of Named Plaintiffs Nashaily Ortiz ("Nashaily Decl."), Isaura Lopez ("Lopez Decl."), Ruben Lemus Najarro ("Najarro Decl."), Nashemir Ortiz ("Nashemir Decl."), Steven Allicott ("Allicott Decl."), Roberto Rosario, Jr. ("Rosario Decl."), Stephanie Bundrick ("Bundrick Decl."), as well as the Declarations of the opt-in plaintiffs Marvin Rosado ("Rosado Decl.") and Sanju Philip ("Philip Decl.").

1-2 (Lopez providing Napoleone-Colbert proof of Najarro's completion of the flagging course). To receive shifts, Con Edison, CESG Defendants, and the Subcontractors also require Employees to purchase steel-toed boots, jeans, safety vests, safety helmets, safety flags, traffic cones, tripods, and portable stop and "flagger ahead" signs. SAC ¶¶ 277, 279; All Plaintiffs' Declarations ¶ 5. Con Edison also provided Employees with, and directed them when and where to use, other equipment to ensure traffic safety at Con Edison jobsites, such as traffic cones, barricades, and portable "men at work" signs. SAC ¶ 278. Indeed, for Flaggers to receive shifts, they must wear proper attire and be fully equipped with all required tools and equipment. *Id.* ¶¶ 277, 279; All Plaintiffs' Declarations ¶ 5; Ex. 27 at 2 (message to all Flaggers regarding the appropriate attire and equipment to use).

Together, Con Edison, CESG Defendants, and the Subcontractors employ approximately 400 to 500 Employees at any given time. SAC ¶ 153; All Plaintiffs' Declarations ¶ 6. Con Edison, CESG Defendants, and the Subcontractors typically schedule Employees to work various shifts from Monday through Sunday, ranging anywhere from 4 to 24 hours. *Id.* ¶ 7; SAC ¶ 154. In total, Employees typically work five to seven days per week, for a total of anywhere from 20 to 100 hours each week, with some Employees working as many as 168 hours in a given week. *Id.* ¶ 155; All Plaintiffs' Declarations ¶ 7. Further, Con Edison, CESG Defendants, and the Subcontractors sometimes task Spotters with reserving parking space for Con Edison trucks ***for an entire week***, resulting in Spotters working approximately seven 24-hour shifts for a total of 168 hours in a given week. SAC ¶ 156; All Plaintiffs' Declarations ¶ 8; *see also* Nashemir Decl. ¶ 44.

Throughout the relevant time period, Plaintiffs had conversations with other Employees and each other, who confirmed that Defendants regularly denied overtime by paying them at a straight time rate for hours worked in excess of 40 hours in a single workweek or by failing to pay

them for all hours worked, and were paid wages after their regularly scheduled paydays.  SAC ¶¶ 378, 436, 475, 509, 535, 569, 608, 644; Nashaily Decl. ¶ 67; Lopez Decl. ¶ 66; Najarro Decl. ¶ 65; Nashemir Decl. ¶ 57; Allicott Decl. ¶ 56; Rosario Decl. ¶ 60; Bundrick Decl. ¶ 64; Rosado Decl. ¶ 57; Philip Decl. ¶ 59.  These common and unlawful pay practices are also confirmed by Plaintiffs' and other Employees' timesheets, written correspondence with Defendants, and other documents. *See* Exs. 15-43.

## II.      JOINT EMPLOYMENT AND CONTROL OVER EMPLOYEES' WORK

Con Edison, CESG Defendants, and the Subcontractor for whom an Employee works jointly employ all Flaggers and Spotters, and work in concert to control all aspects of their employment. SAC ¶¶ 161-66; All Plaintiffs' Declarations ¶ 9. Specifically, Con Edison, CESG Defendants, and the Subcontractor for whom an Employee works, maintain direction and control over those Employees by, *inter alia*: (i) assigning shifts; (ii) directing Employees to the location of Con Edison jobsites; (iii) supervising work performed at those jobsites; (iv) determining when Employees can take breaks; (v) dispersing and collecting timesheets; (vi) hiring and disciplining Employees who breach Con Edison's and CESG Defendants' standards or internal policies; (vii) determining Employees' method and hourly rates of pay; and (viii) maintaining Employee records, such as, *inter alia*, timesheets, IRS Form 1099s, spreadsheets and time reports, and other paperwork Defendants directed Plaintiffs to fill out upon their hiring. SAC ¶¶ 168-86, 195-96, 204, 208-10, 224-37, 243-55, 259-73; *see generally* All Plaintiffs' Declarations.

### A.      Direction and Control over Shift Schedules

First, Con Edison, CESG Defendants, and the Subcontractor(s) for whom an Employee works, maintain control and direction over that Employees' shifts.  SAC ¶¶ 166-67; All Plaintiffs' Declarations ¶ 10. Con Edison, CESG Defendants, and the Subcontractors require Employees to stay at jobsites operated by Con Edison for indefinite periods of time and at fixed locations.  SAC

¶ 149; All Plaintiffs' Declarations ¶ 11. The date, time, duration, and location of Employees' shifts are determined exclusively by Con Edison. SAC ¶ 150; All Plaintiffs' Declarations ¶ 12.

First, Con Edison directs CESG Defendants as to the number of Employees Con Edison requires at a given jobsite, the location of the jobsite where Employees are to report, and the date, time, and duration of the work. *Id.*; SAC ¶ 168. CESG Defendants' managers and/or administrative employees who work in CESG Defendants' office located at 259 Columbia Street, Brooklyn, New York 11231 (the "Office"), would then call Employees in the evening and assign them shifts at jobsites the following day. *Id.* ¶ 169; All Plaintiffs' Declarations ¶ 13. In the alternative, CESG Defendants direct their Subcontractors to call Employees and assign them shifts on behalf of Con Edison and CESG Defendants. *Id.*; SAC ¶ 170.

In the event an Employee does not get assigned a shift, CESG Defendants and the Subcontractors, on behalf of Con Edison, instruct Employees to call the Office directly or a hotline maintained and operated by CESG Defendants, to be placed in line for shifts as they become available. *Id.* ¶ 171; All Plaintiffs' Declarations ¶ 14. When Employees call the hotline, CESG Defendants, on behalf of Con Edison, instruct Employees to provide an identification number issued by CESG Defendants. *Id.* ¶¶ 14, 20; SAC ¶ 172; Ex. 18 at 1 ("Gustavo," a manager and/or employee of CESG Defendants, Argani Defendants, and Concord Defendants, instructing Lopez to call the hotline). When a shift becomes available, CESG Defendants' managers and/or administrative employees at the Office, notify Employees of the location of the Con Edison jobsite and the time at which Con Edison directed them to report. SAC ¶ 173; All Plaintiffs' Declarations ¶ 15.

