UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NASHAILY ORTIZ, ISAURA LOPEZ, RUBEN LEMUS NAJARRO, NASHEMIR ORTIZ, and ADRIANNA GAMBOA, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>        -against-<br><br>CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., CE SOLUTIONS GROUP, LLC, CE SOLUTIONS INC., CE FLAGGING PLUS CORP., CE RESERVE CORP., FLAGGING SPOTTING FLIPPING SERVICES INC., ARGANI INC., NYC 2WAY INTERNATIONAL LTD. d/b/a CTG CARS LLC, CONCORD LIMOUSINE INC., CONCORD LIMOUSINE 1, LLC, JEANNINE NAPOLEONE- COLBERT, HASSAN SABLINI, EDWARD SLININ, DORA SLININ, GARY SAMUEL, and ALEXANDER GAVRILOV,<br><br>                    Defendants. | Index No.: 1:22-cv-08957-JLR-GWG |

**DEFENDANT CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS**

Eli Z. Freedberg
Paul R. Piccigallo
Jennifer S. Kim
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022-3298
(212) 583-9600

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION AND STATEMENT OF RELEVANT FACTS ................................ 1

II.    PLAINTIFFS' MOTION IS PREMATURE .................................................................... 2

III.   THE COURT SHOULD NOT CERTIFY THE PROPOSED COLLECTIVE ................. 5

     A.     The Standard For Conditional Collective Certification ......................................... 5

     B.     Plaintiffs Have Not Demonstrated Con Edison Was A Party To Any
            Policy Or Plan to Deprive Them Of Overtime Compensation ............................ 6

           1.     No Evidence Con Edison Controlled The Rates Or Method Of
                 Payment ...................................................................................................... 8

           2.     No Evidence Con Edison Had The Power To Hire Or Fire
                 Plaintiffs ................................................................................................... 10

           3.     No Evidence Con Edison Controlled Plaintiffs' Work Schedules ........... 13

           4.     No Evidence Con Edison Controlled Plaintiffs' Terms Of
                 Employment .............................................................................................. 14

           5.     No Evidence Con Edison Maintained Plaintiffs' Employment
                 Records ..................................................................................................... 17

           6.     Plaintiffs Have Failed To Evidence Con Edison Meets Any Other
                 Factors Indicative Of Joint Employment ................................................. 19

IV.   EVEN IF THE COURT ORDERS NOTICE, PLAINTIFFS' PROPOSED
       NOTICES AND CONSENT FORM SHOULD NOT BE USED .................................. 22

V.    EQUITABLE TOLLING IS NOT PRESENTLY WARRANTED ................................ 26

VI.   CON EDISON DOES NOT HAVE CONTACT INFORMATION FOR THE
       PROPOSED COLLECTIVE ......................................................................................... 29

VII.  CONCLUSION ............................................................................................................... 30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Balderramo v. Taxi Tours Inc.*,
  2017 WL 2533508 (S.D.N.Y. June 9, 2017) .........................................................................27

*Alvarado v. Villas Mkt. Place Inc.*,
  2020 WL 91489 (S.D.N.Y. Jan. 8, 2020) ...............................................................................26

*Arena v. Delux Transp. Servs.*,
  Inc., 2013 WL 654418 (E.D.N.Y. Feb. 15, 2013) ...................................................................3

*Auffray v. FXFL*,
  LLC, 2016 WL 6810863 (S.D.N.Y. Nov. 16, 2016) ...............................................................3

*Avila v. SLSCO, Ltd.*,
  2022 WL 784062 (S.D. Tex. Mar. 15, 2022).........................................................................16

*Ayers v. SGS Control Servs.*, *Inc.*,
  2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007)...........................................................................26

*Bai v. Fu Zing Zhuo*,
  2014 WL 2645119 (E.D.N.Y. June 13, 2014) .........................................................................3

*Beda v. Nurtury at Flandreau, Inc.*,
  2024 WL 2793734 (S.D.N.Y. May 28, 2024) ........................................................................24

*Bethel v. BlueMercury, Inc.*,
  2022 WL 3594575 (S.D.N.Y. Aug. 22, 2022)..................................................................23, 24

*Boice v. M+W U.S.*, *Inc.*,
  130 F. Supp. 3d 677 (N.D.N.Y. 2015).....................................................................................6

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018) .................................................................................................5

*Carabajo v. APCO Insultation Co.*, *Inc.*,
  2023 WL 3931618 (E.D.N.Y. June 9, 2023) .........................................................................30

*Castro v. Spice Place*, *Inc.*,
  2009 WL 229952 (S.D.N.Y. Jan. 30, 2009) ........................................................................7, 8

*Chen v. Thai Greenleaf Rest. Corp.*,
  2024 WL 3742718 (E.D.N.Y. Aug. 9, 2024).........................................................................25

*Chicas v. Kelco Constr.*,
   Inc., 2023 WL 2072026 (S.D.N.Y. Feb. 19, 2023)........................................................24, 25

*Contrera v. Langer*,
   278 F. Supp. 3d 702 (S.D.N.Y. 2017)....................................................................................27

*Cooke v. Frank Brunckhorst Co., LLC*,
   2024 WL 1230231 (E.D.N.Y. Mar. 22, 2024)........................................................................29

*Ding v. Mask Pot Inc.*,
   2024 WL 4351081 (E.D.N.Y. Oct. 8, 2024)....................................................................22, 25

*Douglas v. Anthem Prods.*,
   2019 WL 78988 (S.D.N.Y. Jan. 2, 2019) ..............................................................................28

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007)....................................................................................26

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
   678 F. Supp. 2d 89 (E.D.N.Y. 2010) .....................................................................................23

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)....................................................................................................................5

*Gil v. Pizzarotti, LLC*,
   2021 WL 1178027 (S.D.N.Y. Mar. 29, 2021) ......................................................................14

*Gillett v. Zara USA*,
   2021 WL 1731836 (S.D.N.Y. May 3, 2021) ............................................................24, 25, 26

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2016)......................................................................................................6

*Godlewska v. HDA*,
   916 F. Supp. 2d 246 (E.D.N.Y. 2013), *aff'd*, 561 F. App'x 108 (2d Cir. 2014)....12, 14, 15, 19

*Gonzalez v. Allied Barton Sec. Servs.*,
   2010 WL 3766964 (S.D.N.Y. Sept. 7, 2010).........................................................................12

*Guillen v. Marshalls of MA*,
   841 F. Supp. 2d 797 (S.D.N.Y. 2012).....................................................................................6

*Hall v. City of New York*,
   2023 WL 6318082 (S.D.N.Y. Sept. 28, 2023)......................................................................24

*Hoffman-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989)................................................................................................................22

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) ...............................................................3

*Hong v. Haiku*
   @ *WP*, *Inc.,* 582 F. Supp. 3d 117 (S.D.N.Y. 2022) ..........................................25, 26

*Hong v. JP White Plains, Inc.*,
   2023 WL 1779689 (S.D.N.Y. Feb. 6, 2023) ......................................................26

*Hotaranu v. Star Nissan Inc.*,
   2017 WL 1390808 (E.D.N.Y. Apr. 12, 2017) ....................................................25

*Hugee v. SJC Group, Inc.*,
   2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013) ..............................................19, 20

*Irizarry v. Catsimatidis*,
   722 F.3d 99 (2d Cir. 2013)...........................................................................7

*Islam v. LX Ave. Bagels, Inc.*,
   2019 WL 5198667 (S.D.N.Y. Sept. 30, 2019) ..............................................24, 28

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
   838 F. Supp. 2d 111 (S.D.N.Y. 2011).................................................... *passim*

*Jiang v. D&S Wedding Planner*,
   Inc., 2023 WL 6307813 (E.D.N.Y. Sept. 28, 2023) ..............................................4

*Johnson-Cradle v. KPS Affiliates, Inc.*,
   2023 WL 3091675 (S.D.N.Y. Apr. 26, 2023)......................................7, 8, 27, 30

*Katz v. Equinox Holdings*,
   2022 WL 2952143 (S.D.N.Y. July 26, 2022) ...............................................27, 28

*Knox v. John Varvatos Enterprises Inc.*,
   282 F. Supp. 3d 644 ............................................................................24, 27

*Korenblum v. Citigroup*,
   195 F. Supp. 3d 475 (S.D.N.Y. 2016)...............................................................7

*Korenblum v. Citigroup, Inc.*,
   195 F. Supp. 3d 483 (S.D.N.Y. 2016)...............................................................8

*Lawrence v. Adderley Indus., Inc.*,
   2011 WL 666304 (E.D.N.Y. Feb. 11, 2011)........................................12, 14, 19

*Lazaar v. Anthem Cos., Inc.*,
   678 F. Supp. 3d 434 (S.D.N.Y. 2023)............................................................22

*Lijun Geng v. Shu Han Ju Rest. II Corp.*,
2019 WL 4493429 (S.D.N.Y. Sept. 9, 2019)................................................22, 25, 28

*Lin v. JD Produce Maspeth LLC*,
2021 WL 5163218 (E.D.N.Y. Nov. 5, 2021)...........................................................25

*Lorenzo v. Dee Mark Inc.*,
702 F. Supp. 3d 194 (S.D.N.Y. 2023)....................................................................28

*Lu v. Purple Sushi*,
447 F. Supp. 3d 89 (S.D.N.Y. 2020)......................................................................28

*Lubas v. JLS Group, Inc.*,
2020 WL 4210754 (E.D.N.Y. July 22, 2020).......................................................7, 8

*Martin v. Sprint/United Mgmt. Co.*,
2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) .............................................................7, 24

*Martin v. Sprint/United Mgmt. Co.*,
273 F. Supp. 3d 404 (S.D.N.Y. 2017)........................................................12, 19, 21

*Martinenko v. 212 Steakhouse Inc.*,
2022 WL 1227140 (S.D.N.Y. Apr. 26, 2022).........................................................23

*Medina v. 3C Constr. Corp.*,
2005 WL 8156724 (S.D. Fla. Aug. 24, 2005).........................................................16

*Mei Rong Du v. Dingxiang Inc.*,
2020 WL 7404984 (S.D.N.Y. Dec. 17, 2020) ........................................................26

*Mikityuk v. Cision US Inc.*,
21-cv-510, 2021 WL 1750370 (S.D.N.Y. May 4, 2021).........................................23

*Moreau v. Air France*,
356 F.3d 942 (9th Cir. 2004) .................................................................................16

*Moses v. Consol. Edison Co. of New York Inc.*,
2024 WL 1329800 (S.D.N.Y. Mar. 28, 2024) ........................................................21

*Moses v. Griffin Indus., LLC*,
2020 WL 5813737 (S.D.N.Y. Sept. 30, 2020)....................................................24, 28

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010).................................................................................5, 6

*Ni v. HSBC Bank USA, N.A.*,
2024 WL 323284 (S.D.N.Y. Jan. 29, 2024) ...........................................................27

*Norris v. ProCORE LLC*,
  2022 WL 1205143 (E.D.N.Y. Apr. 22, 2022) .................................................................23, 24

*Orbetta v. Dairyland USA Corp.*,
  2024 WL 3385640 (S.D.N.Y. July 12, 2024) .................................................................23, 24

*Ortiz v. Consol. Edison Co. of N.Y.*,
  Inc., 2024 WL 3086161, at *8, 9 (S.D.N.Y. June 7, 2024), *report &*
  *recommendation adopted* 2024 WL 3105686 (S.D.N.Y. June 24, 2024).................3, 8, 13, 21

*Pace v. DiGuglielmo*,
  544 U.S. 408 (2005).........................................................................................................27

*Panora v. Dennora Corp.*,
  521 F. Supp. 3d 177 (E.D.N.Y. 2021) .............................................................................26

*Park v. FDM Group Inc.*,
  2019 WL 2205715 (S.D.N.Y. May 22, 2019) ..................................................................25

*Pettenato v. v. Beacon Health Options, Inc.*,
  425 F. Supp. 3d 264 (S.D.N.Y. 2019)....................................................................5, 24, 25

*Pierre v. City of New York*,
  2021 WL 3887912 (S.D.N.Y. Aug. 31, 2021) .................................................................20

*Pierre v. City of New York*,
  2022 WL 4482295 (S.D.N.Y. Sept. 27, 2022).................................................................25

