UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NASHAILY ORTIZ, ISAURA LOPEZ, RUBEN LEMUS NAJARRO, NASHEMIR ORTIZ, and ADRIANNA GAMBOA, on behalf of themselves and others similarly situated,

Plaintiffs,

-against-

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., CE SOLUTIONS GROUP, LLC, CE SOLUTIONS INC., CE FLAGGING PLUS CORP., CE RESERVE CORP., FLAGGING SPOTTING FLIPPING SERVICES INC., ARGANI INC., NYC 2WAY INTERNATIONAL LTD. d/b/a CTG CARS LLC, CONCORD LIMOUSINE INC., CONCORD LIMOUSINE 1, LLC, JEANNINE NAPOLEONE-COLBERT, HASSAN SABLINI, EDWARD SLININ, DORA SLININ, GARY SAMUEL, and ALEXANDER GAVRILOV,

Defendants.

Case No.: 1:22-cv-08957-JLR-GWG

**DEFENDANT CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S REPLY IN SUPPORT OF ITS LIMITED OBJECTION TO MAGISTRATE JUDGE STEIN'S AUGUST 8, 2025 REPORT & RECOMMENDATION**

Eli Z. Freedberg
Paul R. Piccigallo
Jennifer S. Kim
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022-3298
(212) 583-960

## TABLE OF CONTENTS

**Page(s)**

I. ARGUMENT ....................................................................................................1

A. FIFA Regulates Only The Relationship Between Freelance Workers And "Hiring Parties," And Does Not Extend To A Hiring Party's Customers.............1

B. Plaintiffs' Allegations And Sworn Testimony Demonstrate That Con Edison Was Not Their "Hiring Party"...................................................................2

C. Judge Stein Should Have Dismissed Plaintiffs' FIFA Claim Based On His Conclusion That Plaintiffs Failed To Allege That Con Edison Hired, Or Even Had The Power, To Hire Them.......................................................................4

D. Plaintiffs Can Find No Solace In The Court's *Pierre* And *LaSalle* Decisions ...........................................................................................................7

II. CONCLUSION ................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Areau v. Fox News Network*,
No. 20-cv-8678, 2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021) ........ 2

*Fernandez v. HR Parking*,
407 F. Supp. 3d 445, 452 (S.D.N.Y. 2019) ........ 5

*Frisch v. Likeopedia*,
No. 23-cv-3904, 2024 WL 3938345 (S.D.N.Y. Aug. 26, 2024) ........ 2, 6, 7, 8

*Global Network Commc'ns v. City of New York*,
458 F.3d 150 (2d Cir. 2006) ........ 8

*Kwan v. Schlein*,
246 F.R.D. 447, 451 (S.D.N.Y. 2007) ........ 8

*LaSalle Bank National Association v. Citicorp Real Estate, Inc.*,
No. 02-cv-7868, 2003 WL 21671812 (S.D.N.Y. July 16, 2003) ........ 7, 8

*Monzano-Moreno v. Libqual Fence Co.*,
No. 18-CV-161, 2021 WL 730663 (E.D.N.Y. Feb. 5, 2021) ........ *passim*

*Pierre v. City of New York*,
No. 20-CV-5116 (ALC), 2021 WL 3887912 (S.D.N.Y Aug. 31, 2021) ........ 7, 8

*StClair v. Sansal*,
73 Misc. 3d 492 (N.Y. Cnty. Civ. Ct. 2021) ........ 1

*Walsh v. N.Y. State Comptroller*,
34 N.Y.3d 520 (2019) ........ 6

**Statutes**

FLSA ........ 3

Freelance Isn't Free Act (FIFA) ........ *passim*

N.Y.C. Admin. Code § 20-927 ........ 2, 7

N.Y.C. Admin. Code § 20-927(3) ........ 7

N.Y.C. Admin. Code § 20-928 ........ 2, 6

N.Y.C. Admin. Code § 20-928(b)(1) ........ 6, 7

N.Y.C. Admin. Code § 20-929 .......... 2, 6

**Other Authorities**

BRITANNICA DICTIONARY *available at* https://www.britannica.com/dictionary/retain (last visited Sept. 9, 2025) .......... 7