Additionally, CESG Defendants and/or the Subcontractors, on behalf of Con Edison, also direct Employees to report to Con Edison's facilities to receive "standby shifts" located at: (i) 1560

Bruckner Boulevard, Bronx, New York 10473; (ii) 375 Broadway, Buchanan, New York 10511; and (iii) 315 Old Saw Mill River Road, Tarrytown, New York 10591. *Id.* ¶ 16; SAC ¶ 175. Upon arrival, CESG Defendants and/or the Subcontractors, on behalf of Con Edison, direct Employees to call the Office to notify CESG Defendants that they are available to receive a standby shift. *Id.* ¶ 176; All Plaintiffs' Declarations ¶ 16. CESG Defendants will then direct the Employee to wait in their vehicles for a Con Edison employee to assign them to a jobsite or for the Office to call them back and direct them to a Con Edison jobsite that day. *Id.*; SAC ¶ 177.

If Con Edison requires multiple days to complete work at a jobsite, Con Edison may request an Employee who previously worked at the jobsite to continue to work there on subsequent days. *Id.* ¶¶ 179, 235-36; All Plaintiffs' Declarations ¶ 17; Ex. 30 (text messages between Rosario and Jada Nesbitt ("Nesbitt"), a Con Edison supervisor, wherein Nesbitt directs Rosario to various jobsites). Further, in the event Con Edison completes work at a jobsite early, either a Con Edison supervisor directly notifies Employees of the location of a second jobsite—and occasionally a third jobsite—to work another shift, or the Office will call the Employee to inform them of the location of the second or third jobsite. All Plaintiffs' Declarations ¶ 18; SAC ¶ 180. Con Edison supervisors may also, either directly or through the CESG Defendants and/or the Subcontractors, instruct Employees to return to one of the three Con Edison facilities to wait to be assigned to another Con Edison jobsite; however, an Employee's shift concludes only after a Con Edison supervisor informs the Employee that their shift is completed. *Id.* ¶¶ 184-85; All Plaintiffs' Declarations ¶ 18. Additionally, if an Employee needs to call out from work or plans to take vacation, Defendants require them to get approval from one of CE Solution's managers. *Id.* ¶ 19. SAC ¶ 187.

Further, beginning in or around February 2021, Defendants have also utilized a proprietary smartphone application they had developed to allow Employees to check for available shifts by

logging in using a unique identification number issued to all Employees by CESG Defendants (the "Smartphone App") upon their hire.[6] *Id.* ¶¶ 188-90; All Plaintiffs' Declarations ¶ 20; Ex. 19 at 3-4 (Napoleone-Colbert directing Najarro, through Lopez, to use the Smartphone App). Since in or around March 2022, CESG Defendants, on behalf of Con Edison, began notifying Employees directly, or through the Subcontractors, to utilize the Smartphone App to check for available shifts, which also tracks, *inter alia*, Employees' locations and the time Employees arrive at a jobsite. *Id.* at 13 (Napoleone-Colbert sending Lopez a screenshot of the Smartphone App interface); All Plaintiffs' Declarations ¶ 20; SAC ¶¶ 189-91.

### B.    Direction and Control over the Manner of Employees' Work

Defendants also maintain direction, control, and supervision of the work performed by Employees. *Id.* ¶ 193; All Plaintiffs' Declarations ¶ 21. For example, upon arrival at a jobsite, Con Edison, CESG Defendants, and/or the Subcontractors instruct Employees to report to a Con Edison supervisor (who is also physically present on the jobsite), who then tasks the Employee with assignments and directs the Employee's work, including, inter alia, where to stand to direct traffic, where to erect signage and/or barricades, and which streets or sidewalks to close. *Id.* ¶ 22; SAC ¶ 194. CESG Defendants also assign its own supervisors to perform regular rounds of jobsites to, *inter alia*, monitor Employees' work, ensure Employees are dressed appropriately, and using proper traffic safety equipment. *Id.* ¶ 195; All Plaintiffs' Declarations ¶ 22.

Con Edison and CESG Defendants direct Employees to get permission from a Con Edison or a CESG Defendants' supervisor to take breaks during their shift. *Id.* ¶ 23; SAC ¶ 196. For example, if an Employee needs to use a restroom or take lunch, they must call the Office or get

---

[6] Since the filing of the SAC, Plaintiffs have discovered that Concord Defendants also utilize a smartphone application (the "Concord App") to, *inter alia*, assign Spotters shifts and notify Spotters of the location of Con Edison jobsites. *See* Ex. 41 (screenshots of the Concord App interface).

permission from a Con Edison or a CESG Defendants' supervisor before doing so. *Id.* ¶¶ 197-200. All Plaintiffs' Declarations ¶ 23.

Additionally, CESG Defendants and/or the Subcontractors, on behalf of Con Edison, issue Employees individually numbered timesheets marked "CE Solutions Group" with the Office's address and phone number.[7]  All Plaintiffs' Declarations ¶ 24; SAC ¶ 202; *see e.g.*, Exs. 15, 20, 37-38.  The timesheets are titled "Con Edison Flagging / Parking Location Timesheet" and contain instructions to Employees to "take a clear photo of this timesheet and send it to close@nyc2way.com at the completion of your job."  *Id.*; SAC ¶ 204; All Plaintiffs' Declarations ¶ 24. Upon arrival to the jobsite, Con Edison, CESG Defendants, and the Subcontractors required Employees to sign the timesheet, call the Office to clock-in, and then email their timesheets to close@nyc2way.com at the conclusion of their shifts to clock-out—which does not conclude until a Con Edison supervisor notifies them that their shift has ended. *Id.* ¶ 25; SAC ¶¶ 185, 206-07, 216.

Con Edison, CESG Defendants, and/or the Subcontractors also direct Employees to present the timesheet to a Con Edison supervisor for their signature to certify the number of hours the Employee worked that shift. *Id.* ¶ 208; All Plaintiffs' Declarations ¶ 26; *see e.g.*, Ex. 15. After obtaining Con Edison's approval, Employees then take a photograph of the timesheet and send it to: (i) the Office at close@nyc2way.com, in accordance with the instructions CESG Defendants give Employees on the timesheets, or (ii) the Subcontractor for whom the Employee works. SAC ¶¶ 209-10, 212; All Plaintiffs' Declarations ¶ 26; Ex. 17 (Lopez sending Sablini her timesheets); Ex. 35 (Allicott sending his timesheets to close@nyc2way.com). Con Edison, CESG Defendants,

---

[7] Concord Defendants also issue Employees similar timesheets, marked "Con Ed Reserve Parking Site Location Sign Off Sheet" with Concord Defendants' address and phone number.  SAC ¶ 203; Lopez Decl. ¶ 24; Najarro Decl. ¶ 24; Ex. 16.

and the Subcontractors used the timesheets and Smartphone App, to confirm, *inter alia*, Employees were physically present at jobsites, the number of hours Employees worked in order to process Employees' payroll, and/or to rectify any discrepancies regarding an Employee's hours worked or wages paid. *Id.* ¶ 27; SAC ¶ 223. Further, at the end of each pay period, and before Employees are paid, Con Edison, CESG Defendants, and the Subcontractors verify the number of hours Employees work by comparing separate time reports and/or spreadsheets maintained by each. *Id.* ¶¶ 214-15; All Plaintiffs' Declarations ¶ 28; Exs. 22, 25.