*Pitney Bowes, Inc. v. Kern Int'l, Inc.*,
  239 F.R.D. 62 (D. Conn. 2006).......................................................................................30

*Prizmic v. Armour, Inc.*,
  2006 WL 1662614 (E.D.N.Y. June 12, 2006) ...................................................................6

*Ramirez v. Liberty One Grp.*,
  2023 WL 4541129 (S.D.N.Y. July 14, 2023) ..................................................................28

*Ramirez v. Urion Constr.*,
  674 F.Supp.3d 42 (S.D.N.Y. 2023) ...................................................................................4

*Reid v. U.S.*,
  2020 WL 3256331 (E.D.N.Y. June 15, 2020) ...................................................................3

*Reilly v. City of New York*,
  2024 WL 4125360 (S.D.N.Y. Aug. 7, 2024)..............................................................23, 25

*Reyes v. A.B. Bakery Restaurant Corp.*,
  2023 WL 5918056 (S.D.N.Y. Sept. 11, 2023).................................................................24

*Rodney v. Casella Waste Sys., Inc.*
2023 WL 313929 (D. Vt. Jan. 19, 2023) ...................................................23

*Ruiz v. Truffa Pizzeria & Wine Room Corp.*,
2021 WL 568249 (S.D.N.Y. Feb. 15, 2021)..........................................22

*Sanchez v. Clipper Realty, Inc.*,
2024 WL 3159821 (S.D.N.Y. June 25, 2024) ..............................24, 28

*Sanchez v. JMP Ventures, L.L.C.*,
2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ..............................................6

*Severino v. Avondale Care Grp., LLC*,
2022 WL 16555372 (S.D.N.Y. Oct. 29, 2022) ...........................23, 24

*Shi v. TL & CG*,
2020 WL 3586359 (S.D.N.Y. Aug. 10, 2020) .......................................28

*Singh v. Anmol Food Mart, Inc.*,
2024 WL 308241 (E.D.N.Y. Jan. 26, 2024) ...........................................25

*Stewart v. Hudson Hall LLC*,
2021 WL 1750368 (S.D.N.Y. May 4, 2021) .............................................9

*Tung v. Banzai Steakhouse Inc.*,
2023 WL 5827643 (S.D.N.Y. Sept. 8, 2023)..........................................23

*Uraga v. Amici 519 LLC*,
2019 WL 3579850 (S.D.N.Y. July 25, 2018) ........................................28

*Vasquez v. A+ Staffing LLC*,
2024 WL 3966246 (E.D.N.Y. Aug. 27, 2024).......................................24

*Veltri v. Building Serv. 32B-J Pension Fund*,
393 F.3d 318 (2d. Cir. 2004)......................................................................27

*Villalta v. 101-11 86 Ave. Corp.*,
2022 WL 462408 (E.D.N.Y. Feb. 15, 2022).........................................22

*Viriri v. White Plains Hosp. Med. Ctr.*,
320 F.R.D. 344 (S.D.N.Y. 2017) ...........................................................23

*Wallace v. Kato*,
549 U.S. 384 (2007)......................................................................................27

*Wilson v. Jamaica Serv. Program for Older Adults, Inc.*,
708 F. Supp. 3d 213 (E.D.N.Y. 2023) ......................................................5

*Xia v. New Yung Wah Carrier LLC*,
2023 WL 130830 (E.D.N.Y. Jan. 9, 2023) ...............................................23, 24, 28

*Yacklon v. East Irondequoit Cent. Sch. Dist.*,
733 F. Supp. 2d 385 (W.D.N.Y. 2010) .................................................................12

*Yang v. An Ju Home, Inc.*,
2020 WL 3510683 (S.D.N.Y. June 29, 2020) .......................................................21

*Yi Mei Ke v. JR Sushi 2 Inc.*,
2021 WL 148751 (S.D.N.Y. Jan. 15, 2021) ..........................................................26

*Zavala v. PEI Elec. Servs. Group, Inc.*,
2022 WL 2312794 (S.D.N.Y. June 28, 2022) .......................................................20

*Zhang v. Hiro Sushi at Ollie's, Inc.*,
2019 WL 699179 (S.D.N.Y. Feb. 5, 2019).............................................................22

*Zhao v. Surge Private Equity LLC*,
2023 WL 3477591 (S.D.N.Y. May 16, 2023) .................................................24, 28

*Zheng v. Liberty Apparel Co. Inc.*,
355 F.3d 61 .................................................................................................14, 20, 21

*Zhongle Chen v. Kicho Corp.*,
2020 WL 1900582 (S.D.N.Y. Apr. 17, 2020).......................................................25

*Zimnicki v. Krusiak Construction Corp.*,
2022 WL 17820139 (E.D.N.Y. Sept. 27, 2022) ...................................................25

**Statutes**

29 U.S.C. § 216(b) .......................................................................................................5

**Other Authorities**

29 C.F.R. §§1926.950 ................................................................................................15

29 C.F.R. §§ 1926.952(b) ..........................................................................................15

Department-Approved Course Requirements: 1-Hour Flag Person at 3, New York
City Dep't of Buildings (online ed.), *available at* https://www.nyc.gov/
assets/buildings/pdf/sst_1-hour_flag_person.pdf (last visited Oct. 10, 2024)..........15

Flagger-Work Zone Traffic Control Manual, N.Y. Dep't of Transp. (online
edition), *available at* https://webapps.dot.ny.gov/traffic-controllers-flagger
(last visited Oct. 10, 2024).........................................................................................15

FRCP Rule 8(a)........................................................................................................2, 3

FRCP Rule 23 ....................................................................................................5, 24

FRCP Rule 34(a) .....................................................................................................30

MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES at § VI, p. 27 (Fed. Judicial Ctr. 2005) .........................................................................4

N.Y. Rules, Tit. 34, § 2-01.1.....................................................................................15

Smartphone App login screen revealing it is hosted at https://ces.gtnetwork.com .......................13

Consolidated Edison Company of New York, Inc. ("Con Edison") respectfully submits this memorandum of law in opposition to Plaintiffs' motion for conditional Fair Labor Standards Act ("FLSA") collective certification, equitable tolling, and Court-authorized notice (Docs. 221-223).

## I.    <u>INTRODUCTION AND STATEMENT OF RELEVANT FACTS</u>

Plaintiffs ask the Court to conditionally certify an FLSA collective against Con Edison (and the other defendants named in this Action) with respect to Plaintiffs' FLSA claims, which allege that Plaintiffs were not paid (or were not timely paid) overtime wage rates for overtime work (Doc. 222 at 6).[1] The Court should deny Plaintiffs' motion, at least with respect to Con Edison, because Con Edison never employed Plaintiffs (Doc. 102, ¶ 8). Instead, Con Edison separately contracted with co-defendants CE Solutions Group, LLC ("CES") and Concord Limousine 1, LLC ("Concord") for CES and Concord to provide traffic flagging and parking spotting services associated with Con Edison's self-performed utility projects (Doc. 55, ¶¶ 5-11; Doc. 102, ¶ 7). CES, in turn, subcontracted its own scope of work to various entities, including Concord and the other defendants in this case (Doc. 210, ¶ 2). Plaintiffs allege they were then "hired by one of the Subcontractors directly or by" the CESG Defendants themselves (*Id.*, ¶ 225).[2] Based on Plaintiffs' own allegations Con Edison cannot plausibly be considered Plaintiffs' employer, nor can Con Edison be held responsible for the Subcontractors' supposed failure to pay Plaintiffs overtime or timely wages. As demonstrated below, CES routinely billed Con Edison for Plaintiffs' overtime work at overtime rates, and Con Edison paid CES millions of dollars for such invoiced overtime work. Moreover, Con Edison in fact paid CES at contractually mandated

---

[1] Page references are to those assigned by the Pacer CM/ECF system, which may differ from a document's original page numbering.

[2] For purposes of this motion only, Con Edison utilizes the terms Subcontractors, CESG Defendants, Argani Defendants, and A&M Defendants as defined in Plaintiffs' operative complaint (*see* Doc. 210 at 1-2).

holiday, emergency and overtime rates that were far higher than Plaintiffs allege they were paid in their complaint (Doc. 170, ¶¶ 7, 10 & Ex. 5 (exemplar invoice from CES for work performed during the first half of February 2023, revealing that CES billed Con Edison for 728.0 regular hours at regular rates, and 533.56 hours of overtime/Holiday/emergency flagging work at overtime rates); *compare also, e.g.*, Doc. 222 at 18 *with* Doc. 171-3 at 4-5; Doc 171-4 at 5-6). Having timely paid **millions of dollars** at overtime rates for Plaintiffs' overtime, holiday and emergency work, all based on CES's invoices to Con Edison, it is inconceivable why Con Edison should be made part of any FLSA collective in this case.

Put simply, Plaintiffs have failed to offer plausible allegations or evidence demonstrating that Con Edison was a party to some "common policy or plan" to deprive them of overtime compensation for overtime work. This is a critical omission, because to warrant certification of a collective against Con Edison, Plaintiffs must do more than demonstrate that a collective may be appropriate against some of the other defendants in this case. Moreover, Plaintiffs' motion is premature, as both Con Edison and the CESG Defendants have moved to dismiss Plaintiffs' operative complaint for once again failing to comply with the requirements of Rule 8(a).

For these and the other reasons set forth herein, the Court should deny Plaintiffs' Motion. And even if the Court believes certification to be appropriate, the Court should not approve Plaintiffs' proposed notices, consent form, and notice distribution plan. Nor is equitable tolling presently warranted, as such tolling must be determined based on the circumstances and diligence of each potential opt-in plaintiff, who presently are not before the Court.

## II.    PLAINTIFFS' MOTION IS PREMATURE

Con Edison and four other defendants have moved to dismiss Plaintiffs' operative complaint (*compare* Doc. 210 *with* Docs. 229-230, 234-236) because the complaint once again relies on generic, group-pleading allegations that "do not specifically allege any conduct by" any

single defendant, and therefore provide "an insufficient basis to plead a viable claim of employer status against" any (let alone all) of the defendants in this case (Doc. 230 at 11; *accord* Doc. 235, at 7-10). Such generic, group-pleading allegations, the Court explained, do not "comply with Rule 8(a)" because they "fail[] to give each defendant fair notice of the claims [being made] against it." *Ortiz v. Consol. Edison Co. of N.Y.*, Inc., No. 22-cv-8957, 2024 WL 3086161, at *8, 9 (S.D.N.Y. June 7, 2024), *report & recommendation adopted* 2024 WL 3105686 (S.D.N.Y. June 24, 2024). And even where Plaintiffs' latest complaint attempts to add greater specificity, many of those new allegations conflict with the complaint's group-pleading allegations, and neither the Court nor the defendants are "obligated to reconcile" such inconsistencies (Doc. 230 at 7 (citing *Reid v. U.S.*, No. 19-cv-1221, 2020 WL 3256331, at *6 (E.D.N.Y. June 15, 2020))).

Because Plaintiffs' ability to state a claim and determining which (if any) claims are plausibly pleaded are germane issues to the conditional certification question, the Court should resolve the pending motions to dismiss ***before*** addressing issues of conditional certification. *See, e.g.*, *Hoffmann v. Sbarro, Inc*., 982 F. Supp. 249, 253 (S.D.N.Y. 1997) (addressing "defendant's motion for judgment on the pleadings first," because "if the Court deems this action ripe for dismissal, it would be futile to send class notice to other potential plaintiffs").[3]

Separately, Plaintiffs' motion is premature because it again fails to explain how certifying their proposed collective will not interfere with the putative class action claims already pending in *Richardson v. CE Solutions Group*, Index No. 653369/2021 (Sup. Ct., N.Y. Cnty. filed May 21,

---

[3] *See also Auffray v. FXFL*, LLC, No. 15-cv-9379, 2016 WL 6810863, at *3 (S.D.N.Y. Nov. 16, 2016) (denying conditional certification "without prejudice to renewal in the event that the Court denies [defendant]'s motion to dismiss"); Peng *Bai v. Fu Zing Zhuo*, No. 13-cv-5790, 2014 WL 2645119, at *1 (E.D.N.Y. June 13, 2014) (staying consideration of conditional certification motion "until the motion to dismiss is resolved"); *Arena v. Delux Transp. Servs*., Inc., 12-cv-1718, 2013 WL 654418, at *3 (E.D.N.Y. Feb. 15, 2013) (denying conditional certification motion pending resolution of dispositive motion, "in light of the need to determine the preliminary question of whether the FLSA [even] applies").