CAMBRIDGE DICTIONARY *available at* https://dictionary.cambridge.org/us/dictionary/english/retain (last visited Sept. 9, 2025) .......... 7

COLLINS DICTIONARY *available at* https://www.collinsdictionary.com/us/dictionary/english/retain (last visited Sept. 9, 2025) .......... 7

FED. R. CIV. P. 1 .......... 9

FED. R. CIV. P. 12 .......... 9

FED. R. CIV. P. 12(b)(6) .......... 8

MERRIAM-WEBSTER DICTIONARY *available at* https://www.merriam-webster.com/dictionary/retain (last visited Sept. 9, 2025) .......... 7

Defendant Consolidated Edison Company of New York, Inc. ("Con Edison") filed a limited objection to United States Magistrate Judge Gary Stein's August 8, 2025 Report & Recommendation (the "R&R," Doc. 289). In his R&R, Judge Stein concluded that it was "[un]necessary to reach" questions regarding the viability of Freelance Isn't Free Act ("FIFA") claim because that claim was "pled only in the alternative" and its dismissal would not "materially streamline[]" discovery (Doc. 289 at 61).[1] Con Edison respectfully maintains that Judge Stein should have addressed and resolved the question of whether Plaintiffs have stated a viable FIFA claim (Doc. 291). In response to Con Edison's limited objection, Plaintiffs offer arguments that misstate and ignore their own allegations and prior sworn record testimony (Doc. 292). None of that alters the fact that Plaintiffs have failed to state a plausible FIFA claim ***against Con Edison*** which, whether pleaded in the alternative or not, should be dismissed.

## I. ARGUMENT

The limited question presented is whether Plaintiffs have stated a plausible FIFA claim against Con Edison in their Second Amended Collective and Class Action Complaint (Doc. 210). They have not done so.

### A. FIFA Regulates Only The Relationship Between Freelance Workers And "Hiring Parties," And Does Not Extend To A Hiring Party's Customers

"Passed in 2016 and made effective in 2017, FIFA created new protections for New York City's freelance workforce against unlawful practices by employers." *StClair v. Sansal*, 73 Misc. 3d 492, 494 (N.Y. Cnty. Civ. Ct. 2021). FIFA does so by "regulat[ing] the relationship between 'freelance work[ers]' and those who retain their services, the 'hiring party,' in New York City." *Monzano-Moreno v. Libqual Fence Co.*, No. 18-CV-161, 2021 WL 730663, at *18 (E.D.N.Y. Feb.

[1] Page references herein are to those assigned by the CM/ECF system, not a document's original page numbering.

5, 2021). A "hiring party" is the "person who retains a freelance worker to provide any service." N.Y.C. Admin. Code § 20-927.

FIFA protects the rights of a freelance worker by requiring (a) her relationship with a hiring party to be memorialized in a written contract that identifies both the worker and the hiring party and specifies the terms of compensation; and (b) the hiring party to compensate the freelance worker according to those contractual terms. *Id.* at §§ 20-928, 20-929. However, FIFA differs from ordinary contract law in that "it allows a [prevailing freelance worker] to recover double damages, injunctive relief, and reasonable attorneys' fees and costs from hiring parties who violate FIFA's substantive provisions." *Frisch v. Likeopedia*, No. 23-cv-3904, 2024 WL 3938345, at *8 (S.D.N.Y. Aug. 26, 2024).