Beginning in or around May 2021, Con Edison, CESG Defendants, and the Subcontractors still directed Employees to call the Office to clock-in but directed Employees to upload photographs of their timesheets to the Smartphone App to clock-out. All Plaintiffs' Declarations ¶ 29; SAC ¶¶ 216-17. If an Employee fails to timely submit his or her timesheet through the Smartphone App after completing a shift, Con Edison and/or CESG Defendants can cancel the shift in the Smartphone App as if it was never worked by the Employee. *Id.* ¶ 218; All Plaintiffs' Declarations ¶ 29; Ex. 27 at 6-7 (Sablini warning Rosario that Con Edison will cancel a shift he worked if Rosario does not upload his timesheet to the Smartphone App).

In or around April 2023, Con Edison, CESG Defendants, and the Subcontractors, began requiring Employees to: (i) take photographs of, *inter alia*, street signs, the Con Edison truck assigned to a jobsite, themselves, and/or Employees' equipment to demonstrate that they were physically present at a given Con Edison jobsite; (ii) call the Office if a shift extended beyond its end time; and (iii) if a Con Edison crew was late to a jobsite, call the Office every hour until the Con Edison crew arrived. SAC ¶ 220; Allicott Decl. ¶ 29; Rosario Decl. ¶ 29; Philip Decl. ¶ 29.

C.    **Hiring, Firing, and Discipline of Employees**

Con Edison, CESG Defendants, and the Subcontractors also have the power to hire, fire, and discipline Employees for breaching their internal policies and standards.  SAC ¶ 224; All Plaintiffs' Declarations ¶ 30.

First, as part of the onboarding and hiring process, CESG Defendants, on behalf of Con Edison and the Subcontractors, direct Employees to the Office to be interviewed, and eventually hired. *Id.* ¶ 31; SAC ¶¶ 225-26. As part of the onboarding process, CESG Defendants: (i) instruct the Employee to fill out an IRS Form 1099 and paperwork with his or her personal information, including the Employee's bank account information for payroll purposes; (ii) make photocopies of the Employee's drivers' license and social security card; and (iii) direct the Employee to take a flagging course and purchase proper attire and equipment before they are allowed to work at Con Edison jobsites.  *Id.* ¶ 227; All Plaintiffs' Declarations ¶¶ 5, 31.

Additionally, if an Employee arrives late to a shift, leaves a jobsite without permission, or is not dressed and/or equipped properly, a Con Edison or CESG Defendants supervisor will notify the Office of the infraction and direct CESG Defendants and/or the Subcontractor regarding the appropriate discipline.  SAC ¶¶ 229-30; All Plaintiffs' Declarations ¶ 32; Ex. 21 at 1. Further, Con Edison supervisors report Employees to CESG Defendants if the hours they worked reflected on their timesheets submitted to the Smartphone App do not match the hours Con Edison supervisors note Employees worked during their shifts.  All Plaintiffs' Declarations ¶ 32; SAC ¶¶ 231-32; Ex. 31 at 2 (A Con Edison supervisor, "Roy," notifying Rosario that he must notify CESG Defendants when Employees timesheets do not match the hours they worked).

Employees may also be disciplined for: (i) failure to upload a photograph of their timesheet, the Con Edison truck assigned to a jobsite, themselves, or their equipment, to the Smartphone App; (ii) calling out after having been assigned a shift; or (iii) if they are working as a Spotter and leave

the jobsite absent permission from Defendants. SAC ¶¶ 233-34, 237; Nashaily Decl. ¶¶ 34-43; Lopez Decl. ¶¶ 34-42; Najarro Decl. ¶¶ 34-40; Nashemir Decl. ¶¶ 34-39; Allicott Decl. ¶¶ 36-37; Rosario Decl. ¶¶ 36-37; Bundrick Decl. ¶¶ 34-35; Rosado Decl. ¶¶ 34-35; Philip Decl. ¶¶ 34-35, 38-39; Ex. 35 at 7 ("Crystal," a manager and/or administrative employee of CESG Defendants, informing Allicott that he must upload photographs of his equipment to the Smartphone App or he "will not be able to get anymore work.").

. In the event of any policy violations, CESG Defendants, on behalf of Con Edison, will either directly discipline the Employee or will instruct the Subcontractor for whom the Employee works to discipline the Employee by, *inter alia*: (i) removing the Employee from the shift; (ii) suspending the Employee for a given period; or (iii) terminating the Employee's employment. SAC ¶ 234; All Plaintiffs' Declarations ¶ 33; *see also* Allicott Decl. ¶¶ 34-35.

Con Edison supervisors can also mandate that specific Employees work or not work a shift based on a Con Edison supervisor's prior dealings with the Employee. SAC ¶¶ 233, 235-36; Nashaily Decl. ¶ 44; Lopez Decl. ¶ 43; Najarro Decl. ¶ 41; Nashemir Decl. ¶ 40; Allicott Decl. ¶ 38; Rosario Decl. ¶ 38; Bundrick Decl. ¶ 39; Rosado Decl. ¶ 40; Philip Decl. ¶ 40; Ex. 30; Ex. 18 at 3 (Lopez informing Gustavo that "Scott Morris," a Con Edison supervisor, requested she and Najarro work with Scott Morris's crew the following morning).

Lastly, in or around May 2023, employees of CESG Defendants, including Napoleone-Colbert, directly or through the Subcontractors, began pressuring Employees to form their own corporations or businesses, through which Con Edison and CESG Defendants would pay Employees' wages, to solidify Employees' statuses as independent contractors and deprive them of the benefits afforded to employees, such as overtime pay.  SAC ¶ 238; Allicott Decl. ¶ 34; Rosario Decl. ¶ 35; Bundrick Decl. ¶ 36; Rosado Decl. ¶ 37; Philip Decl. ¶ 37. Employees who

refused later lost access to the Smartphone App, effectively terminating their employment. SAC ¶ 239; Allicott Decl. ¶ 35; Rosario Decl. ¶ 35; Bundrick Decl. ¶ 36; Rosado Decl. ¶ 37; Philip Decl. ¶ 37.

### D.    Control over Employees' Wages

Defendants also direct and control the manner in which Employees are paid.  SAC ¶ 243; Nashaily Decl. ¶ 45; Lopez Decl. ¶ 44; Najarro Decl. ¶ 42; Nashemir Decl. ¶ 41; Allicott Decl. ¶ 39; Rosario Decl. ¶ 39; Bundrick Decl. ¶ 40; Rosado Decl. ¶ 41; Philip Decl. ¶ 41.  Con Edison, CESG Defendants, and the Subcontractors establish hourly rates of Employees—$15.00 to $17.00 for Flaggers and $10.00 to $12.00 for Spotters—as well as Employees' pay periods.  *Id.*; SAC ¶¶ 244-46. If there are discrepancies regarding the number of hours Employees work, the Con Edison location where Employees are to report, or with the amount Employees are paid, Con Edison and the Subcontractors direct Employees to call the Office to rectify the issue(s).  *Id.* ¶ 247; Nashaily Decl. ¶ 46; Lopez Decl. ¶ 45; Najarro Decl. ¶ 43; Nashemir Decl. ¶ 42; Allicott Decl. ¶ 40; Rosario Decl. ¶ 40; Bundrick Decl. ¶ 41; Rosado Decl. ¶ 42; Philip Decl. ¶ 41.