2021), or with the recently-filed FLSA collective and class claims pending in *Butskhrikidze v. CE Solutions Group, LLC*, No. 24-cv-6855 (E.D.N.Y., filed Sept. 27, 2024). After all, all three cases involve claims surrounding the pay practices of the CESG Defendants and their Subcontractors (*compare* Doc. 210, ¶¶ 1-14, Doc. 172-1 (*Richardson* complaint), ¶¶ 1-7, *and Butskhrikidze* complaint at ¶ 1).[4] Although *Butskhrikidze* does not name Con Edison as a defendant, it does name CES and many of the other defendants in this case, and raises FLSA claims that overlap with Plaintiffs' claims (Piccigallo Decl. at Ex. 1, ¶¶ 340-419). And although *Richardson* does not assert FLSA claims, it does assert overlapping NYLL class claims with this action, which afford relief duplicative of Plaintiffs' FLSA claims (Doc. 172-1, ¶¶ 215-221).[5]

The pendency of these overlapping cases is a threshold issue on which the Court should order briefing prior to considering Plaintiffs' Motion, because of the real likelihood of confusing the potential opt-in plaintiffs if notice is issued in two or all three of these cases. This is why the Federal Judicial Center recommends that a court faced with overlapping actions "coordinat[e]" any decisions with respect to "class certification, and other procedural matters," with the judges in the other actions. Barbara J. Rothstein & Thomas E. Willging, *Coordination with State Judges*, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES at § VI, p. 27 (Fed. Judicial Ctr. 2005). But by failing to address the pendency of these cases at all, Plaintiffs have frustrated the Court's ability to consider such procedural safeguards.

---

[4] A true and correct copy of the *Butskhrikidze* complaint is attached as **Exhibit 1** to the Second Declaration of Paul R. Piccigallo ("Piccigallo Decl."), filed contemporaneously herewith.

[5] *See Jiang v. D&S Wedding Planner*, Inc., 22-cv-643, 2023 WL 6307813, at *7 (E.D.N.Y. Sept. 28, 2023) ("Although Plaintiff pursues claims under both the FLSA and NYLL, Plaintiff may only recover once for Defendants' minimum wage and overtime violations."); *Ramirez v. Urion Constr.*, 674 F.Supp.3d 42, 49 (S.D.N.Y. 2023) ("[P]laintiffs may not recover under both the FLSA and NYLL for the same injury") (quotation omitted).

III.    **THE COURT SHOULD NOT CERTIFY THE PROPOSED COLLECTIVE**

A.    **The Standard For Conditional Collective Certification**

The FLSA permits an individual to sue for overtime violations on his or her own behalf "and other employees similarly situated." 29 U.S.C. § 216(b). Courts have discretion "to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as" party-plaintiffs, although notice "is neither necessary nor sufficient for the existence of" an FLSA collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 & n.10 (2d Cir. 2010) (internal quotation marks omitted).[6] Although commonly referred to as "collective certification," the "certification" of an FLSA collective does not "join additional parties to the action" or create a group of people "with an independent legal status." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to [the] action only by filing written consent with the court." *Id.* at 75 (internal quotations omitted). Conditional certification, in other words, does ***not*** create a representative action but instead creates "a kind of mass action, in which aggrieved workers act as a collective of ***individual*** plaintiffs with ***individual*** cases." *Pettenato v. Beacon Health Options*, Inc., 425 F. Supp. 3d 264, 279 (S.D.N.Y. 2019) (emphasis in original, quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)); *accord Wilson v. Jamaica Serv. Program for Older Adults, Inc.,* 708 F. Supp. 3d 213, 216 (E.D.N.Y. 2023) ("Unlike a Rule 23 class action, an FLSA collective action is not representative;" those "who join an FLSA action become parties with the same status in relation to the claims of the lawsuit as do the named plaintiffs.").

Procedurally, certification of an FLSA collective involves a two-step process. In the first

---

[6] The Second Circuit further noted that nothing in the FLSA requires court-authorized notice, although it "may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" *Myers*, 624 F.3d at 555, n.10.

step (which is at issue here), Plaintiffs must make a "factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt v. Fox Searchlight Pictures, Inc.,* 811 F.3d 528, 540 (2d Cir. 2016). Because collective "certification is not automatic," *Sanchez v. JMP Ventures, L.L.C.,* 13-cv-7264, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014), Plaintiffs must offer not only ***plausible*** allegations, but must "provide ***actual evidence*** of a factual nexus between [their] situation and the persons [they] claim[] are similarly situated," *Guillen v. Marshalls of MA*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) (emphasis added, quotation omitted); *accord Prizmic v. Armour, Inc.,* 05-cv-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("[M]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made.") (quotation omitted). After all, the FLSA's "notice and opt-in process . . . is not a discovery device to determine whether conditional certification is appropriate. More is required under the law"—namely, ***evidence*** that Plaintiffs and their colleagues "were subject to a common policy or practice of being denied overtime compensation" by ***each*** of the defendants. *Boice v. M+W U.S., Inc.,* 130 F. Supp. 3d 677, 696-97 (N.D.N.Y. 2015) (quoting *Sanchez*, 2014 WL 465542, at *2).

> ## B.    Plaintiffs Have Not Demonstrated Con Edison Was A Party To Any Policy Or Plan to Deprive Them Of Overtime Compensation

To demonstrate the proposed opt-in plaintiffs are "similarly situated," Plaintiffs were required to offer plausible allegations, backed up by a "factual showing[, demonstrating] that they and potential opt-in plaintiffs together were victims of a common policy or plan" carried out by each of the defendants to deprive them of overtime wages and timely wages. *Myers*, 624 F.3d at 555. But Plaintiffs have not satisfied that burden—they have failed to offer evidence or plausible allegation demonstrating that Con Edison was involved in any alleged common policy or plan to deprive them of overtime wages or the timely payment of their wages.

As the Court has explained, in cases like this, involving multiple defendants who are a mix of individuals and separate businesses, a plaintiff must provide evidence that **each defendant** participated in the alleged common policy or plan to violate the FLSA. *Johnson-Cradle v. KPS Affiliates, Inc.,* 22-cv-1052, 2023 WL 3091675, at *5 (S.D.N.Y. Apr. 26, 2023) (restricting notice to just one of two named defendants because plaintiff failed "to make the required threshold showing that there existed a 'uniform unlawful policy' across [both] companies").[7] As such, evidence that other the defendants in this case may have violated the FLSA does not permit the fact finder to jump to the conclusion that Con Edison did so as well, as such a "leap does not logically follow." *Martin v. Sprint/United Mgmt. Co.*, 15-cv-5237, 2016 WL 30334, at *8 (S.D.N.Y. Jan. 4, 2016).

Accordingly, to warrant conditional certification against Con Edison under their joint employment theory, Plaintiffs were required to present some evidence to support the notion that Con Edison was their joint employer. That inquiry requires an evaluation of the evidence offered concerning that alleged "employment relationship," *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013), keeping in mind that the joint employment doctrine is not intended to "subsume typical outsourcing relationships." *Jean-Louis v. Metro. Cable Commc'ns, Inc.,* 838 F. Supp. 2d 111, 123 (S.D.N.Y. 2011) (quotation omitted). Factors to consider are whether Con Edison "(1) had the power to hire and fire [Plaintiffs], (2) supervised and controlled [Plaintiffs'] work schedules or conditions of employment, (3) determined [Plaintiffs'] rate and method of payment,

---

[7] *See also Lubas v. JLS Group, Inc.,* 18-cv-6611, 2020 WL 4210754, at *11 (E.D.N.Y. July 22, 2020) (restricting notice to 2 of 3 defendants because "Plaintiffs have not provided sufficient evidence to show that there was a uniform policy or practice across all *three* employers") (emphasis in original); *Korenblum v. Citigroup*, 195 F. Supp. 3d 475, 483, 487 (S.D.N.Y. 2016) (in dispute over plaintiffs' "boilerplate allegations" about Citi being their joint employer, denying conditional certification because plaintiffs failed to offer evidence showing "that Citi bore any responsibility for" its vendors' pay practices); *Castro v. Spice Place, Inc.,* 07-cv-4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009) (delaying conditional certification because "plaintiffs have not made the necessary showing that these [complained-of] actions were a reflection of a common policy, maintained by all defendants, in violation of the FLSA").

and (4) maintained [Plaintiffs'] employment records." *Ortiz*, 2024 WL 3086161, at *10. But Plaintiffs have not offered evidence (or even plausible allegation) demonstrating that Con Edison was a direct party to any common policy or plan to deprive them of overtime or timely wages.

To be clear, Con Edison is not presently asking the Court to hold that Con Edison did not jointly employ Plaintiffs—that substantive issue will likely be addressed later. Rather, the point here is that Plaintiffs have failed to introduce plausible allegations and sufficient evidence to show that Con Edison was part of any unlawful "common policy or plan" to deprive them of overtime wages or timely wage payments. *Johnson-Cradle*, 2023 WL 3091675, at *4; *Lubas v. JLS Group, Inc.*, 18-cv-6611, 2020 WL 4210754, at *11 (E.D.N.Y. July 22, 2020); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 483, 487 (S.D.N.Y. 2016); *Castro v. Spice Place, Inc.*, No. 07 civ 4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009).

### 1.    *No Evidence Con Edison Controlled The Rates Or Method Of Payment*

Because Plaintiffs' claims surround the "failure to pay overtime and timely wages" (Doc. 222 at 7), the second of the formal control" factors—which asks whether the putative joint employer "determined the rate and method of payment"—is particularly relevant to the conditional certification inquiry. *Ortiz*, 2024 WL 3086161, *10 (quotation omitted).

Here, Plaintiffs offer no evidence or plausible allegation that Con Edison "controlled" their rates or method of payment. Although they generally allege in group-pleading fashion that "Con Edison, CESG Defendants, and Subcontractors established [their] hourly rates," which ranged from "$15.00 to $17.00 for Flaggers and $10.00 to $12.00 for Spotters," Plaintiffs concede that Con Edison paid CES for their work ***not at those rates***, but at "the hourly unit prices set in the BPAs," and that CES would separately pay plaintiffs through CES's own subcontractors, at whatever rates they had agreed to (Doc. 222 at 18; *accord* Doc. 102, ¶ 9 (explaining prior to the filing of this lawsuit, Con Edison "ha[d] no knowledge regarding what hourly rate CES and

Concord paid its own employees and/or contractors")). And the Subcontractors, in turn, would pay Plaintiffs at whatever rate the Subcontractors negotiated with them (*see, e.g.*, Doc. 223-27 at 14 (Form 1099 from the Argani Defendants to Plaintiff Rosario); Doc. 223-28 (text exchange in which Plaintiff Rosario is informed by the A&M Defendant's owner of his pay rate). And to be clear, the rates in Con Edison's BPAs with CES **are far higher** than "$15.00 to $17.00 for Flaggers and $10.00 to $12.00 for Spotters" (*Compare id. with* Doc. 171-3 at 4-5 *and* Doc. 171-4 at 5-6). Plaintiffs' declarations and exhibits further demonstrate that they looked to the CESG Defendants and Subcontractors—not Con Edison—"to rectify" any issues with their pay (Doc. 223-2, ¶¶ 13, 46 (Plaintiff Nashaily Ortiz declaration)).[8]

Moreover, while Plaintiffs complain they were not paid overtime by the Subcontractors for their work, it is beyond cavil that CES billed Con Edison for—and that Con Edison paid for— ***millions of dollars*** at the BPAs' overtime rates for overtime, emergency, and Holiday work performed by Plaintiffs and their colleagues. In fact, during the relevant period, CES has billed Con Edison for over $12,000,000.00 at overtime rates for Plaintiffs' reported overtime, holiday, and emergency work (Doc. 170, ¶ 10). Such evidence, coupled with Plaintiffs' own concessions, "undermines [their] assertion that [Con Edison was part of] a common plan or policy not to compensate" them for overtime work, and equally undermines their contention that Con Edison was somehow their joint employer. *Stewart v. Hudson Hall LLC*, 20-cv-885, 2021 WL 1750368, at *8 (S.D.N.Y. May 4, 2021) (denying conditional certification where defendants demonstrated

---

[8] *See also* Doc. 223-3, ¶¶ 13, 45 (same for Plaintiff Lopez); Doc. 223-4, ¶¶ 13, 43 (same for Plaintiff Najarro); Doc. 223-5, ¶¶ 13, 42 (Plaintiff Nashemir Ortiz); Doc. 223-6, ¶¶ 13, 40 (same for Plaintiff Allicott); Doc. 223-7, ¶¶ 13, 40 (same for Plaintiff Rosario); Doc. 223-8, ¶¶ 13, 41 (same for Plaintiff Bundrick); Doc. 223-9, ¶¶ 13, 42 (same for Plaintiff Rosado); Doc. 223-10, ¶¶ 13, 42 (same for Opt-in Plaintiff Philip); Doc. 223-22 (text chain between Plaintiff Lopez and the Argani Defendants's owner confirming his hours for the weeks ending July 21, 2021 and July 28, 2021); Doc. 223-23 (text change between Plaintiff Lopez and the Argani Defendants' owner regarding pay-related questions); Doc. 223-17 at 2, 5-9 (same); Doc. 223-23 (same); Doc. 223-27 at 5-15, 20 (same for Plaintiff Rosario); Doc. 223-28 (text chain between Plaintiff Rosario and the A&M Defendants' owner regarding pay-related questions).

they "paid . . . overtime" to many employees, dispelling the notion the plaintiff and the putative collective were "similarly situated" with respect to the plaintiffs' unpaid overtime claim).