In other words, "FIFA imposes obligations ***only*** on a 'hiring party.'" *Frisch*, 2024 WL 3938345, at *9 (emphasis added). Where a company never hired and retained a freelance worker, or directly paid that freelance worker, the company is not a "hiring party" for purposes of a FIFA claim. *Areau v. Fox News Network*, No. 20-cv-8678, 2021 WL 4124226, at *10 (S.D.N.Y. Sept. 9, 2021); *accord Frisch*, 2024 WL 3938345 at *8-9 (dismissing FIFA claim against hiring party-LLC's manager and majority member because it was the LLC, and not the manager himself, that hired the plaintiff); *Monzano-Moreno*, 2021 WL 730663, at *18 (dismissing FIFA claim by employee of subcontractor against contractor, because "the hiring party" was the subcontractor, not the contractor, as the record demonstrates that the general contractor "did not have the power to hire [the subcontractor]'s employees").

### B. Plaintiffs' Allegations And Sworn Testimony Demonstrate That Con Edison Was Not Their "Hiring Party"

Con Edison previously demonstrated that it was not Plaintiffs' "hiring party" (*see* Doc. 230 at 23-25; Doc. 276 at 18; Doc. 291 at 5-7). In response, Plaintiffs argue that they "clearly plead[ed]

that Con Edison qualifies as a hiring party under FIFA, as they paid the Flaggers and Spotters to ensure safety at Con Edison jobsites" (Doc. 292 at 6). But with due respect to Plaintiffs' counsel, that argument directly conflicts with the allegations of the second amended complaint and Plaintiffs' sworn record testimony.

The second amended complaint alleges that Plaintiffs Nashaily Ortiz, Roberto Rosario, and Stephanie Bundrick were hired by the "CESG Defendants," not by Con Edison (Doc. 210, ¶¶ 351, 576, 615). Similarly, the complaint alleges that Plaintiff Steven Allicott was hired by "Crystal," who works for the CESG Defendants (*Id.*, ¶¶ 169, 540), and that Plaintiff Nashemir Ortiz was hired by co-defendant Jeannine "Napoleone-Colbert," who "manages and operates" the CESG Defendants (*Id.*, ¶¶ 123, 482). The complaint alleges that Isaura Lopez and Ruben Najarro were hired by "Gustavo," who is "a manager and/or employee of [the] Argani Defendants and Concord Defendants" (*Id.*, ¶¶ 169, 388, 441), while Plaintiff Adrianna was hired by the Argani Defendants alone (*Id.*, ¶¶ 129, 516). The complaint ***does not*** allege that Con Edison interviewed, hired, or retained any Plaintiff (*Id. passim*). Plaintiffs' sworn record testimony, offered in connection with their pending motion for conditional certification of their proposed FLSA collective, confirms that they were interviewed, retained, and hired by other defendants in this case, and not by Con Edison.[2]

Nevertheless, Plaintiffs argue in their opposition that they have "allege[d] in no uncertain terms that Con Edison hired them to perform flagging and spotting services" (Doc. 292 at 6 (*citing* Doc. 210, ¶¶ 246, 253-54, 322-30)). But those referenced paragraphs do not support their

---

[2] *See* Doc. 223-2, ¶ 31 (Plaintiff Nashaily Ortiz testifying she was interviewed and hired by the CESG Defendants); Doc. 223-7, ¶ 31 (Plaintiff Rosario testifying that an "employee of CESG Defendants hired me"); Doc. 223-8, ¶ 31 (same for Plaintiff Bundrick); Doc. 223-6, ¶ 31 (Plaintiff Allicott testifying he was interviewed and hired by "Crystal," a "manager and/or employee of CESG Defendants"); Doc. 223-3, ¶ 31 (Plaintiff Lopez testifying that a CESG Defendant employee named "Guvstavo[,] interviewed me . . . [and] hired me"); Doc. 223-4, ¶ 31 (same for Plaintiff Najarro); Doc. 223-5, ¶ 31 (Plaintiff Nashemir Ortiz testifying he was interviewed and hired by Jeannine Napoleone-Colbert, a CESG manager); Doc. 223-9, ¶ 31 (Plaintiff Marvin Rosado testifying he was hired by "Gustavo," who was one of the "CESF Defendants' and Argani Defendants' managers"); Doc. 223-10, ¶¶ 13, 31 (Plaintiff Sanju Philip testifying he was interviewed and hired by "Sablini, who manages [the] Argani Defendants").