As discussed *supra* § 2(B), Con Edison, CESG Defendants, and the Subcontractors use Employees' timesheets and the Smartphone App (and the website located at— https://ces.gtnetwork.com/login) to, *inter alia*, confirm the number of hours Employees worked, in order to process Employees' payroll or to rectify a discrepancy regarding an Employee's hours worked or wages paid. SAC ¶ 248; All Plaintiffs' Declarations ¶ 27. Once the hours Employees worked are accounted for, Con Edison then pays CESG Defendants an hourly rate for these hours, pursuant to the hourly unit prices set in the BPAs. *See* Ex. 29 at 4-5; SAC ¶ 251. As alleged in Plaintiffs' SAC, after receiving payment from Con Edison, CESG Defendants pay Employees through the Subcontractors at a straight time rate for each hour that they worked or did not pay them at all for certain hours worked.  *Id.* ¶¶ 251-53; Nashaily Decl. ¶¶ 49-51; Lopez Decl. ¶¶ 48-

50; Najarro Decl. ¶¶ 46-48; Nashemir Decl. ¶¶ 46-48; Allicott Decl. ¶¶ 43-45; Rosario Decl. ¶¶ 43-45; Bundrick Decl. ¶¶ 44-46; Rosado Decl. ¶¶ 45-47; Philip Decl. ¶¶ 45-47.

Defendants also direct and control the employment status of Employees by misclassifying Employees as independent contractors for shifts performed at Con Edison jobsites. SAC ¶¶ 256-57, 323; Nashaily Decl. ¶ 52; Lopez Decl. ¶ 51; Najarro Decl. ¶ 49; Nashemir Decl. ¶ 49; Allicott Decl. ¶ 46; Rosario Decl. ¶ 46; Bundrick Decl. ¶ 47; Rosado Decl. ¶ 48; Philip Decl. ¶ 48; Ex. 24 (Sablini stating Employees are classified as "w9" or independent contractors). To conceal this misclassification, Defendants improperly pay Employees on IRS Forms 1099, as opposed to IRS Forms W-2. SAC ¶ 258; All Plaintiffs' Declarations ¶ 31. Con Edison, CESG Defendants, and the Subcontractors also set Employees' one-week pay periods, spanning from Monday through Sunday, and have established a regularly scheduled pay day for all Employees. SAC ¶¶ 157-58, 333-34; Nashaily Decl. ¶¶ 58-59; Lopez Decl. ¶ 57; Najarro Decl. ¶ 55; Nashemir Decl. ¶ 54; Allicott Decl. ¶ 51; Rosario Decl. ¶¶ 47-48; Bundrick Decl. ¶¶ 48, 59; Rosado Decl. ¶ 53; Philip Decl. ¶ 53.

### E.    Maintenance of Employee Records

Con Edison, CESG Defendants, and the Subcontractors maintain all employment, personnel, and business records for Employees. SAC ¶ 259. For example, Con Edison, CESG Defendants, and/or the Subcontractors maintain: (i) onboarding paperwork that Employees are directed to fill out upon their hire; (ii) copies of Employees' drivers' licenses and social security cards; (iii) Employees' IRS Form 1099s (Ex. 27 at 13); (iv) photographs of, *inter alia*, Employees at Con Edison jobsites (Ex. 30 at 7-8; Ex. 43 (Najarro sending photographs to Gustavo and Sablini while working shifts at Con Edison jobsites for Concord Defendants)); (v) timesheets, which are used to process Employees' payroll (Exs. 15-16, 20, 33, 36-39); (vi) the Smartphone App and Concord App and Employees' login information for access to same; (vii) spreadsheets and/or time

reports to track the number of hours Employees work for payroll calculation purposes (Ex. 27 at 4-5, 10-11); (viii) Employees' flagging training certificates demonstrating the Employee completed the flagging course (Ex. 19 at 1-2); and (ix) Employees' COVID-19 vaccination cards, which were required for an Employee to work at a Con Edison jobsite.  SAC ¶¶ 260-63, 266-73; All Plaintiffs' Declarations ¶¶ 20, 24-29, 31.

## III.   FAILURE TO PAY OVERTIME WAGES THROUGH MISCLASSIFICATION OF EMPLOYEES AS OVERTIME-EXEMPT

Con Edison, CESG Defendants, and the Subcontractors engage in a common policy and practice of denying Plaintiffs and all other Employees overtime wages.  SAC ¶¶ 322, 358-62, 400-05, 447-52, 463-68, 490-96, 518-22, 549-54, 558-60, 586-87, 591-95, 597-99, 618-19, 622-26, 628-31; Nashaily Decl. ¶¶ 49-50; Lopez Decl. ¶¶ 48-49; Najarro Decl. ¶¶ 46-47; Nashemir Decl. ¶¶ 46-47; Allicott Decl. ¶¶ 43-44; Rosario Decl. ¶¶ 43-44; Bundrick Decl. ¶¶ 44-45; Rosado Decl. ¶¶ 45-46; Philip Decl. ¶¶ 45-46.  Again, this is accomplished through Con Edison's, CESG Defendants', and the Subcontractors' unlawful misclassification of Employees as independent contractors.  SAC ¶¶ 257, 323; Nashaily Decl. ¶ 52; Lopez Decl. ¶ 51; Najarro Decl. ¶ 49; Nashemir Decl. ¶ 49; Allicott Decl. ¶ 46; Rosario Decl. ¶ 46; Bundrick Decl. ¶ 47; Rosado Decl. ¶ 48; Philip Decl. ¶ 48.

As noted *supra* § 2(D), Con Edison, CESG Defendants, and the Subcontractors pay Flaggers at a rate of $15.00 to $17.00 per hour and pay Spotters at rates ranging from $10.00 to $12.00 per hour.  SAC ¶¶ 246, 325; Nashaily Decl. ¶ 45; Lopez Decl. ¶ 44; Najarro Decl. ¶ 42; Nashemir Decl. ¶ 41; Allicott Decl. ¶ 39; Rosario Decl. ¶ 39; Bundrick Decl. ¶ 40; Rosado Decl. ¶ 41; Philip Decl. ¶ 41. Con Edison, CESG Defendants, and the Subcontractors pay Employees at this same rate for all hours worked, even when those hours exceed 40 hours in a single workweek. SAC ¶¶ 328, 330; Nashaily Decl. ¶¶ 49-51; Lopez Decl. ¶¶ 48-50; Najarro Decl. ¶¶ 46-48;

Nashemir Decl. ¶¶ 46-48; Allicott Decl. ¶¶ 43-45; Rosario Decl. ¶¶ 43-45; Bundrick Decl. ¶¶ 44-46; Rosado Decl. ¶¶ 45-47; Philip Decl. ¶¶ 45-47. In other words, Con Edison, CESG Defendants, and the Subcontractors completely deny all Employees—some of whom work as many as 168 hours per week—any overtime compensation at all. SAC ¶¶ 328-30; All Plaintiffs' Declarations ¶¶ 7-8; *see also* Nashaily Decl. ¶ 49; Lopez Decl. ¶ 48; Najarro Decl. ¶ 46; Nashemir Decl. ¶¶ 47, 50-51; Allicott Decl. ¶ 43; Rosario Decl. ¶ 43; Bundrick Decl. ¶ 44; Rosado Decl. ¶ 45; Philip Decl. ¶ 45.