Similarly, Plaintiffs' group-pleading claim that they were denied proper compensation because the "Defendants" misclassified them "as independent contractors" (Doc. 222 at 19) is belied by the specific allegations of their complaint and declarations, both of which make clear that it was the CESG Defendants, ***and not Con Edison***, who supposedly "pressured [them] to form their own businesses" to secure their "status as independent contractors" (Doc. 210, ¶¶ 239-240).[9] Because Plaintiffs do not contend that Con Edison was involved in forcing them to create their own companies, there once again is no commonality or similarity between Plaintiffs' claims against the CESG Defendants and Subcontractors, and Plaintiffs' claims against Con Edison.

As such, Plaintiffs have not plausibly alleged or evidenced that Con Edison controlled their rates or method of payment. As this belies their joint employer-based claims, certification of any FLSA collective against Con Edison would be inappropriate.

### 2.    *No Evidence Con Edison Had The Power To Hire Or Fire Plaintiffs*

Plaintiffs offer no evidence or plausible allegation suggesting Con Edison had the power to hire them. As explained in Con Edison's motion to dismiss, while Plaintiffs' complaint contends that "Con Edison, CESG Defendants, and the Subcontractors" all had "the power to hire" them (Doc. 230 at 14 (quoting Doc. 210, ¶ 224)), that generic, group-pleading allegation is belied by the complaint's other specific allegations, which claim that Plaintiffs were not hired by Con Edison at

---

[9] *See also* Doc. 223-7, ¶ 35 (Plaintiff Rosario testifying the "CESG Defendants and Argani Defendants informed [him] that [he] . . . had to form my own corporation to get paid, to make it appear as though I was an independent contractor," or else the CESG Defendants would "effectively terminate my employment); Doc. 223-6, ¶ 34 (alleging that CESG Defendant personnel "told [Plaintiff Allicott] to create my own corporation . . . to make it appear as though I was an independent contractor"); Doc. 223-8, ¶ 36 (same for Plaintiff Bundrick); Doc. 223-9, ¶ 37 (same for Plaintiff Rosado); Doc. 223-10, ¶ 37 (same for Opt-in Plaintiff Philip, who also alleges that the A&M Defendants' owner threatened to "effectively terminat[e her] employment" if she did not create her own corporation).

all, but by the CESG Defendants or one of their subcontractors (*Id.* (citing Doc. 210, ¶¶ 123, 139, 169, 225, 351, 388, 441, 482, 516, 540, 576, 615). Plaintiffs' Motion and their supporting declarations further confirm that they were not hired by Con Edison (*see* Doc. 222 at 16).[10]

Similarly, Plaintiffs offer no evidence or plausible allegation that Con Edison had the power to directly discipline or fire them. Again, while Plaintiffs allege in group-pleading fashion that "Con Edison, CESG Defendants, and Subcontractors" all had the "power to fire[] and discipline" them (Doc. 210, ¶ 224; *accord* Doc. 222 at 16), Plaintiffs offer no concrete, specific examples of Con Edison firing them or directly disciplining them. Instead, the revised and amended allegations of Plaintiffs' complaint simply allege that Con Edison could "report" Plaintiffs for various infractions, and that it was up to the CESG Defendants to determine whether any discipline should be imposed, and the "appropriate [level of] discipline" to impose (*Id.*, ¶¶ 234 (alleging the CESG Defendants would "either directly discipline the Employee or w[ould] instruct the Subcontractor . . . to discipline the Employee")). This is confirmed by Plaintiffs' own declarations and exhibits (Doc. 223-3 at ¶¶ 33, 38-39 (Plaintiff Lopez testifying that the "CESG Defendants directly discipline Employees or instruct Argani Defendants and/or Concord Defendants to" do so, and that she was told by Jeannine Napoleone-Colbert (a CESG Defendant manager) that "the decision to suspend comes from Sablini," the Argani Defendants' owner) (bracketed text omitted)).[11]

---

[10] *See also* Doc. 223-2, ¶ 31 (Plaintiff Nashaily Ortiz testifying she was interviewed and hired by the CESG Defendants); Doc. 223-7, ¶ 31 (same, for Plaintiff Rosario); Doc. 223-8, ¶ 31 (same for Plaintiff Bundrick); Doc. 223-10, ¶ 31 (same for Opt-in Plaintiff Philips); Doc. 223-3, ¶ 31 (Plaintiff Lopez testifying that a CESG Defendant employee named "Guvstavo[,] interviewed me . . . [and] hired me"); Doc. 223-4, ¶ 31 (same, for Plaintiff Najarro); Doc. 223-9, ¶ 31 (same, for Plaintiff Rosado); Doc. 223-5, ¶ 31 (Plaintiff Nashemir Ortiz testifying he was interviewed and hired by Jeannine Napoleone-Colbert, a CESG manager); Doc. 223-6, ¶ 31 (Plaintiff Allicott testifying he was interviewed and hired by "Crystal," a "manager and/or employee of CESG Defendants").

[11] *See also* Doc. 223-2 at ¶ 33 (Plaintiff Nashaily Ortiz testifying that the "CESG Defendants directly discipline Employees or instruct Argani Defendants to" do so); Doc. 223-5, ¶ 33 (same for Plaintiff Nashemir Ortiz); Doc. 223-9, ¶ 33 (same for Plaintiff Rosado); Doc. 223-4, ¶¶ 33, 37 (Plaintiff Najarro testifying that the "CESG Defendants directly discipline Employees or instruct Argani Defendants and/or Concord Defendants to" do so, and that he was

Nevertheless, Plaintiffs attempt to make much of Con Edison's ability to complain to CES about Plaintiffs' readiness or performance, and—in extreme cases—to request that certain individuals not be assigned to future Con Edison projects as evidence of joint employment (Doc. 222 at 17). However, such ability does not evidence that Con Edison was their joint employer, as the legal distinction between a customer's ability to remove a contractor's employees from its work (which does ***not*** suggest joint employment), and the ability to literally fire a contractor's employees (which is indicative of joint employment), is routinely acknowledged by New York's courts. *See Godlewska v. HDA*, 916 F. Supp. 2d 246, 258 (E.D.N.Y. 2013) (client did not have the power to fire its vendor's employees, though it could request the vendor remove an attendant from performing work on the client's projects), *aff'd*, 561 F. App'x 108 (2d Cir. 2014).[12] Without evidence that Con Edison was directly involved in Plaintiffs' hiring, firing or discipline, Plaintiffs have not met their burden for conditional certification of a collective against Con Edison.

---

suspended by Jeaninne Napoleone-Colbert, one of the CESG Defendants' managers); Doc. 223-6, ¶33 (Plaintiff Allicott testifying that the "CESG Defendants directly discipline Employees or instruct MMT to" do so); Doc. 223-7, ¶ 33 (Plaintiff Rosario testifying the "CESG Defendants directly discipline Employees or instruct Argani Defendants and/or A&M Defendants to" do so); Doc. 223-10, ¶ 33 (same for Opt-in Plaintiff Philip); Doc. 223-8, ¶ 33 (Plaintiff Bundrick testifying that the "CESG Defendants directly discipline Employees or instruct Argani Defendants and/or 23 West to" do so); Doc. 223-19 (text change between Plaintiff Lopez and the CESG Defendants confirming that he was suspended by Defendant Sablini—the Argani Defendants' owner—after Con Edison complained of his failure to use stop and slow traffic paddles, which contributed to a traffic accident at a job site); Doc. 223-31 (text exchange between Plaintiff Rosario and a Con Edison project superintendent, in which Plaintiff Rosario explains that the CESG Defendants are trying to fire 10 flaggers for "steal[ing] time").

[12] *See also Martin v. Sprint/United Mgmt. Co.*, 273 F. Supp. 3d 404, 424-25 (S.D.N.Y. 2017) ("Sprint's power to de-authorize Wallace Morgan field agents from working on [its] campaign does not equate to the power to terminate."); *Jean–Louis*, 838 F. Supp. 2d at 123–24 (alleged joint employer's ability to de-authorize its vendor's employees from performing services at customers' homes did not equate to the power to fire those employees); *Lawrence v. Adderley Indus.*, Inc., No 09-cv-2309, 2011 WL 666304, at *3, 9 (E.D.N.Y. Feb. 11, 2011) (Cablevision's ability to request its installation vendor remove certain technicians from its jobs was an extension of Cablevision's quality control procedures, and not an indication of relevant control over those employees); *Gonzalez v. Allied Barton Sec. Servs.*, 08-cv-9291, 2010 WL 3766964, at *4 (S.D.N.Y. Sept. 7, 2010) (granting DOT's motion for summary judgment on plaintiff's joint employer claim because the "DOT's ability to request reassignment [of plaintiff] did not constitute an employer relationship"); *Yacklon v. East Irondequoit Cent. Sch. Dist.*, 733 F. Supp. 2d 385, 390 (W.D.N.Y. 2010) (The District had no power to hire or fire [plaintiff] …. All that the District did here—and all that it could do, under its contract with LaidLaw—was to reject [plaintiff] as a driver on routes serving the District's schools and students.").

### 3.    *No Evidence Con Edison Controlled Plaintiffs' Work Schedules*

Plaintiffs also offer no evidence or plausible allegation that Con Edison "controlled [their] work schedules." *Ortiz*, 2024 WL 3086161, at *10. What they claim is that Con Edison determined when and where it needed flagging and spotting services performed, and that once Con Edison informed CES of that information, the duty of staffing those projects was handled by the CESG Defendants and Subcontractors (Doc. 222 at 11-12).[13] In fact, the documents offered by Plaintiffs are replete with examples of them seeking assignments from the CESG Defendants and Subcontractors, and not from Con Edison (*see, e.g.*, Doc. 223-18 at 2 (text exchange between Plaintiff Lopez and a CESG Defendant employee, wherein Plaintiff Lopez requests work assignments, but is told to call CESG's telephone hotline); Doc. 223-24 at 2 (text exchange between Plaintiff Lopez and the Argani Defendants' owner, seeking work assignments). And while Plaintiffs note that Con Edison could request that a flagger be reassigned to a continuing project (Doc. 222 at 12), scheduling and work assignments ultimately remained the CESG Defendants' responsibility (Doc. 223-10, ¶ 17 (Opt-in Plaintiff Philips noting that Con Edison "could" request "that [he] continue working on a jobsite").[14] However, according to a text exchange between Plaintiff Rosario and the Argani Defendants' owner, the ability to even make such requests ended with the roll-out of the CESG Defendants' Smartphone App (Doc. 223-27 at 17).[15]

---

[13] *See also* Doc. 223-2, ¶¶ 13-16 (Nashaily Ortiz decl., describing process by which could be assigned shifts by the CESG Defendants); Doc. 223-3, ¶¶ 13-16 (same for Plaintiff Lopez); Doc. 223-4, ¶¶ 13-16 (same for Plaintiff Najarro); Doc. 223-5, ¶¶ 13-16 (same for Plaintiff Nashemir Ortiz); Doc. 223-6, ¶¶ 13-16 (same for Plaintiff Allicott); Doc. 223-7, ¶¶ 13-16 (same for Plaintiff Rosario); Doc. 223-8, ¶¶ 13-16 (same for Plaintiff Bundrick); Doc. 223-9, ¶¶ 13-16 (same for Plaintiff Rosado); Doc. 223-10, ¶¶ 13-16 (same for Opt-in Plaintiff Philip).