argument. Paragraph 246 of the second amended complaint alleges that Con Edison played some role in setting the Plaintiffs' hourly rate, not that Con Edison hired them (Doc. 210, ¶ 256). Paragraphs 253 and 254 also have nothing to with the Plaintiffs' hiring; instead, those paragraphs simply confirm that Con Edison never paid Plaintiffs directly for their work but instead paid CE Solutions Group, LLC's invoices and, in turn, that CE Solutions Group, LLC paid the Subcontractors for Plaintiffs' work (*Id.*, ¶¶ 253-54). Similarly, paragraphs 322 through 330 concern Plaintiffs' misclassification claims, and do not address who hired them (*Id.*, ¶¶ 322-330).

Plaintiffs also cite a number of other paragraphs of their complaint as supposed support for their argument that they have "specifically alleged that CESG Defendants and Con Edison classified them as independent contractors and paid them using 1099 Forms pertaining to freelance work" (Doc. 292 at 6 (*citing* Doc. 210, ¶¶ 227, 256-58, 260-62, 351, 387, 429-31, 440, 481, 514, 539, 575, 614)). But those paragraphs merely confirm that Plaintiffs were interviewed, hired, and retained by the CESG Defendants and Subcontractors, ***not by Con Edison*** (*see, e.g.*, *Id.*, ¶¶ 225-227 (alleging that Plaintiffs were "interviewed and hired by one of the Subcontractors directly or by one of the owners and/or managers of" the CESG Defendants, who oversaw the "onboarding and hiring process" and required completion of their own new hiring paperwork)).

In sum, the second amended complaint alleges that Plaintiffs were hired and retained by other defendants, and not by Con Edison.

### C. Judge Stein Should Have Dismissed Plaintiffs' FIFA Claim Based On His Conclusion That Plaintiffs Failed To Allege That Con Edison Hired, Or Even Had The Power, To Hire Them

In his R&R, Judge Stein concluded, with respect to Plaintiffs' joint-employment claims, that the second amended complaint did not "sufficiently allege[] that Con Edison had the requisite power to hire" them (Doc. 289 at 48). In reaching that conclusion, Judge Stein rejected the notion that Con Edison could be Plaintiffs' hiring party based on claims that Plaintiffs were hired "to

work for Con Edison" and "on behalf of Con Edison" (*Id.* at 46). As Judge Stein recognized, such "allegations do not sufficiently plead that Con Edison had the requisite power to hire, given the lack of allegations about [Con Edison's] involvement in the hiring process" (*Id.*). As he explained, "[m]ere influence on hiring" does not translate into the actual power to hire (*Id.* (*citing Fernandez v. HR Parking*, 407 F. Supp. 3d 445, 452 (S.D.N.Y. 2019)).

Nevertheless, Judge Stein concluded "for prudential reasons" that it was "unnecessary and premature" to dismiss Plaintiffs' FIFA claim (Doc. 289 at 60-61). In so doing, Judge Stein sought to differentiate the Eastern District of New York's *Monzano-Moreno* decision by noting that, in that case, the court dismissed ***both*** the plaintiffs' joint employment ***and*** FIFA claims, rather than the FIFA claim alone (Doc. 289 at 60, n.15 ("*Monzano-Moreno* did not address and cannot be read to support the [notion] . . . that *adequate* allegations of joint employer status are insufficient to plead hiring party status under FIFA.") (emphasis in original)). Based on this, Plaintiffs argue that Con Edison has not adequately explained "why the Court should ignore the plain statutory text and legislative text of FIFA to borrow one prong of the joint employer analysis in determining whether Con Edison is a 'hiring party' under FIFA" (Doc. 292 at 7).