Indeed, as detailed in Plaintiffs' SAC and their declarations submitted herewith, Con Edison, CESG Defendants, and the Subcontractors pay Employees at a straight-time rate for all hours worked or have withheld compensation (let alone compensation at one and one-half times Employees regular rates of pay) for as many as 39.3 hours in a single workweek. SAC ¶¶ 326, 330; Nashaily Decl. ¶¶ 49-51, 53-66; Lopez Decl. ¶¶ 48-50, 52-65; Najarro Decl. ¶¶ 46-48, 50-64; Nashemir Decl. ¶¶ 46-48, 50-53, 56; Allicott Decl. ¶¶ 43-45, 47-50; Rosario Decl. ¶¶ 43-45, 47-59; Bundrick Decl. ¶¶ 44-46, 50-64; Rosado Decl. ¶¶ 45-47, 49-56; Philip Decl. ¶¶ 45-47, 49-58.

## IV.     LATE PAYMENT OF WAGES

Finally, Con Edison, CESG Defendants, and the Subcontractors also engage in a common pattern and practice of deliberately denying Employees timely payment of their wages. SAC ¶ 332; Nashaily Decl. ¶ 60; Lopez Decl. ¶ 58; Najarro Decl. ¶ 56; Nashemir Decl. ¶¶ 55-56; Allicott Decl. ¶ 52; Rosario Decl. ¶ 49; Bundrick Decl. ¶ 49; Rosado Decl. ¶ 54; Philip Decl. ¶ 54. As noted above, Con Edison, CESG Defendants, and the Subcontractors have established one-week pay periods, with Employees' regularly scheduled pay day being every Thursday.[8] SAC ¶¶ 333-

---

[8] Con Edison, CESG Defendants, and the Subcontractors later changed Nashaily's and Rosario's (following Rosario's transfer to A&M) regularly scheduled pay days to every Friday and Bundrick's regularly scheduled pay day to every other Wednesday following her transfer to 23 West. SAC ¶¶ 159, 336; Nashaily Decl. ¶ 59; Rosario Decl. ¶ 48; Bundrick Decl. ¶ 59.

34, 291, 319, 359, 404, 444, 467, 493, 520, 549; Nashaily Decl. ¶ 58; Lopez Decl. ¶ 57; Najarro

Decl. ¶ 55; Nashemir Decl. ¶ 54; Allicott Decl. ¶ 51; Rosario Decl. ¶ 47; Bundrick Decl. ¶ 48;

Rosado Decl. ¶ 53; Philip Decl. ¶ 53.  However, Defendants routinely fail to timely pay Plaintiffs

for all the hours worked on their regularly scheduled pay day.  SAC ¶¶ 335, 292, 320, 360, 405,

445, 468, 494, 522, 550; Nashaily Decl. ¶¶ 60-66; Lopez Decl. ¶¶ 58-65; Najarro Decl. ¶¶ 56-64;

Nashemir Decl. ¶¶ 55-56; Allicott Decl. ¶¶ 52-54; Rosario Decl. ¶¶ 49-59; Bundrick Decl. ¶¶ 49-

63; Rosado Decl. ¶¶ 54-56; Philip Decl. ¶¶ 54-58; Exs 23 (Lopez notifying Sablini that $240.00 in

wages were missing from her previous week's paycheck), 25 at 1 (Lopez notifying Sablini that

$285.00 in wages were missing from Najarro's paycheck), 28 at 1 (Rosario notifying Koubaissay

that his paycheck from A&M "was short again this week.").

## ARGUMENT

## I.    CONDITIONAL CERTIFICATION IS APPROPRIATE

### A.    The FLSA's Opt-In Requirement and the Need for Expedited Notice

The FLSA states in relevant part that:

> An action . . . may be maintained against any employer . . . in any
> Federal or State court of competent jurisdiction by any one or more
> employees for and in [*sic*] behalf of himself or themselves and other
> employees similarly situated.  No employee shall be a party plaintiff
> to any such action unless he gives his consent in writing to become
> such a party and such consent is filed in the court in which such
> action is brought.

29 U.S.C. § 216(b) ("Section 216(b)").

That is, in a collective action under Section 216(b), unlike in a class action under Federal

Rule of Civil Procedure 23 ("Rule 23"), an employee is not a member of the collective until the

employee affirmatively opts-in.  *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124(AT),

2014 WL 1487279, at *1 (S.D.N.Y. Apr. 11, 2014) ("[P]utative class members must 'opt-in' to

participate in an FLSA collective action.").  Thus, until members of a proposed collective are given

notice and an opportunity to file consent forms to opt-in, the statute of limitations continues to run against them daily. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

Therefore, it is critical that similarly situated employees be afforded notice as soon as possible and be provided with the opportunity to opt-in, as their claims may be reduced or extinguished daily. *Id.* at 262 ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.").[9]

### B. The Two-Step Certification Process for FLSA Collective Actions

The Second Circuit has approved a two-step process for district courts to utilize in determining whether to permit litigants to proceed collectively under Section 216(b). *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the two-step process in detail).

First, at an early stage in litigation, the Court must make an initial determination limited strictly to whether the Named Plaintiffs are "similarly situated" to the potential members of the proposed FLSA collective. *Id.* To do so, the Named Plaintiffs need only make a very "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law," after which the court should facilitate notice of the action to the potential members of the collective. *Myers*, 624 F.3d at 555.

"The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage." *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *see also Mendoza v. Ashiya Sushi 5, Inc.*, 12 CIV. 8629 (KPF), 2013 WL 5211839, at *3 (S.D.N.Y. Sept. 16, 2013) ("Courts may approve sending notice if plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common

---

[9] Unless otherwise noted, all internal quotations marks, citations, and alterations have been omitted.

policy or plan that violated the law' . . . . The modest factual showing can be made by rel[ief] on plaintiffs' own pleadings[.]"); *Cunningham v. Electronic Data Systems Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) ("At this first step, the court uses a 'relatively lenient evidentiary standard to determine whether a collective action is appropriate.'")). Plaintiffs merely need to provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

Accordingly, here, if Plaintiffs satisfy their burden of showing that similarly situated employees exist, the Court should conditionally certify the collective and order that appropriate notice be given to the members of the proposed FLSA Collective to afford them the opportunity to opt-in to the action. *Cunningham*, 754 F. Supp. 2d at 644; *see also Lynch*, 491 F. Supp. 2d at 368 ("Once notice is accomplished, the action proceeds as a collective action throughout the discovery process.").