[14] *See also* Doc. 223-2, ¶ 17 (Nashaily Ortiz Decl., noting Con Edison "could" request her continued assistance on ongoing projects); Doc. 223-3, ¶ 17 (same for Plaintiff Lopez); Doc. 223-4, ¶ 17 (same for Plaintiff Najarro); Doc. 223-5, ¶ 17 (same for Plaintiff Nashemir Ortiz); Doc. 223-6, ¶ 17 (same for Plaintiff Rosario); Doc. 223-8, ¶ 17 (same for Plaintiff Bundrick); Doc. 223-9, ¶ 17 (same for Plaintiff Rosado).

[15] Plaintiffs attempt to portray the Smartphone App as a creation of the "Defendants," and indicative of "Defendants" control over their schedules (Doc. 222 at 12). Con Edison, of course, does not own or operate the Smartphone App, or its associated hardware, code and data files (Doc. 170, ¶ 11). That Smartphone App was developed, owned and operated by CES (*see, e.g.*, Doc. 223-32 (Smartphone App login screen revealing it is hosted at

None of this is indicative of Con Edison "controlling" Plaintiffs' schedules. *See Godlewska,* 916 F. Supp. 2d at 259 ("Simply determining when a certain job will be performed is not tantamount to determining which employee will perform that job at a particular time."); *Jean-Louis v. Metro Cable Commc'ns*, *Inc.,* 838 F. Supp. 2d 111, 126 (S.D.N.Y. 2011) (establishing "time windows" for vendor's employees to perform their work does not, standing alone, demonstrate that the client controlled the vendor's employees' work schedules); *Lawrence v. Adderley Indus.*, *Inc.,* No. 09-cv-2309, 2011 WL 666304, at *8 (E.D.N.Y. Feb. 11, 2011) (same). Plaintiffs' declarations and documents instead make clear that their schedules and assignments were dictated by the CESG Defendants and Subcontractors. Thus, Plaintiffs have not met their burden for conditional certification of a collective against Con Edison.

### 4.    *No Evidence Con Edison Controlled Plaintiffs' Terms Of Employment*

"Extensive supervision is indicative of an employment relationship '***only if*** it demonstrates effective control of the terms and conditions of the plaintiffs' employment.'" *Gil v. Pizzarotti, LLC,* 19-cv-3497, 2021 WL 1178027, at *10 (S.D.N.Y. Mar. 29, 2021) (emphasis added, quotation omitted). As such, supervision to ensure compliance "with respect to contractual warranties," and applicable legal safety requirements, "has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 75; *accord Godlewska*, 916 F. Supp. 2d at 259 (same). But once again, Plaintiffs' Motion, declarations and exhibits fall short of demonstrating that Con Edison controlled the terms of Plaintiffs' employment.

---

https://ces.gtnetwork.com); Doc. 171-4 at 3 (Con Edison BPA with CESG, indicating that Con Edison cannot acquire the Smartphone App or its hardware and data prior to January 23, 2025); Doc. 223-19 at 2-5 (text exchange between Plaintiff Lopez and a CESG Defendant manager providing Smartphone App login information); Doc. 223-27 at 2 (text exchange between Plaintiff Rosario and the Argani Defendants' owner, informing Plaintiff Rosario that all assignments will now be made through Smartphone App, and that he should call the CESG Defendants for assistance in installing and operating the Smartphone App).

Consistent with their complaint, Plaintiffs' Motion claims Con Edison "controlled" their work by directing **at the start of their shifts** where to "direct traffic, where to erect signage and/or barricades, and which states or sidewalks to close" (Doc. 222 at 13; *accord* Doc. 210, ¶ 194 (alleging that Con Edison would "instruct" Plaintiffs "upon arrival at a jobsite" where "to stand to direct traffic")). Plaintiffs further complain they could not take a break without permission (*Id.* at 13-14). But as explained in Con Edison's motion to dismiss, Con Edison's project supervisors are legally required to conduct daily site safety meetings before any work begins and address the "[h]azards associated with the job, work procedures involved," and issues of traffic control management. *See* 29 C.F.R. §§ 1926.952(b); 1926.950(c)(3), 1926.967(g). Moreover, it is the New York Department of Transportation who requires (for obvious safety reasons) that a flagger "remain on duty until properly relieved" (Doc. 230 at 20 (quoting <u>Flagger-Work Zone Traffic Control Manual</u>, N.Y. Dep't of Transp. (online edition), *available at* https://webapps.dot.ny.gov/traffic-controllers-flagger (last visited Oct. 10, 2024) ("Flaggers must . . . [n]ever leave their position until relieved.").[16] As such, Plaintiffs have offered neither plausible allegation nor evidence of any "control" or "supervision" by Con Edison over their work (particularly as Plaintiffs' allegations of direction by Con Edison relate only to pre-work safety meetings, and not continuing direction throughout the day). *Godlewska*, 916 F. Supp. 2d at 259 ("[H]aving strict standards and monitoring compliance with those standards does not constitute

---

[16] *See also* <u>Department-Approved Course Requirements: 1-Hour Flag Person</u> at 3, New York City Dep't of Buildings (online ed.) (requiring all traffic flagger certification courses to address the responsibilities of traffic flaggers, including that they should "[n]ever leave their position until relieved"), *available at* https://www.nyc.gov/assets/buildings/pdf/sst_1-hour_flag_person.pdf (last visited Oct. 10, 2024). Compliance with such directives is mandatory—when utility work is to be performed on or adjacent to roadways, New York and federal regulations require the parties to use traffic control measures, including traffic control flagging measures, in a manner compliant with the Federal Highway Administration's Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD"), as supplemented by the New York Department of Transportation. *See, e.g.,* 29 C.F.R. §§1926.950, *et seq.*; New York City, N.Y., Rules, Tit. 34, § 2-01.1.

supervising and controlling employees' work conditions," especially "where the quality control's purpose is *to ensure compliance with the law or protect clients' safety*.") (emphasis added).[17]

Plaintiffs also attempt to evidence Con Edison's "control" over them by claiming that the "CESG Defendants and/or the Subcontractors, **on behalf of Con Edison**, issue[d them with] individually numbered timesheets" (Doc. 222 at 14). But the timesheets are documents Plaintiffs admit were created by the CESG Defendants and Concord, are marked with their names, and instruct Plaintiffs to submit a photo of their completed timesheets to the CESG Defendants daily, "at the completion of your job" (Doc. 210, ¶¶ 204-205). Plaintiffs' exhibits further demonstrate that it was the CESG Defendants and Subcontractors, not Con Edison, who would follow up with Plaintiffs regarding any untimely submitted timesheets (*see* Doc. 223-17 at 7, 10-11; Doc. 223-21 at 2, 4; Doc. 223-27 at 5-7). Nevertheless, Plaintiffs attempt to create some Con Edison involvement in the timekeeping process by claiming that they were required "to present th[eir] timesheet[s] to a Con Edison supervisor for their signature to certify the number of hours . . . worked that shift" (Doc. 222 at 14). However, out of the 70 timesheets Plaintiffs submit with their Motion, only one (1) bears a Con Edison supervisor signature, evidencing that such signatures were not a requirement for the CESG Defendants and Subcontractors to accept Plaintiffs' time entries (*compare* signed timesheet at Doc. 223-37 at 11 *with* unsigned timesheets at Doc. 223-15 at 2; Doc. 223-16 at 2-3; Doc. 223-17 at 4-5, 7-11; Doc. 223-18 at 2, 4, 8-9; Doc. 223-19 at 13; Doc. 223-20 at 2-8; Doc. 223-23 at 2; Doc. 223-24 at 2; Doc. 223-25 at 3; Doc. 223-26 at 2-3;

---

[17] *See also Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004) (affirming summary judgment to Air France even though it supervised its vendors' ground crews' "compliance with various safety and security regulations"); *Avila v. SLSCO, Ltd.,* No. 18-cv-426, 2022 WL 784062, at *14 (S.D. Tex. Mar. 15, 2022) ("[E]nsuring compliance with various jobsite safety regulations … does not demonstrate that SLS exercised sufficient control over its subcontractors' work to infer a joint-employer relationship."); *Medina v. 3C Constr. Corp.*, No. 02-cv-23090, 2005 WL 8156724, at *7-9 (S.D. Fla. Aug. 24, 2005) (same).

Doc. 223-27 at 3-4, 6; Doc. 223-31 at 3; Doc. 223-35 at 2-3, 5-8; Doc. 223-36 at 2-7; Doc. 223-37 at 2-10, 12-13; Doc. 223-38 at 2-7; Doc. 223-39 at 2-6; Doc. 223-43 at 4-7).

Moreover, Plaintiffs' exhibits demonstrate that the CESG Defendants and Subcontractors imposed additional job requirements and duties upon Plaintiffs. For example, Plaintiffs were instructed by the CESG Defendants to go to the CESG Defendants' office to pick up their timesheets (Doc. 223-18 at 6). The CESG Defendants also informed Plaintiffs that they must use "stop and slow" signs, not flags, for traffic control and that those failing to do so will be "taken off sites suspended and possible let go" (Doc. 223-31 at 2). The CESG Defendants also informed Plaintiffs that they had to take a picture of themselves when they arrived on site, to evidence they were properly equipped and attired (Doc. 223-21 at 8; Doc. 223-35 at 8). Separately, the Argani Defendants instructed their own employees that they had to arrive to job sites properly equipped and attired, or they "will be suspended or possibly terminated" (Doc. 223-27 at 3).

Accordingly, there is again an absence of evidence or plausible allegation that Con Edison was part of a policy or plan to deny Plaintiffs' overtime compensation for overtime work, or that Con Edison can be viewed as "controlling" or "supervising" Plaintiffs' work. Plaintiffs' Motion should therefore be denied.

### 5.    *No Evidence Con Edison Maintained Plaintiffs' Employment Records*

 Plaintiffs have also failed to offer plausible allegation or evidence that Con Edison "maintain[ed] all [of their] employment, personnel, and business records" (Doc. 222 at 19). What Plaintiffs state is that at the time they were hired, they were required by the CESG Defendants to "fill out an IRS Form 1099 and other paperwork with [their] personal information, including [their] bank account information so that [they] could be paid" (Doc. 223-9, ¶ 31).[18] Plaintiffs offer no

---

[18] *See also* Doc. 223-2, ¶ 31 (Plaintiff Nashaily Ortiz testifying that upon hiring, the CESG Defendants "ma[d]e a copy of [his] driver's license and flagging course training certificate and [had him] fill out an IRS Form 1099 and paperwork

evidence that such documents and information were shared with Con Edison.

Moreover, Plaintiffs reference the jobsite photographs they were required to take and submit daily, along with their timesheets, as part of their employment records (Doc. 222 at 19). However, as Plaintiffs' Motion, declarations and exhibits demonstrate, those documents were submitted to the CESG Defendants, and not Con Edison (*see* Doc. 223-2, ¶¶ 24-26; Doc. 223-3, ¶¶ 24-26; Doc. 223-4, ¶¶ 24-26; Doc. 223-5, ¶¶ 24-26; Doc. 223-6, ¶¶ 24-26; Doc. 223-7, ¶¶ 24-26; Doc. 223-8, ¶¶ 24-26; Doc. 223-9, ¶¶ 24-26; Doc. 223-10, ¶¶ 24-26; Doc. 223-21 at 8; Doc. 223-35 at 8), and that the CESG Defendants and Subcontractors would follow up with Plaintiffs regarding any missing timesheets (*see* Doc. 223-17 at 7, 10-11; Doc. 223-21 at 2, 4; Doc. 223-27 at 5-7). And although Plaintiffs refer to the Smartphone App and its data as another employment record (Doc. 222 at 19), Con Edison does not own or operate the Smartphone App, or its associated hardware, code and data files (Doc. 170, ¶ 11). That Smartphone App was developed, owned and operated by CES (*see* note 15 *supra*).