Plaintiffs' arguments are grossly misplaced. To begin with, *Monzano-Moreno* cannot be so easily distinguished from the present facts. In *Monzano-Moreno*, the court dismissed the plaintiffs' FIFA claim against their employer's customer, because their "hiring party" was their actual employer (the customer's subcontractor), and not their employer's customer. 2021 WL 730663, at *18. In so doing, the *Monzano-Moreno* court explained that the plaintiffs' FIFA claim failed "for similar reasons" to their joint employer claim against their employer's customer, as the customer "did not have the power to hire [its subcontractor's] employees," and the plaintiffs' "belief" of being "hired to work for" the customer was insufficient to render the customer a "hiring

party." *Id.* at *10. That same rationale and result should apply here, as Judge Stein concluded that plaintiffs' complaint "do[es] not sufficiently plead that Con Edison ha[d] the requisite power to hire" them, given (A) "the lack of allegations about [Con Edison's] involvement in the[ir] hiring process"; and (B) that Plaintiffs' contention that they were hired "to work for Con Edison" and "on behalf of Con Edison" failed to evidence that Con Edison hired, or had the power to hire, them (Doc. 289 at 46). As such, regardless of whether Plaintiffs have plausibly pleaded their other wage-and-hour claims against Con Edison under a joint employer theory, they have not plausibly pleaded that Con Edison hired, retained them, or even had the power to hire and retain them for purposes of their FIFA claim. Because the joint employment's "power to hire" element overlaps with FIFA's "hiring party" requirement, there is no reason to construe the two separately or in a different manner. *Monzano-Moreno*, 2021 WL 730663, at *10, 18; *accord Frisch*, 2024 WL 3938345, at *8-9 (explaining that FIFA imposes liability only upon a "hiring party," not its managers or majority members).

Moreover, Plaintiffs' policy and legislative interpretation arguments are misplaced. Under New York law, courts must "construe unambiguous language" in a state statute "to give effect to its plain meaning" and, in so doing, construe the statute's "various sections . . . together and with reference to each other." *Walsh v. N.Y. State Comptroller*, 34 N.Y.3d 520, 524 (2019). Here, "FIFA imposes obligations ***only*** on a 'hiring party,'" *Frisch*, 2024 WL 3938345, at *9 (emphasis added), and does so by imposing penalties on hiring parties for violations of their ***contractual relationships*** with freelance workers. N.Y.C. Admin. Code §§ 20-928, 20-929. FIFA does not alter or expand who the parties to a freelancer contract are, which remain at all times only "the hiring party and the freelance worker." *Id.* § 20-928(b)(1). Rather, FIFA simply adds the possibility for a prevailing freelance worker to "recover double damages, injunctive relief, and reasonable attorneys' fees and

costs from hiring parties who violate FIFA's substantive provisions." *Frisch*, 2024 WL 3938345, at *8. Nowhere in its terms and provisions does FIFA attempt to render other persons or entities liable for a hiring party's breach of such a contractual relationship. *See generally* N.Y.C. Admin. Code §§ 20-927 *et seq.*

Therefore, Plaintiffs cannot plausibly contend that FIFA's definition of "hiring party" (*i.e.*, as "any person who retains a freelance worker," *see* N.Y.C. Admin. Code § 20-927(3)) should be broadly construed to apply to both a freelancer's actual employer and that employer's customers. Nothing in FIFA supports such an expansive application of its provisions, and New York courts have been hesitant to apply FIFA in such a manner. *Frisch*, 2024 WL 3938345, at *8-9; *Monzano-Moreno*, 2021 WL 730663, at *10, 18. This is because such an interpretation would go beyond FIFA's application only to the parties to a freelancer contract, which include only "the hiring party and the freelance worker," N.Y.C. Admin. Code § 20-928(b)(1), as well as the common definition of "retain."[3] Moreover, Plaintiffs' claim that applying FIFA to only an actual "hiring party" would "lead to absurd results" is an unavailing scare tactic, as here Plaintiffs can still assert their FIFA claim (either directly or in the alternative) against the CESG Defendants and Subcontractors who, after all, apparently hired and retained them.