Second, typically after a substantial period of discovery has been completed, Defendants may move for "decertification," where the Court will be asked to conduct a more stringent analysis of whether the opt-in plaintiffs are in fact "similarly situated" to the Named Plaintiffs. *Myers*, 624 F.3d at 555; *Fonseca*, 2014 WL 1487279, at *2. The action may be "decertified" if the record reveals that Plaintiffs and the FLSA Collective are not similarly situated, and the opt-in plaintiffs' claims may be dismissed without prejudice. *Id.*

C.    **Plaintiffs Have Made the Required Showing That They and the Members of the FLSA Collective Are Similarly Situated**

As stated above, to meet the minimum burden required for conditional certification, Plaintiffs must make only a "modest factual showing" that they and the members of the putative FLSA Collective "together were victims of a common policy or plan that violated the law." *See Myers*, 624 F.3d at 555. This burden may be "satisfied with 'substantial allegations' of a factual

nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). Plaintiffs may satisfy this requirement through their own "pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *See Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008); Thus, the proper inquiry is whether Plaintiffs, the opt-in plaintiffs, and the other members of the putative FLSA Collective are similarly situated with respect to the allegations in the SAC. *See Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295(GEL), 2007 WL 2873929, at *5 (S.D.N.Y. Oct. 2. 2007).

Issuance of notice is frequently based largely on employee declarations, and very often when there is only a single declaration. *See, e.g., Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 318 (E.D.N.Y. 2016) ("[C]ourts have routinely found that the allegations in the pleadings and the 'personal observations of one plaintiff's affidavit' are 'sufficient to make the modest factual showing necessary to conditionally certify [a] class.'"); *Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-Cv-2848 (SHS), 2015 WL 1514950, at *3 (S.D.N.Y. Apr. 1, 2015) (finding declarations of a single plaintiff sufficient to conditionally certify a collective of four restaurants).

Here, Plaintiffs have made a substantial showing that they and all other Employees were subject to the same common policy that violates the FLSA. Indeed, Plaintiffs have provided not only the factual allegations in their SAC (*see* Ex. 1), but also sworn testimony in the form of ***nine declarations***. *See generally* Nashaily Decl.; Lopez Decl.; Najarro Decl.; Nashemir Decl.; Allicott Decl.; Rosario Decl.; Bundrick Decl.; Marvin Rosado Decl.; Philip Decl. This alone is sufficient to warrant conditional certification. Additionally, Plaintiffs also submit voluminous documentary evidence in support of the instant motion. Specifically, Plaintiffs submit herewith, in addition to

their sworn testimony: timesheets, photographs, and text messages concerning Defendants' failure to pay overtime, failure to timely pay wages, scheduling of shifts, determination of hours worked for payroll purposes, and detailing some of the other control exerted by Con Edison, CESG Defendants, and the Subcontractors over employees' work. *See* Exs. 15-43. Lastly, it bears noting that as of the filing of the instant motion, 20 Employees have already opted into the action (three of whom later became Named Plaintiffs), speaking further to Con Edison's, CESG Defendants', and the Subcontractors' common pattern and practice of committing wage violations as to all Flaggers and Spotters. *See* ECF Nos. 5, 11, 15, 37, 52, 66-67, 95, 110, 126, 145, 148, 157, 179, 183.

The sworn allegations from eight Named Plaintiffs in the SAC, sworn declarations from seven Named Plaintiffs and two opt-in plaintiffs in support of the instant motion, and documentary evidence from these declarants confirm that Plaintiffs and the members of the putative FLSA Collective were all victims of the same unlawful policy. Put simply, Plaintiffs have made far more than the requisite "modest factual showing" that they and the members of the putative FLSA Collective "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555. Therefore, the Court should conditionally certify the FLSA Collective.

**D.**   **The Underlying Merits of Plaintiffs' Claims Including Joint Employer Liability Are Irrelevant at the Conditional Certification Stage**

Defendants may oppose conditional certification based upon the underlying merits of Plaintiffs' claims or because Defendants purportedly did not jointly employ Plaintiffs and the FLSA Collective. However, as a matter of law, any defenses regarding the underlying merits of Plaintiffs' claims would be irrelevant at the conditional certification stage.

Indeed, it is axiomatic that the underlying merits of Plaintiffs' claims should not be litigated at this initial notice stage, but rather at decertification, summary judgment, and/or trial. *See, e.g.*,

*Ballast v. Workforce7 Inc.*, No. 20 Civ. 3812 (ER), 2021 WL 5999202, at *7 (S.D.N.Y. 2021) (granting Plaintiffs' motion for conditional certification on behalf of flaggers, and finding "that whether or not Workforce7, [Con Edison], and Vali are joint employers is a highly fact-specific inquiry that is not properly before the Court" at the conditional certification stage); *Fonseca*, 2014 WL 1487279, at *3 ("merits based arguments are premature on a motion for conditional certification and must wait for summary judgment and/or trial."); *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385(CM), 2010 WL 2218095, at *1 (S.D.N.Y. Jun. 2, 2010) ("Weighing of the merits [when deciding conditional certification] is absolutely inappropriate."); *Lynch*, 491 F. Supp. 2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations").

Time and time again, courts confronted with arguments from defendants based on substantive defenses, such as disputing employer status under the FLSA, have roundly rejected them as entirely irrelevant to assessing whether plaintiffs have carried the minimal burden necessary to conditionally certify a collective. *See Cruz v. Ham N Eggery Inc.*, No. 15-CV-03228 (JBW)(MDG), 2016 WL 4186967, at *3 (E.D.N.Y. Aug. 8, 2016) ("On the record presented and given that fact discovery is still in the early stages, this Court rejects defendants' contention that they are not joint employers as a basis for denying plaintiffs' motion [for conditional certification]."); *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360(RRM)(LB), 2012 WL 4369746, at *5 (E.D.N.Y. Sept. 24, 2012) ("Courts refuse to prejudge defendants status as an employer' since it is a contested area of fact requiring discovery and not a basis for denying conditional certification."); *See also Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) (finding that whether plaintiff was independent contractor is an "inquiry [that] need not be answered in deciding" conditional certification).

In short, the law could not be any clearer that analyzing joint employer liability or any other merits-based arguments are improper at this stage, especially where, as here, no discovery has been exchanged. "Defendants, of course, will be at liberty later in the case to move for de-certification if, after more discovery, it appears that non-flagmen were *not* in fact similarly situated." *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 611 (S.D.N.Y. 2016) (emphasis in original).