It should not be surprising that Con Edison did not maintain Plaintiffs' employment records, as Con Edison never employed Plaintiffs (Doc. 102, ¶ 8; Doc. 55, ¶ 13). The only records Con Edison was provided with were invoices from CES and Concord, and online access to Plaintiffs' timesheets (which only disclose the hours each Plaintiff performed flagging or spotting services on a Con Edison project site) for auditing and reconciliation purposes (*see, e.g.*, Doc. 223-2 (Nashaily Ortiz Decl.), ¶ 28 (alleging Con Edison "confirmed" CES's invoices "by cross-referencing them with" his timesheets); Doc. 223-6 (Allicott Decl.), ¶ 28 (same)). But those time sheets do not disclose Plaintiffs' wage rates, or the time they spent working for their employers'

---

with [his] personal information, including [his] bank account information so that [he] could get paid."); Doc. 223-3, ¶ 31 (same for Plaintiff Lopez); Doc. 223-4, ¶ 31 (same for Plaintiff Najarro); Doc. 223-5, ¶ 31 (same for Plaintiff Nashemir Ortiz); Doc. 223-6, ¶ 31 (same for Plaintiff Allicott); Doc. 223-7, ¶ 31 (same for Plaintiff Rosario); Doc. 223-8, ¶ 31 (same for Plaintiff Bundrick); Doc. 223-10, ¶ 31 (same for Opt-in Plaintiff Philip).

other clients, or for performing non-billable tasks for their employers. Moreover, Con Edison reviewed Plaintiffs' time sheets solely for auditing and invoice reconciliation purposes and, therefore, Con Edison's ability to access Plaintiffs' timesheets does not serve as evidence that Con Edison maintained their employment files, or even controlled their wages or method of payment. *Jean-Louis*, 838 F. Supp. 2d at 130-31 (Time Warner's retention of time records for its vendor's technicians did "not weigh in favor of finding that Time Warner jointly employs the technicians," where such records were used solely "to verify that [the contractor] correctly calculated the amount of work that [its] technicians actually performed").[19] And without evidence or plausible allegation that Con Edison maintained Plaintiffs' employment files, or evidence that Con Edison was their joint employer or part of a policy or plan to deny Plaintiffs overtime compensation, Plaintiffs' Motion should be denied.

### 6. *Plaintiffs Have Failed To Evidence Con Edison Meets Any Other Factors Indicative Of Joint Employment*

In assessing whether a defendant should be considered a plaintiff's "joint employer," New York's courts also consider a number of other factors, such as "(1) whether [the putative joint employer]'s premises and equipment were used for the plaintiffs' work; (2) whether the [putative joint employer's contractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer]'s process of production; [and] (4) whether responsibility

---

[19] *See also Martin v. Sprint/United Mgmt. Co.*, 273 F. Supp. 3d 404, 429 (S.D.N.Y. 2017) (retention of vendor employee data solely "for auditing and compliance reasons … does not weigh in favor of a finding of formal control"); *Godlewska*, 916 F. Supp. 2d at 262 (same); *Hugee v. SJC Group, Inc.*, No. 13 civ 0423, 2013 WL 4399226, at *7 (S.D.N.Y. Aug. 14, 2013) ("Although Plaintiff argues that NESCTC required him to fill out timesheets, he fails to allege any facts suggesting that NESCTC maintained these records beyond quality control purposes."); *Lawrence*, 2011 WL 666304, at *9 (Comcast's retention of start and stop times for vendor's technicians was not indicative of any control over those technicians, as Comcast retained those records solely "to ensure that [it] receive[d] the services for which it" was billed by its vendor).

under the [putative joint employer's] contracts could pass from one subcontractor to another without material changes." *Pierre v. City of New York*, 20-cv-5116, 2021 WL 3887912, at *7 (S.D.N.Y. Aug. 31, 2021) (quoting *Zheng*, 355 F.3d at 72).

But Plaintiffs offer no evidence to suggest that these factors are satisfied ***with respect to Con Edison***. The complaint's allegations and the Plaintiffs' declarations make clear that they were not provided equipment by Con Edison but were either provided the equipment they need by the CESG Defendants or told to buy it themselves by the CESG Defendants. *See* Doc. 223-7, ¶ 31 (Plaintiff Rosario testifying that the CESG Defendants provided him with a flashing baton, walkie talkie, hard hat and flagger sign, but was told by the CESG Defendants to buy his own steel-toed boots, jeans and safety vest); Doc. 210, ¶¶ 577 (same).[20] There is no specific allegation or testimony that Con Edison provided Plaintiffs with any of the equipment required by their jobs. Nor did Plaintiffs perform their work on any Con Edison property, but instead on the "public streets, roadways, and sidewalks throughout New York City" (Doc. 210, ¶ 8). This weighs against any joint employment finding, and therefore against conditionally certifying any collective against Con Edison. *Jean-Louis*, 838 F. Supp. 2d at 131-32 (finding Time Warner was not a joint employer of its vendor's installation technicians because they performed work in Time Warner's customers' homes, not on Time Warner premises).[21]

---

[20] *See also* Doc. 223-6, ¶ 5 (Plaintiff Allicott testifying he was provided by the CESG Defendants with a flashing baton, hard hat, flagger sign, but was instructed by the CESG Defendants to buy any other required equipment); Doc. 210, ¶ 541 (same); Doc. 223-5, ¶ 31 (Plaintiff Nasemir Ortiz testifying he was provided by the CESG Defendants with a hard hat and flagger sign, but was instructed by the CESG Defendants to buy any other required equipment); Doc. 210, ¶ 483 (same); Doc. 223-2, ¶ 31 (Plaintiff Nashaily Ortiz testifying he was instructed by the CESG Defendants to buy all his required equipment); Doc. 210, ¶ 351 (same); Doc. 223-3, ¶ 31 (same for Plaintiff Lopez); Doc. 210, ¶ 388 (same); Doc. 223-4, ¶ 31 (same for Plaintiff Najarro); Doc. 210, ¶ 441 (same); Doc. 223-8, ¶ 5 (same for Plaintiff Bundrick); Doc. 210, ¶ 615 (same); Doc. 223-9, ¶ 31 (same for Plaintiff Rosado); 223-10, ¶ 31 (same for Opt-in Plaintiff Philips). Conversely, Plaintiff Gamboa alleges that she was told to buy all her required equipment by the Argani Defendants (Doc. 210, ¶ 515).

[21] *See also Hugee*, 2013 WL 4399226, at *8 (fact that security guards worked at varying locations not owned by their employer's customer weighed against finding that customer was their joint employer); *Zavala v. PEI Elec. Servs. Group, Inc.,* 20-cv-9437, 2022 WL 2312794, at *9 (S.D.N.Y. June 28, 2022) (same, with respect to contractor's

Similarly, Plaintiffs offer no evidence suggesting the Subcontractors (their actual employers) had businesses that could not shift from one client to another, or how their jobs were "integral" to Con Edison's operations, or "whether responsibility under the contacts [between Con Edison and CESG, and between CESG and their actual employers,] could pass from one [vendor] to another without material changes." *Ortiz*, 2024 WL 3086161 at *10 (quoting *Zheng*, 355 F.3d at 72)). Plaintiffs' complaint offers only the most conclusory of allegations to address these factors (Doc. 210, ¶¶ 291-293), and their Motion doesn't address them at all (Doc. 222 *passim*). Nevertheless, this Court recently concluded that these factors weigh against any joint employment finding in cases brought by traffic flaggers against Con Edison, because (A) Con Edison's standardized BPAs with its traffic flagging vendors do not bar those vendors "from soliciting or taking on work from other contractors;" (B) traffic flagging is not a service integral to Con Edison's operations; and (C) Con Edison's practice of simultaneously "contact[ing] with multiple vendors to perform flagging work" demonstrates the "fungibility" of any one vendor's services. *Moses v. Consol. Edison Co. of New York Inc.*, No. 18-cv-1200, 2024 WL 1329800, at *9-10 (S.D.N.Y. Mar. 28, 2024).

In sum, Plaintiffs' Motion is due to be denied because it is premature and because it seeks to conditionally certify an FLSA collective against Con Edison even though Plaintiffs have offered no plausible allegations and no evidence that Con Edison was part of an "policy or plan" to deprive them of overtime compensation or timely wage payments. Indeed, the record reveals that Con Edison was billed for—and paid for—millions of dollars of overtime for the work of Plaintiffs and their colleagues, calculated from base wage rates far higher than the Subcontractors supposedly

---

electricians); Yongfu *Yang v. An Ju Home, Inc.,* 19-cv-5616, 2020 WL 3510683, at *5 (S.D.N.Y. June 29, 2020) (same, with respect to contractor's construction workers); *Martin*, 273 F. Supp. 3d at 429-30 (same, with respect to vendor's sales agents).

paid Plaintiffs. If there was some "conspiracy" to deprive Plaintiffs of such wages, Plaintiffs have failed to demonstrate that Con Edison was a part of it. For these reasons, the Court should deny Plaintiffs' request to conditionally certify an FLSA collective against Con Edison.

**IV.    EVEN IF THE COURT ORDERS NOTICE, PLAINTIFFS' PROPOSED NOTICES AND CONSENT FORM SHOULD NOT BE USED**

District courts have broad discretion to facilitate notice to potential FLSA opt-in plaintiffs. *Ruiz v. Truffa Pizzeria & Wine Room Corp*., 20-cv-8645, 2021 WL 568249, at *5 (S.D.N.Y. Feb. 15, 2021). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). While the goal of such notice is to notify persons "of the action and their opportunity to opt in," the purpose is not "the solicitation of claims," and "courts must take care to avoid even the appearance of judicial endorsement of the merits." *Lazaar v. Anthem Cos.*, *Inc.,* 678 F. Supp. 3d 434, 438, 442 (S.D.N.Y. 2023) (quoting in part *Hoffman-La Roche*, 493 U.S. at 174).

Con Edison objects to several aspects of Plaintiffs' proposed notices, consent form and notice distribution plan, including, but not limited to, the following reasons:

- **Notice language**. Plaintiffs' proposed notices and consent form are only in English, but courts typically require notices to be translated into "the predominate languages of the proposed collective." Genxiang *Zhang v. Hiro Sushi at Ollie's*, *Inc.,* No. 17-cv-7066, 2019 WL 699179, at *13 (S.D.N.Y. Feb. 5, 2019); *accord Lijun Geng v. Shu Han Ju Rest. II Corp*., No. 18-cv-12220, 2019 WL 4493429, at *19 (S.D.N.Y. Sept. 9, 2019) (translation "increase[s] the effectiveness of the notice in reaching potential opt-in plaintiffs."). In the related *Butskhrikidze* case, 7 of the 10 named plaintiffs submitted consent forms in Georgian, and the other 3 in Spanish (Piccigallo Decl. at Ex. 1, pp. 66-75). In the absence of information from Plaintiffs on this issue, if notice is to be issued, it should all be translated into at least English, Georgian, and Spanish.

- **The Introductory Bullet Points.** To ensure neutrality and balance, the notice's introduction should conclude with a bullet point before Section 1 stating "No determination has been made that you are owed any amount of money, and the Court is not endorsing the merits of this lawsuit or advising you to participate in this lawsuit. You are under no obligation to respond to this Notice." *Villalta v. 101-11 86 Ave. Corp.*, No. 20-cv-249, 2022 WL 462408, at *8 (E.D.N.Y. Feb. 15, 2022); *accord Ding v. Mask*

*Pot Inc.*, No. 20-cv-6076, 2024 WL 4351081, at \*12 (E.D.N.Y. Oct. 8, 2024) (directing notice to "include a statement of the Court's neutrality in th[e] case", and proposing addition of the following disclosure: "The Court has taken no position in this case regarding the merits of the Plaintiffs' claims or of the Defendants' defenses. The Court does not encourage or discourage your participation in this case."). Similar disclosures should be added to any reminder notice. *Reilly v. City of New York*, No. 23-cv-521, 2024 WL 4125360, at \*2 (S.D.N.Y. Aug. 7, 2024). Alternatively, the notices should remove any reference to being "Court approved." *Xia v. New Yung Wah Carrier LLC*, 21-cv-4475, 2023 WL 130830, at \*11 (E.D.N.Y. Jan. 9, 2023).