### D.  Plaintiffs Can Find No Solace In The Court's *Pierre* And *LaSalle* Decisions

In classic "no harm, no foul" fashion, Plaintiffs also contend that the Court should adopt Judge Stein's decision to not address the viability of their FIFA claim because it represents an

---

[3] *See, e.g.*, MERRIAM-WEBSTER DICTIONARY (online ed.) (defining the verb "retain" as "to keep in one's pay or service"), *available at* https://www.merriam-webster.com/dictionary/retain (last visited Sept. 9, 2025); CAMBRIDGE DICTIONARY (online ed) (defining "retain" as "to continue to employ people in a company or organization"), *available at* https://dictionary.cambridge.org/us/dictionary/english/retain (last visited Sept. 9, 2025); BRITANNICA DICTIONARY (online ed.) (defining the verb "retain" as "to keep (someone) in a position, job, etc."), *available at* https://www.britannica.com/dictionary/retain (last visited Sept. 9, 2025); COLLINS DICTIONARY (online ed.) (defining "retain" as "to hire, or arrange in advance for the services of"), *available at* https://www.collinsdictionary.com/us/dictionary/english/retain (last visited Sept. 9, 2025).

outcome consistent with "this Court's decisions in *Pierre v. City of New York*, No. 20-CV-5116 (ALC), 2021 WL 3887912, at *9 (S.D.N.Y Aug. 31, 2021) and *LaSalle Bank National Association v. Citicorp Real Estate, Inc.*, No. 02-cv-7868, 2003 WL 21671812 (S.D.N.Y. July 16, 2003)" (Doc. 292 at 4). But in so arguing, Plaintiffs once again ignore that *LaSalle* ***does not*** stand for the proposition that an alternatively pleaded claim can survive a motion to dismiss without sufficient supporting allegations (*see* Doc. 291 at 4, n.6), or that *Pierre* offers no meaningful explanation for why a court can choose for "prudential reasons" to allow an otherwise deficient claim to proceed. As explained in Con Edison's objection, New York's federal courts have widely held that a claim, whether pleaded in the alternative or not, is due to be dismissed if it is not supported by factual allegations sufficient "to raise a right to relief above the speculative level" (Doc. 291 at 4 (collecting cases and quoting *Kwan v. Schlein*, 246 F.R.D. 447, 451 (S.D.N.Y. 2007)).

Here, as Judge Stein found, Plaintiffs' second amended complaint does not "allege that Con Edison" hired Plaintiffs or even "ha[d] the requisite power to hire" them (Doc. 289 at 48). That conclusion, coupled with the complaint's allegations conceding that Plaintiffs were hired by defendants other than Con Edison, demonstrates that Con Edison was not their "hiring party." Given that "FIFA imposes obligations only on a 'hiring party,'" *Frisch*, 2024 WL 3938345, at *9, and Con Edison was not Plaintiffs' "hiring party," Plaintiffs' FIFA claim should be dismissed to the extent asserted against Con Edison. After all, the viability of Plaintiffs' FIFA claim involves a pure issue of law based on their own allegations and testimonial admissions. As such, discovery on this matter is unnecessary. *See Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."). On the other hand, if the claim is allowed to unnecessarily linger, it will

only lead to future (and prejudicial) additional costs and efforts to dispose of it again, at a later stage of this proceeding. *See* FED. R. CIV. P. 1 (explaining that the federal rules of civil procedure, including Rule 12, "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action").

## II. CONCLUSION

For the foregoing reasons, as well as those set forth in Con Edison's limited objection, the Court should not adopt that portion of Judge Stein's Report and Recommendation addressing Plaintiffs' FIFA claim and, instead, dismiss that claim to the extent asserted against Con Edison. In all other respects, the Report and Recommendation should be adopted.

Dated: September 11, 2025
New York, New York

***/s/ Eli Freedberg***

Eli Z. Freedberg
Paul R. Piccigallo
Jennifer S. Kim
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
(212) 583-9600

*Attorneys for Defendant Consolidated Edison Company of New York, Inc.*