## II.   THE COURT SHOULD AUTHORIZE PROMPT NOTICE OF THE INSTANT MATTER TO THE FLSA COLLECTIVE

### A.   Expedited Notice and Disclosure of Contact Information Is Necessary

Plaintiffs respectfully request expedited disclosure of information, such as names, last known addresses, telephone numbers (home and mobile), email addresses, and dates of employment of all Employees for a period of three years prior to the filing of the Complaint (October 20, 2022), in a computer-readable list to send notice of this action to all potential opt-in plaintiffs as expeditiously as possible. As previously noted, until the absent members of the putative FLSA Collective opt into this action, the statute of limitations is running against them daily.  *See supra* at 17-18; *see also Ramos v. PJJK Rest. Corp.*, No. 15-cv-5672 (PKC), 2016 WL 1106373, at *2 (S.D.N.Y. Mar. 10, 2016) ("Courts need not wait for defendants to begin or complete discovery before approving a conditional collective action; rather courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management").  Here, it is imperative that members of the FLSA Collective receive prompt notice, as they risk having their claims extinguished if they do not receive it and have an opportunity join this proceeding.

### B.   Plaintiffs' Proposed Notices Are Appropriate in All Respects

Plaintiffs request the Court authorize the dissemination of Notices of Pendency and a link to access Consent to Join forms electronically, advising all potential opt-in plaintiffs of their right

to join this collective action via certified mail, email, text message, and posted on the Smartphone App and Concord App, through which Defendants track Employees' physical locations and allow them to check for available shifts.[10] *See* Exs. 11 (proposed Notice of Pendency and Consent to Join form to be sent via certified mail and as an attachment to the email notice (Ex. 12)), 12 (proposed Notice of Pendency to be sent via email), 13 (proposed Notice of Pendency to be sent via text message), 14 (proposed Notice of Pendency to be posted on the Smartphone App and Concord App). This will provide the greatest likelihood that the members of the putative FLSA Collective receive notice of this action.

Given Plaintiffs' allegations that Con Edison, CESG Defendants, and the Subcontractors hired the members of the FLSA Collective and had them fill out IRS Form 1099s, onboarding paperwork with their personal information (and made photocopies of their driver's licenses), called and texted them regarding, *inter alia*, their shifts, wages, schedules, location of jobsites, maintained employment records, received timesheets from Employees via email and text message, and controlled and operated the Smartphone App and the Concord App (*see* SAC ¶¶ 168-74, 176-81, 188-91, 202-04, 209-10, 212, 216-17, 220, 226-28, 235-36, 242, 255, 260-64, 266-69; *see also* Exs. 17-19, 21-25, 27-31, 35, 40-42) which contain Employees' contact information, Con Edison, CESG Defendants, and the Subcontractors, should together be in possession of names, last known addresses, phone numbers, and email addresses that courts routinely require defendants to produce in FLSA collective actions. *See Ballast*, 2021 WL 5999202, at *10 (directing Con Edison and the other flagging company defendants to turn over Flaggers' contact information in their possession).

Courts in this Circuit have approved similar notice by mail, email, and text message. *See,*

---

[10] *See* Exs. 19 at 13 (Napoleone-Colbert tracking an Employee's location through the Smartphone App), 40-41 (screenshots of the Smartphone App and Concord App interface as shown in the "App Store" on mobile devices), 42 (screenshots of the Smartphone App interface when an Employee logs in with their individual identification number).

*e.g., Mendoza*, 2013 WL 5211839, at * 9 (authorizing notice by mail); *Pippins v. KPMG LLP*, No. 11-cv-0377(CM)(JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) (ordering notice sent by email); *Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (authorizing dissemination of notice by text message).

Ordering that Defendants disseminate notice in the Smartphone App and the Concord App is also appropriate.  First, disseminating notice through a workplace posting is an effective—and, for that reason, routinely approved—method of ensuring that the greatest share of a collective is made aware of an FLSA action and permitted an opportunity to participate therein.  *See, e.g.*, *Enriquez v. Cherry Hill Mkt. Corp.*, No. 10-CV-5616 (FB)(ALC), 2012 WL 440691, at *5 (E.D.N.Y. Feb. 10, 2012) ("Posting the notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants."); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.").

However, the unique circumstances at bar make a traditional workplace posting impractical.  Specifically, Plaintiffs are staffed on job sites throughout the State of New York and are constantly assigned to different job sites.  Moreover, the universe of potential job sites is everchanging—when Defendants finish one Con Edison project, Employees stop reporting there; when Defendants begin a new project, Employees begin reporting to a new job site for the first time.  As such, there is no physical location where Employees consistently report and, unlike most cases, it is impossible here to formulate a definitive, static list of job sites where Employees can be expected to see the notice.  Further, the layout of each job site is different, making an Order directing that notice be posted in a particular place impracticable.

That said, posting notice in the Smartphone App and the Concord App—through which Con Edison, CESG Defendants, and the Subcontractors schedule all Employees' shifts—solves this problem by allowing for the digital equivalent (if not more effective version) of a workplace posting.  In light of the size of the FLSA Collective and the reality that "some members may not have phone numbers or stable addresses," posting notice in the Smartphone App and Concord App furthers the "efficient administration of this case" and the purpose of conditional certification itself—*i.e.*, to ensure that all members of a collective are made aware of the action.  *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020).

It is for these precise reasons that courts have recently recognized the shortcomings of traditional notice methods and authorized notice through other means, such as websites and social media applications. *See Huer Huang v. Shanghai City Corp*, No. 19-cv-7702(LJL), 2020 WL 5849099, at *16 (S.D.N.Y. Oct. 1, 2020) (approving notice via plaintiff's counsel's website and social media); *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18 Civ. 5448(ER), 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (approving notice via the platforms WhatsApp, WeChat, and Facebook, which, like the Smartphone App and Concord App, are all software applications accessible via mobile devices); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-cv-04661(PGG)(DF), 2019 WL 3759126, at *12 (S.D.N.Y. July 25, 2019) (same); *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016); (approving notice via website); *Mark v. Gawker Media LLC*, No. 13-cv-4347(AJN) 2014 WL 5557489, at *3 (S.D.N.Y. Nov. 3, 2014) (approving notice via Facebook, LinkedIn, and Twitter). Here, CESG Defendants and Concord Defendants can easily send a message to Flaggers and Spotters through the Smartphone App and Concord App or post a message (like posting a new Con Edison job) notifying Employees of the lawsuit on each applications' interface.  *See* Exs. 19 at 13,

40-41, 42 at 5 (a screenshot of the "Notice" tab in the Smartphone App wherein Employees are, *inter alia*, notified of changes to their job assignments or the location of the Con Edison jobsite and where Employees could be notified of the lawsuit).

Given the realities of the FLSA Collective here and, more generally, communication in the modern age, the Court should approve notice via the Smartphone App and Concord App, to ensure that as many Employees as possible are made aware of this action and provided an opportunity to toll the daily expiration of their claims. Put simply, "[p]ractical requests such as [this] . . . further[s] the purpose of notice of a collective action under the FLSA." *Cabrera v. Stephens*, No. 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017); *Pippins*, 2012 WL 19379, at *14 (approving electronic notices in light of "the reality of communications today").

A three-year time frame is appropriate given that the FLSA expressly permits a three-year statute of limitations to remedy willful violations of thereof. 29 U.S.C. § 255(a); *see also Gaspar v. Personal Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2014 WL 4593944, at *6 (S.D.N.Y. Sept. 15, 2014) (finding a three-year notice period appropriate). In short, there is no downside to providing notice to the Employees—the crux of conditional certification—but there is serious prejudice in delaying the same.