- **Defendants' positions**. In describing "What is this lawsuit about?," Plaintiffs' notices fail to provide any summary of the Defendants' positions (Doc. 223-11 at 3). New York's courts commonly require any FLSA notice to, at a minimum, "include a summary describing the employers' position," including any denials that they are an "employer under the FLSA," *Norris v. ProCORE LLC*, No. 21-cv-7014, 2022 WL 1205143 at \*7 (E.D.N.Y. Apr. 22, 2022), and a statement indicating "the absence of any adjudication [by the Court] on the merits" of the plaintiffs' claims. *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 356 (S.D.N.Y. 2017).[22]

- **Coerced representation**. In describing "Will I have a lawyer in this case?" and "How do I join this lawsuit?," the proposed notices and consent form fail to inform potential opt-ins of their right to appear here *pro se* or through their own counsel. The notices and consent form in fact suggest the opposite, seeking to coerce potential opt-in plaintiffs to accept representation from Plaintiffs and their counsel (Doc. 223-11 at 4 (stating that "[i]f you choose to join this case, you will be represented by" Plaintiffs' counsel); *Id.* at 5-6 (consent form, requiring potential plaintiffs to "appoint" Plaintiffs and their counsel to represent them in this action). Disclosing, in a separate section of the notice, entitled "What happens if I do nothing?," that potential opt-ins have the right to "not be included in this case" and "to hire [their] own attorney and/or file an independent lawsuit" does not solve the problem (*Id.* at 3-4). Potential opt-ins must be informed that they can join this action ***and*** participate independently or through their own counsel. *Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010) (in FLSA collective cases, "proposed plaintiffs are not required to accept plaintiffs' counsel as their own," and any notice must "make that clear").[23] After

---

[22] *See also Severino v. Avondale Care Grp., LLC,* No. 21-cv-1720, 2022 WL 16555372, at \*5 (S.D.N.Y. Oct. 29, 2022) (requiring FLSA notice be amended to include statement that defendant "doesn't agree that it violated the law, and the Court hasn't made any decision yet about who is right."); *Bethel v. BlueMercury, Inc.,* No. 21-cv-2743, 2022 WL 3594575, at \*15 (S.D.N.Y. Aug. 22, 2022) (ordering FLSA notice be revised to explain defendant's position with respect to the case); *Martinenko v. 212 Steakhouse Inc.*, 22-cv-518, 2022 WL 1227140, at \*7 (S.D.N.Y. Apr. 26, 2022) (same); *Mikityuk v. Cision US Inc.*, 21-cv-510, 2021 WL 1750370, at \*8 (S.D.N.Y. May 4, 2021) (as an FLSA notice is "not a solicitation," ordering notice be revised to provide "that Defendants deny the allegations and …. also indicate that the Court has not decided who is right or who is wrong").

[23] *See also Orbetta v. Dairyland USA Corp.*, No. 20-cv-9000, 2024 WL 3385640, at \*10 (S.D.N.Y. July 12, 2024) (ordering notice section captioned "Do I have a lawyer in this case?" be revised to disclose that potential opt-ins "may retain their own counsel"); *Tung v. Banzai Steakhouse Inc.*, 22-cv-5750, 2023 WL 5827643, at \*5 (S.D.N.Y. Sept. 8, 2023) (ordering FLSA notice be revised to clarify "that potential opt-in plaintiffs may consult or retain their own counsel"); *Bethel*, 2022 WL 3594575, at \*15 (same); *Rodney v. Casella Waste Sys., Inc.*No. 21-cv-196, 2023 WL

all, an FLSA collective, unlike a Rule 23 class, is ***not*** a traditional "form of representative action." *Pettenato v. v. Beacon Health Options, Inc.,* 425 F. Supp. 3d 264, 279 (S.D.N.Y. 2019). Instead, "Congress saw fit to require that individuals in multi-party FLSA suits not simply be absentee members of a collective whose interests are represented by proxy but, rather, fully fledged litigants with the same rights and autonomy as any named plaintiff." *Vasquez v. A+ Staffing LLC*, No. 22-cv-2306, 2024 WL 3966246, at *22 (E.D.N.Y. Aug. 27, 2024).

- **<u>No information regarding potential opt-ins' litigation obligations</u>**. The notice's section "<u>What happens if I join the lawsuit?</u>" fails to inform potential opt-ins that by joining this lawsuit, they may be asked to appear for a deposition, respond to discovery, and testify at trial (Doc. 223-11 at 3). The section also fails to inform potential opt-ins of their duty of their evidentiary preservation obligations (*Id.*) This Court has "routinely approve[d] requests to include [such] information." *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 666.[24]

- **<u>Defense contact information</u>**. The notices do not include contact information for defendants' counsel. As the Court has explained, an FLSA notice should "include defense counsel's contact information." *Zhao v. Surge Private Equity LLC*, No. 22-cv-7314, 2023 WL 3477591, at *8 (S.D.N.Y. May 16, 2023) (quoting in part *Norris*, 2022 WL 1205143, at *6).[25]

---

313929, at *12 (D. Vt. Jan. 19, 2023) ("Courts frequently approve language clarifying that opt-in plaintiffs are not required to accept plaintiffs' counsel as their own."); *Gillett v. Zara USA*, 20-cv-3734, 2021 WL 1731836, at *8 (S.D.N.Y. May 3, 2021) (same); *Moses v. Griffin Indus., LLC,* 18-cv-1200, 2020 WL 5813737, at *4 (S.D.N.Y. Sept. 30, 2020) (same); *Chicas v. Kelco Constr.*, Inc., No. 21-cv-9014, 2023 WL 2072026 (S.D.N.Y. Feb. 19, 2023) (ordering notice be revised to include "more balanced information" on potential opt-in plaintiffs' right to participate in case through counsel of their own choosing); *Islam v. LX Ave. Bagels, Inc.,* 18-cv-4895, 2019 WL 5198667, at *10 (S.D.N.Y. Sept. 30, 2019) (any FLSA notice must "clearly provide[] the option for a plaintiff to choose another lawyer or to participate without a lawyer"); *Martin*, 2016 WL 30334, at *18 (same).

[24] *See also Orbetta*, 2024 WL 3385640, at *10 (ordering FLSA notice to be revised to "remind opt-in plaintiffs about their discovery and preservation obligations"); *Sanchez v. Clipper Realty, Inc.*, No. 21-cv-8502, 2024 WL 3159821, at *14 (S.D.N.Y. June 25, 2024) (ordering FLSA notice to "advise potential plaintiffs that they may be required to provide information, appear for a deposition, or testify if they opt-in"); *Severino*, 2022 WL 16555372, at *6 (approving of notice language explaining that potential opt-ins "may be asked to provide relevant information" and, "[f]or this reason, if you join the lawsuit, you should preserve all documents relating to your employment with [defendant] in your possession"); *Bethel*, 2022 WL 3594575, at *15 (directing that FLSA notice explain that "[i]f you join this lawsuit, you may be asked to give testimony and information about your work for" the defendants); *Martin*, 2016 WL 30334, at *18 (same); *Hall v. City of New York*, 22-cv-10193, 2023 WL 6318082, at *14 (S.D.N.Y. Sept. 28, 2023) (same).

[25] *See also Beda v. Nurtury at Flandreau, Inc.,* No. 22-cv-4827, 2024 WL 2793734, at *8 (S.D.N.Y. May 28, 2024) (directing that the FLSA notice be amended to "include defense counsel's contact information"); *Sanchez*, 2024 WL 3159821, at *14 (same); *Chicas*, 2023 WL 2072026, at *5 (same); *Bethel*, 2022 WL 3594575, at *15 (same); *Xia*, 2023 WL 130830, at *12 (ordering FLSA notice to include defense counsel's contact information, "as this will allow potential Plaintiffs access to a more complete analysis of the potential claims"); *Reyes v. A.B. Bakery Restaurant Corp.,* No. 23-cv-1612, 2023 WL 5918056 *5 (S.D.N.Y. Sept. 11, 2023) (same); *Zimnicki v. Krusiak Construction Corp.,* No. 21-cv-04634, 2022 WL 17820139 *11 (E.D.N.Y. Sept. 27, 2022)(same); *Gillet*, 2021 WL 1731836, at *8 (same); *Zhongle Chen v. Kicho Corp.*, 18-cv-7413, 2020 WL 1900582, at *10 (S.D.N.Y. Apr. 17, 2020) ("The Court agrees with other "courts in this Circuit, which have generally concluded that the contact information of Defendants' counsel 'is appropriate for inclusion in a notice of collective action."); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, 18-

- **Text messaging is unnecessary**. Plaintiffs propose to distribute the notice and reminder notice through "certified mail, email, [and] text message" (Doc. 222 at 36). But Plaintiffs have offered no justification for why text messaging is necessary *in addition to* mail and e-mail notice. *Pettenato*, 425 F. Supp. 3d at 285-86 (absent explanation why the use of mail and email alone would be ineffective, "Plaintiffs' request to deliver notice by text message … is denied").[26]

- **Smartphone App posting**. Plaintiffs also request that notice be posted on CES's Smartphone App (Doc. 222 at 30). However, because Con Edison does not own, possess, or control that Smartphone App, or its associated hardware, data files or source code (*see* note 15 *supra*), Con Edison cannot opine whether such posting is even technically feasible. Absent evidence from Plaintiffs and CES ensuring that posting on the Smartphone App is truly possible, such request should be denied.

- **Link-based electronic submission of Consent to Join forms**. Plaintiffs request that the notice include "a link to access [and submit] Consent Forms electronically" (Doc. 222 at 28; Doc. 223-11 at 3). New York's courts have frequently expressed concerns "in response to such requests," and therefore denied the addition of "QR codes" and electronic links in electronically distributed notices. *Hong v. Haiku @ WP*, *Inc.,* 582 F. Supp. 3d 117, 135-36 (S.D.N.Y. 2022) (collecting cases); *Accord Singh v. Anmol Food Mart*, *Inc.,* No. 22-cv-5475, 2024 WL 308241, at *5 (E.D.N.Y. Jan. 26, 2024) ("[T]he Court refuse[d] to authorize the use of QR codes . . . . [that would allow individuals to] 'download, sign, and submit' the" consent form); *Ding* 2024 WL 4351081, at *9 (same); *Chen v. Thai Greenleaf Rest. Corp.*, No. 21-cv-1382, 2024 WL 3742718, at *6 (E.D.N.Y. Aug. 9, 2024) (same); *Lin v. JD Produce Maspeth LLC*, No. 20-cv-2746, 2021 WL 5163218, at *13 (E.D.N.Y. Nov. 5, 2021) ("[T]he Court is not persuaded that [electronic links and QR codes] are necessary, and shares many of the concerns expressed by other courts" with use of such links); *Panora v. Dennora Corp.*, 521 F. Supp. 3d 177, 180-81 (E.D.N.Y. 2021) (sanctioning plaintiffs' counsel for using unapproved links in electronic notices).

- **No information about Plaintiffs' fee and cost arrangement**. In its "Will I have a lawyer in this case?" section, the notice states that if damages are recovered, "then attorneys' fees will either be part of the settlement or judgment" but if "Plaintiffs do not recovery anything . . . , you will not pay any attorneys' fees" (Doc. 223-11 at 4).

---

cv-12220, 2019 WL 4493429, at *19 (S.D.N.Y. Sept. 9, 2019) ("[T]o take care to avoid even the appearance of judicial endorsement of the merits of the action," an FLSA notice should include defense counsel's contact information.).

[26] *See also Reilly*, 2024 WL 4125360, at *1 ("The Court declines to permit text message notification because Plaintiffs have not shown that such notification is warranted" given that "Defendants have already consented to notification via email."); *Chicas*, 2023 WL 2072026, at *6 (denying use of text messaging because "[t]he courts in this District do not permit notice by text message as a matter of course," but instead based on demonstrated "showing of need"); *Pierre v. City of New York*, No. 20-cv-5116, 2022 WL 4482295, at *8 (S.D.N.Y. Sept. 27, 2022) (use of text messaging denied as "Plaintiff has not demonstrated that the three other methods of notice[, i.e., mail, email and workplace posting], would be insufficient to effectuate notice"); *Park v. FDM Group Inc.*, 16-cv-1520, 2019 WL 2205715, at *7 (S.D.N.Y. May 22, 2019) (same); *Hotaranu v. Star Nissan Inc.*, 16-cv-5320, 2017 WL 1390808, at *6 (E.D.N.Y. Apr. 12, 2017) (same).