## III.  EQUITABLE TOLLING SHOULD BE GRANTED TO PROTECT THE RIGHTS OF THE FLSA COLLECTIVE

Plaintiffs respectfully move for equitable tolling of the statute of limitations for the putative FLSA Collective from October 26, 2022, the date Plaintiffs filed their original motion for conditional certification (*see* ECF No. 6), until the close of any Court-ordered opt-in period. "In the Second Circuit, . . . 'equitable tolling is commonly granted upon the filing of a motion for conditional certification of a collective action.'" *Varghese*, 2016 WL 4718413 at *11; *see also Schaefer v. M & T Bank Corp.*, 122 F. Supp. 3d 189 at 198 (S.D.N.Y. 2015) ("Typically, equitable

tolling results in the look-back period being keyed to the date of the filing of the motion seeking

court-authorized notice."). Indeed, "[c]ourts routinely grant equitable tolling in the FLSA

collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise

from the unique procedural posture of collective actions." *Yahraes v. Rest. Assocs. Events Corp.*,

No. 10-CV-935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011); *Iriarte v. Café 71, Inc.*,

No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *7 (S.D.N.Y. Dec. 10, 2015) ("Due to docket

congestion this Court was unable to address Plaintiff's motion for some months after it was made.

The claim should not be prejudiced by this delay.  The statute of limitations will be tolled as of the

date of the filing of Plaintiff's motion for conditional certification.").

      "In determining whether equitable tolling is warranted, the Second Circuit has stated that

a court 'must consider whether the person seeking application of the equitable tolling doctrine (1)

has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has

proved that the circumstances are so extraordinary that the doctrine should apply." *Yahraes*, 2011

WL 844963, at *1 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir.

2003)).  First, District Courts in the Second Circuit have held:

> [T]he delay caused by the time required for a court to rule on a
> motion, such as one for certification of a collective action in a[n]
> FLSA case, may be deemed an extraordinary circumstance
> justifying application of the equitable tolling doctrine.  While
> plaintiffs wishing to pursue their rights cannot sit on them
> indefinitely, those whose putative class representatives and their
> counsel are diligently and timely pursuing the claims should also not
> be penalized due to the courts' heavy dockets and understandable
> delays in ruling.

*Schaefer*, 122 F. Supp. 3d at 198.

      Further, where, as here, "parties are ordered . . . to suspend proceedings during the

pendency of legal proceedings, the time during which a party is prevented from obtaining legal

relief is not counted for purposes of statutes of limitations." *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199-200 (S.D.N.Y. 2006) (holding that equitable tolling was warranted where "the Court directed Plaintiff after he had filed his Complaint to postpone any motions for collective or class action until after its decision regarding summary judgment"); *Gurrieri v. County of Nassau*, 16-CV-6983 (ADS)(SIL), 2019 WL 2233830, at *9-10 (E.D.N.Y. May 23, 2019) (granting equitable tolling after the court stayed plaintiffs' motion for conditional certification pending defendant's motion to dismiss in state court).

Equitable tolling is appropriate because Plaintiffs have acted with extreme diligence during the period they seek to toll for the FLSA Collective, despite a number of procedural hurdles. First, Plaintiffs originally filed their motion for conditional certification seeking equitable tolling less than one week after filing their Complaint. *See* Burr Decl. ¶¶ 4-5; ECF No. 6. On October 28, 2022, the Honorable Gabriel W. Gorenstein denied Plaintiffs' motion without prejudice, directing Plaintiffs to re-file same "after all defendants have responded to the complaint." *See* ECF No. 12 at 3. On April 14, 2023 and May 5, 2023, Con Edison and CESG Defendants[11] moved to dismiss the Complaint, respectively, and in response, Plaintiffs amended their Complaint on June 2, 2023. *See* ECF Nos. 53-54, 63-64, 72.

On July 17, 2023, Con Edison and CESG Defendants essentially re-filed their motions to dismiss the Complaint in response to the FAC, further prolonging litigation and the Court's decision on Plaintiffs' motion for conditional certification. *Compare* ECF Nos. 53-54, 63-64 *with* ECF Nos. 100-101, 104-105. On October 13, 2023, after Con Edison's and CESG Defendants' motions to dismiss were fully briefed and all other Defendants who appeared in this lawsuit had answered or otherwise responded to the FAC, Plaintiffs filed their motion for conditional

---

[11] Notably, the CESG Defendants required *five* extensions of their deadline to respond to Plaintiffs' Complaint. *See* ECF No. 62.

certification a second time in accordance with Judge Gorenstein's October 28, 2022 Order.[12]  *See* ECF Nos. 12 at 3, 153. On June 7, 2024, Judge Stein issued the R&R (*see supra* at 2-3), recommending Plaintiffs be allowed to amend the FAC as to Count Nos. 1-12.[13] *See* ECF No. 202. Shortly thereafter, the Court adopted the R&R and denied Plaintiffs' motion for conditional certification without prejudice a second time while directing Plaintiffs to re-file same within 60 days of the filing of Plaintiffs' SAC—or October 7, 2024.  *See* ECF No. 205 at 2.

Frankly, it is difficult to fathom how Plaintiffs could have possibly been any more diligent in protecting the rights of other Employees they seek to represent as they now seek to toll the statute of limitations for the members of the FLSA Collective a ***third time*** (and well before the Court's October 7, 2024 deadline) as a result of Con Edison's and CESG Defendants' two motions to dismiss and other Court directives.  *See e.g.,* ECF Nos. 12, 205 at 2.  Thus, the Court should equitably toll the statute of limitations for members of the FLSA Collective, *inter alia,* to ensure that their claims are not time barred through no fault of their own before they receive notice of this lawsuit, and an opportunity to recover the wages they are owed.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion for conditional certification and authorize that notice be disseminated to potential members of the FLSA Collective in accordance with 29 U.S.C. § 216(b), together with such further relief as the Court deems just and proper.

---

[12] Indeed, as of October 6, 2023, all Defendants had either answered or moved to dismiss Plaintiffs' FAC, except for A&M, 23 West, and Koubaissay who have all been issued certificates of default.  *See* ECF Nos. 121-22, 142.

[13] Of note, the Court stayed this action from February 1, 2024 through April 11, 2024 to allow consideration of the Appellate Division's decision in *Ross v. No Parking Today, Inc., et al.*, 192 N.Y.S.3d 872 (N.Y. Sup. Ct. 2023).  *See* ECF Nos. 186-87, 194.

Dated:  September 18, 2024                    **FARUQI & FARUQI, LLP**
        New York, New York

                                           By: *_/s/ Camilo M. Burr_*
                                              Camilo M. Burr

                                          685 Third Avenue, 26th Floor
                                          New York, New York 10017
                                          Tel: 212-983-9330
                                          Fax: 212-983-9331
                                          cburr@faruqilaw.com

                                          *Attorneys for Plaintiffs and*
                                          *the Proposed FLSA Collective*