This fails to provide sufficient information to potential opt-ins regarding counsel's fee arrangement and the opt-ins' cost responsibility. *Hong*, 582 F. Supp. 3d 133 (FLSA notice "should disclose the fee arrangement between Plaintiff's counsel and any opt-in plaintiffs" and explain "how costs will be handled in the event of a judgment against plaintiffs.").[27]

But the Court need not resolve these concerns at this time. If the Court grants conditional certification, the Court should order the parties to meet and confer regarding the form and content of the notice and consent forms and, to the extent they are unable to reach an agreement, brief any outstanding issues for resolution by the Court. *See Gillett*, 2021 WL 1731836, at *8; *Alvarado v. Villas Mkt. Place Inc.*, 19-cv-4036, 2020 WL 91489, at *3 (S.D.N.Y. Jan. 8, 2020).

## V.    EQUITABLE TOLLING IS NOT PRESENTLY WARRANTED

Plaintiffs ask the Court to equitably toll the FLSA statute of limitations for the potential opt-ins dating back some twenty-five (25) months, to October 26, 2022, through "the close of any Court-ordered opt-in period" (Doc. 222 at 32). The Court should deny this request as premature.

Equitable tolling is "a rare remedy to be applied in unusual circumstances, not [as] a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007); *accord Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d. Cir. 2004) ("[I]f applied too liberally [equitable tolling] threatens to undermine the purpose of statutes of limitations"). A plaintiff seeking such tolling "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The focus "is not [on] the 'diligence of a plaintiff who has already timely filed a claim,' but rather [on that] of a plaintiff ***who is seeking application***

---

[27] *See also Yi Mei Ke v. JR Sushi 2 Inc.*, 19-cv-7332, 2021 WL 148751, at *12 (S.D.N.Y. Jan. 15, 2021) (concluding FLSA "[n]otice should disclose the fee arrangement between Troy Law and any opt-in plaintiffs" and explain how costs will be addressed in the event of a judgment against plaintiffs); *Mei Rong Du v. Dingxiang Inc.*, 19-cv-11924, 2020 WL 7404984, at *10 (S.D.N.Y. Dec. 17, 2020) (same); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (same).

*of the doctrine*." *Johnson-Cradle v. KPS Affiliates*, No. 22-cv-1052, 2023 WL 3091675, at *9 (S.D.N.Y. Apr. 26, 2023) (emphasis in original, quoting *Knox v. John Varvatos Enter.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017); *accord Katz v. Equinox Holdings*, No. 20-cv-9856, 2022 WL 2952143, at *3 (S.D.N.Y. July 26, 2022) (denying blanket equitable tolling and explaining "Plaintiff is in error when she argues that the named plaintiffs' diligence is the critical issue").

Therefore, determining "[w]hether tolling applies to the claims of potential opt-in plaintiffs is a highly factual issue that depends on what and when a plaintiff knew or should have known— an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed." *Alvarado Balderramo v. Taxi Tours Inc.,* No. 15-cv-2181, 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017). Because of the individualized nature of that inquiry, courts have repeatedly concluded that "equitable tolling is generally not appropriate at the conditional certification stage." *Ni v. HSBC Bank USA*, *N.A.,* No. 23-cv-309, 2024 WL 323284, at *7 (S.D.N.Y. Jan. 29, 2024) (quoting *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017)). Tolling issues should be addressed *after expiration of the opt-in period*, based on the individual circumstances of any opt-in plaintiff who seeks such relief. *Sanchez*, 2024 WL 3159821, at *12-13 (in denying entry of blanket equitable tolling, explaining the Court would "consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate") (quoting *Shi v. TL & CG*, No. 19-cv-8502, 2020 WL 3586359, at *6 (S.D.N.Y. Aug. 10, 2020)).[28]

---

[28] *See also Lorenzo v. Dee Mark Inc*., 702 F. Supp. 3d 194, 205 (S.D.N.Y. 2023) ("Should plaintiffs who join the collective action have time-barred claims, they may present arguments for equitable tolling at the time they join."); *Ramirez v. Liberty One Grp*., No. 2-cv-5892, 2023 WL 4541129, at *11 (S.D.N.Y. July 14, 2023) (concluding "it is unnecessary to determine" whether equitable tolling is warranted at the conditional certification stage, as "it is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice") (partial quotation omitted); *Zhao*, 2023 WL 3477591, at *8 (following notice and the opt-in period, "[t]he Court will consider an application from any opt-in plaintiff [for equitable tolling] based on an individualized showing that tolling is appropriate."); *Xia v. New Yung Wah Carrier*, No. 21-cv-4475, 2023 WL 130830, at *9 (E.D.N.Y. Jan. 9, 2023) (denying prospective equitable tolling because the named plaintiff failed to detail what "inequitable circumstances"

As such, Plaintiffs' suggestion that they "have acted with extreme diligence" in pursuing certification is irrelevant (Doc. 222 at 29). The proper question is whether the potential opt-ins **have themselves** acted diligently in pursing their rights, and whether any "extraordinary circumstances" exist that prevented them from doing so. *See Uraga v. Amici 519 LLC*, No. 17-cv-3547, 2019 WL 3579850, at *7 (S.D.N.Y. July 25, 2018) ("Though it appears that Plaintiff has been diligently pursuing his rights, absent extraordinary circumstances, this is not sufficient" to warrant entry of blanket tolling to potential collective members); *Katz*, 2022 WL 2952143, at *3 ("Plaintiff is in error when she argues that the named plaintiff's diligence is the critical issue").

Plaintiffs offer no evidence that the potential opt-ins are unaware of their rights or have been prevented from exercising them. Nor can they, as numerous flaggers and spotters **have already** sought to pursue their own rights. For example, four potential opt-ins filed the overlapping *Richardson* overlapping class action against Con Edison, the CESG Defendants, and CESG's Subcontractors in May 2021. Another ten filed the overlapping *Butskhrikidze* collective and class action against CESG and its subcontractors (but not Con Edison) on September 27, 2024. Numerous others have filed their own actions against the CESG Defendants and their subcontractors (but not Con Edison) over time. *See, e.g.*, *Mejia v. Marvelous Mark Transp. Co., et al.*, No. 24-cv-3011 (E.D.N.Y. filed Apr. 23, 2024); *Dendy v. CE Solutions Group, et al*., No. 23-cv-10072 (S.D.N.Y. filed Nov. 15, 2023); *Watson v. CE Solutions, Inc*., No. 23-cv-6432 (E.D.N.Y. filed Aug. 29, 2023); *Jenkins, et al. v. CE Solutions Group, LLC, et al.*, Index No. 157363/2023

---

precluded the potential collective members from discovering their own claims); *Moses v. Griffin Inds.*, No. 18-cv-1200, 2020 WL 5813737, at *5 (S.D.N.Y. Sept. 30, 2020) (same); *Geng v. Shu Han Ju Rest. II Corp*., No. 18-cv-12220, 2019 WL 4493429, at *18 (S.D.N.Y. Sept. 9, 2019) (same); *Islam v. LX Ave. Bagels*, No. 18-cv-4895, 2019 WL 5198667, at *9 (S.D.N.Y. Sept. 30, 2019) (same); *Lu v. Purple Sushi*, 447 F. Supp. 3d 89, 98 (S.D.N.Y. 2020) (denying request for equitable tolling at conditional certification stage: "[s]hould equitable tolling issues arise in this case as to particular plaintiffs, the Court will timely address those issues as necessary."); *Douglas v. Anthem Prods*., 18-cv-5789, 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (Determining "[w]hether tolling is appropriate is best addressed on an individual basis," following expiration of the opt-in period.).

(N.Y. Cnty. Sup. Ct. filed July 24, 2023); *Brown v. CE Solutions Group, et al.*, No. 23-cv-3029 (S.D.N.Y. filed Apr. 11, 2023); *Lopez v. CE Solutions Group., et al.*, No. 23-cv-391 (E.D.N.Y. filed Jan. 19, 2023); *Halliday v. CE Solutions Group, et al.*, No. 22-cv-10131 (S.D.N.Y. filed Nov. 29, 2022); *Burton, et al. v. CE Solutions Group, et al.*, No. 22-cv-3213 (S.D.N.Y. filed Apr. 19, 2022). Other individuals have filed actions against the CESG Defendants, its subcontractors, and Con Edison. *See, e.g.*, *Jordan v. CE Solutions, Inc., et al.*, No. 24-cv-4168 (S.D.N.Y. filed May 31, 2024); *Sollecito v. CE Solutions Group, LLC, et al.*, Index No. 61146/2022 (Westchester Cnty. Sup. Ct. filed May 31, 2022); *Mack v. CE Solutions Group, LLC, et al.*, Index No. 807447/2022 (Bronx Cnty. Sup. Ct. filed May 16, 2022).

As such, Plaintiffs' request that the Court toll the limitations periods for individuals who have not joined this case (and are therefore not before the Court) should be denied as premature. *See, e.g., Cooke v. Frank Brunckhorst Co., LLC,* No. 23-cv-6333, 2024 WL 1230231, at *14 (E.D.N.Y. Mar. 22, 2024) (denying blanket tolling order because the named plaintiff failed to demonstrate what "extraordinary circumstance" prevented potential opt-in plaintiffs from pursuing their rights); *Johnson-Cradle*, 2023 WL 3091675, at *9 (same); *Carabajo v. APCO Insultation Co., Inc.,* No. 22-cv-4175, 2023 WL 3931618, at *10 (E.D.N.Y. June 9, 2023) (denying blanket tolling for collective members because the named plaintiff "does not attempt to establish any of the necessary factors for tolling and relies solely on a vague allegation of 'delay,' which is insufficient").

## VI.  CON EDISON DOES NOT HAVE CONTACT INFORMATION FOR THE PROPOSED COLLECTIVE

If the Court orders notice, Plaintiffs request the "expedited disclosure of information, such as names, last known addresses, telephone numbers (home and mobile), email addresses, and dates of employment" of the putative collective members (Doc. 222 at 28). To the extent directed to Con

Edison, the Court should deny this request.

Con Edison cannot be compelled to produce information that it does not possess or control. *Pitney Bowes, Inc. v. Kern Int'l, Inc.,* 239 F.R.D. 62, 69 (D. Conn. 2006); *accord* FED. R. CIV. P. 34(a) (explaining that a defendant can only be required to produce that which is in its "possession, custody or control"). Con Edison simply does not have a list of those individuals that CES and its subcontractors employed as flaggers or spotters, let alone their personal contact information or dates of employment. While Con Edison has copies of CES's invoices, which detail the names of flaggers and spotters who worked on its project work sites (including their CES "Flagger Employee" numbers), those invoices do not provide any contact or date-of-employment information for those individuals (*see, e.g.*, Doc. 170 at Ex. 5). Nor does Con Edison have ownership or control over the CESG Defendants' Smartphone App, or its associated hardware, data files or source code. In fact, Plaintiffs readily admit that they were instructed to contact the CESG Defendants, not Con Edison, with any questions or need for technical support with the Smartphone App (Doc. 72, ¶ 180). Therefore, to the extent the Court orders notice and the production of such information, the Court should direct the CESG Defendants and Subcontractors to produce such information. Con Edison simply does not have ownership, possession, or control over that information, which is presumably stored in systems maintained by CESG (and possibly its subcontractors).

## VII.    <u>CONCLUSION</u>

The record that Plaintiffs have offered fails to demonstrate that Con Edison was a party to any "policy or plan" to deprive them of overtime compensation for overtime work. After all, Con Edison was billed for—and paid for—millions of dollars in overtime for the overtime, holiday, and emergency work performed by Plaintiffs and their colleagues. For the reasons set forth herein, Plaintiffs' Motion should be denied in all respects ***with respect to Con Edison***.

Alternatively, if the Court elects to conditionally certify some FLSA collective that includes Con Edison, then Con Edison requests that the Court deny equitable tolling as premature and order the parties to confer regarding the content, form and distribution of any notice and consent form and, to the extent the parties are unable to reach agreement, brief any outstanding issues for resolution by the Court.

Dated: October 16, 2024
       New York, New York

*/s/ Eli Freedberg*
Eli Z. Freedberg
Paul R. Piccigallo
Jennifer S. Kim
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
(212) 583-9600

*Attorneys for Defendant Consolidated Edison Company of New York, Inc.*