UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NASHAILY ORTIZ, ISAURA LOPEZ,
RUBEN LEMUS NAJARRO, NASHEMIR
ORTIZ, ADRIANNA GAMBOA, STEVEN
ALLICOTT, ROBERTO ROSARIO, JR., and
STEPHANIE BUNDRICK, on behalf of
themselves and others similarly situated,

                           Plaintiffs,


                -against-


CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC., CE SOLUTIONS
GROUP, LLC, CE SOLUTIONS INC., CE
FLAGGING PLUS CORP., CE RESERVE
CORP., ARGANI INC., NYC 2WAY
INTERNATIONAL LTD. d/b/a CTG CARS
LLC, CONCORD LIMOUSINE INC.,
CONCORD LIMOUSINE 1, LLC,
MARVELOUS MARK TRANSPORTATION
CO., INC., A & M TRANSPORT
TRANSPORS INC., 23 WEST GROUP INC.,
JEANNINE NAPOLEONE-COLBERT, in her
individual and professional capacities,
HASSAN SABLINI, in his individual and
professional capacities, and NABIH
KOUBAISSAY a/k/a NABIL SIMBA, in his
individual and professional capacities,

                           Defendants.

Case No. 1:22-cv-08957 (JLR) (GS)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs, who worked as flaggers and spotters on Con Edison jobsites, assert sixteen
causes of action for wage violations against the various Defendants pursuant to the Fair Labor
Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the New York City Freelance
Isn't Free Act ("FIFA"), and state common law. *See* Dkt. 210 ("SAC"). On September 27,
2024, Defendant Consolidated Edison Company of New York, Inc. ("Con Edison") and
Defendants CE Solutions Group, LLC, CE Solutions Inc., NYC 2Way International Ltd., and

Jeannine Napoleone-Colbert (collectively, the "CESG Defendants") filed partial motions to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  *See* Dkt. 229; Dkt. 230 ("Con Ed Br."); Dkt. 234; Dkt. 235 ("CESG Br.").

On August 8, 2025, Magistrate Judge Gary Stein issued a Report and Recommendation (the "R&R"), recommending that the Court (1) deny Con Edison's motion to dismiss; (2) grant the CESG Defendants' motion to dismiss as to the SAC's thirteenth and fourteenth causes of action for prevailing wages and otherwise deny the motion; and (3) grant Plaintiffs leave to file a third amended complaint to bolster their prevailing-wage claims based on a recent decision from the New York Appellate Division, First Department.  *See generally* Dkt. 289 ("R&R").  Judge Stein further recommended that the Court defer reaching the merits of Plaintiffs' alternative FIFA claims, and Con Edison filed a limited objection to only that portion of the R&R.  *See* R&R at 56-61; Dkt. 291 ("Obj."); *see also* Dkt. 292 ("Resp."); Dkt. 293 ("Reply").  As set forth below, the Court agrees with Judge Stein's ultimate recommendations and adopts his thorough and well-reasoned R&R as modified to address the merits of Plaintiffs' FIFA claims.  Accordingly, Con Edison's motion to dismiss is DENIED, the CESG Defendants' motion to dismiss is GRANTED in part and DENIED in part, and Plaintiffs' request for leave to amend is GRANTED.

## BACKGROUND[1]

### A.    Factual Background

Plaintiffs "allege they worked as 'flaggers' or 'spotters' at jobsites operated by Con Edison in New York City and Westchester County."  R&R at 3 (citing SAC ¶¶ 141, 144, 292-

---

[1] The Court presumes the parties' familiarity with the procedural history of this litigation and the claims and allegations asserted in the SAC.  Accordingly, the Court incorporates the uncontested portion of the R&R that thoroughly describes the background of the case, *see*

293, 302).  "Flaggers' central duty is to cordon off jobsites and redirect traffic away from Con Edison jobsites," *id.* (citing SAC ¶ 147), "whereas spotters reserve parking spaces at the sites for Con Edison vehicles and ensure those vehicles can access the spaces," *id.* (citing SAC ¶ 148).  According to the SAC, "CESG Defendants operate 'a traffic control services company in Brooklyn'" that "contracted exclusively with Con Edison to provide flaggers on Con Edison jobsites . . . through various subcontractors," which include the other nine Defendants in this case (the "Subcontractors").  *Id.* at 4 (quoting SAC ¶ 1) (citing SAC ¶¶ 2, 242, 291).  "The CESG Defendants provide these services to Con Edison through one or more Blanket Purchase Agreements ('BPAs') entered into between CESG and Con Edison."  *Id.* (citing SAC ¶¶ 141, 251, 302); *see* Dkt. 210-1 ("BPA").

"Plaintiffs allege that Con Edison, CESG Defendants, and the Subcontractors jointly employ approximately 400 to 500 employees as flaggers and spotters at any given time," R&R at 6 (citing SAC ¶ 153), and that "Plaintiffs and other class members typically worked exclusively for Defendants," *id.* at 5 (citing SAC ¶¶ 274, 288).  "Most of the Plaintiffs routinely worked at least five days a week (and sometimes six or seven days a week), and for at least 40 hours a week (and sometimes up to 70 or 80 or more hours a week), during their period of employment."  *Id.* (citing SAC ¶¶ 349, 386, 439, 479, 512, 545, 582, 616).  "Plaintiffs contend that all Defendants 'maintain significant oversight, direction, and control over the day-to-day operations of [the flaggers and spotters], including [their] working conditions, schedules, payment methods, and hiring and firing practices."  *Id.* at 6 (citing SAC ¶ 142).  Plaintiffs thus argue that the Defendants are liable together as "joint employers" for the various FLSA and NYLL violations alleged in the SAC.  *See id.* at 6-9 (summarizing

---

R&R at 2-13, and will recount only those facts and procedural developments that are necessary to evaluate Con Edison's limited objections to the R&R.

the SAC's allegations regarding the indicia of Defendants' joint control over Plaintiffs' employment status and work). Specifically, Plaintiffs assert nine causes of action against all Defendants for overtime violations and failure to timely pay wages under the FLSA and NYLL, and for failure to pay all required wages, failure to provide pay-rate notices, failure to provide accurate wage notices, failure to reimburse business-related expenses, and failure to provide spread-of-hours pay under the NYLL. *Id.* at 9; *see* SAC ¶¶ 692-770. Three of the Plaintiffs assert an additional cause of action against Con Edison, the CESG Defendants, and several of the Subcontractors for failure to pay minimum wages under the NYLL, R&R at 9 (citing SAC ¶ 771-778), and one Plaintiff asserts two causes of action against the same Defendants for retaliation under the FLSA and NYLL, *id.* at 12 n.4 (citing SAC ¶¶ 819-834). In addition to these FLSA and NYLL claims, Plaintiffs assert causes of action for breach of contract and unjust enrichment based on Defendants' alleged failure to pay prevailing wages. *Id.* at 11-12 (citing SAC ¶¶ 800-818).

Although Defendants classified flaggers and spotters as independent contractors rather than employees, Plaintiffs' FLSA and NYLL claims are premised on the theory that "this was an unlawful misclassification of their true employment status intended to deprive them of their rightful wages." *Id.* at 9 (citing SAC ¶¶ 257, 322-323). Plaintiffs alternatively allege that if they "were properly classified as independent contractors, they are entitled to the protections of FIFA." *Id.* (citing SAC ¶¶ 14, 653). Accordingly, Plaintiffs assert two causes of action under FIFA, brought in the alternative to their FLSA and NYLL claims, for failure to pay all compensation owed and late payment of compensation. *Id.* at 10 (citing SAC ¶¶ 779-799). With respect to these alternative claims, Plaintiffs contend "that they were 'freelance workers' and that Con Edison, the CESG Defendants, and the Subcontractors were 'hiring parties' within the meaning of FIFA." *Id.* at 9-10 (citing SAC ¶¶ 779-799).

### B.    The R&R

On September 27, 2024, Con Edison and the CESG Defendants each filed a partial motion to dismiss the SAC, seeking dismissal of all claims except for Plaintiffs' retaliation claims under the FLSA and NYLL.  *See* Dkts. 229, 234; R&R at 12 n.5.  On August 8, 2025, Judge Stein issued his R&R, which recommends that Con Edison's motion be denied and that the CESG Defendants' motion be granted as to Plaintiffs' common law claims and denied as to all other claims.  *See* R&R at 2.

Con Edison now objects solely to the portion of the R&R that addresses, and recommends deferring decision on, Plaintiffs' FIFA claims.  In relevant part, Con Edison and the CESG Defendants argued that the SAC fails to establish that they are "hiring parties" and thus sought dismissal of Plaintiffs' FIFA claims.  *See* Con Ed. Br. at 18-20; CESG Br. at 16-17.  In the R&R, Judge Stein concluded that it was not necessary to reach Plaintiffs' FIFA claims "because Plaintiffs' FLSA and NYLL claims have been upheld, and their FIFA claims are pled only in the alternative."  R&R at 61; *see id.* at 56-61.  Con Edison argues in its present objections that the R&R should have reached the merits of Plaintiffs' FIFA claims.  *See* Obj. at 3, 7.  Con Edison does not object to any of Judge Stein's other recommendations "or to his thorough and thoughtful analysis of the many other issues presented by the parties' respective briefs in connection with Defendants' motions to dismiss."  *Id.* at 1.  The CESG Defendants have not filed any objections.

## LEGAL STANDARD

With respect to dispositive motions, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3).  A district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P.

72(b)(3).  "To accept 'uncontested portions of a report and recommendation, "a district court need only satisfy itself that there is no clear error on the face of the record."' 'A decision is "clearly erroneous" when the reviewing Court is left with the definite and firm conviction that a mistake has been committed."' *Garzon v. Bldg. Servs., Inc.*, No. 24-cv-05429 (JLR) (RFT), 2025 WL 2062741, at *1 (S.D.N.Y. July 23, 2025) (first quoting *Qlay Co. v. Owen*, No. 21-cv-01784 (JLR), 2024 WL 4769718, at *1 (S.D.N.Y. Nov. 13, 2024); and then quoting *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-04394 (AJN), 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018)).

## DISCUSSION

### I.    The Court Adopts the Uncontested Portions of the R&R

Con Edison objects only to the R&R's recommendation not to rule on Plaintiffs' FIFA claims on the present motion to dismiss.  No objections have been filed to any other aspect of the R&R.  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), the Court has reviewed the uncontested portions of the R&R for clear error.  The Court finds none.  Accordingly, the Court adopts in full the comprehensive and well-reasoned portions of the R&R to which no objections have been lodged.

### II.    Con Edison's Objections to the R&R

As for the sole objection, Con Edison argues that "[t]he R&R should have reached and resolved the question of whether the SAC states a plausible FIFA claim."  Obj. at 3.  Should the Court modify that portion of the R&R and reach the merits, Con Edison seeks dismissal of the FIFA claims asserted against it on the basis that it is not a "hiring party."  *Id*. at 4-6.  Plaintiffs disagree that it is necessary to reach the merits of their FIFA claims at this juncture but still maintain that they "have sufficiently alleged Con Edison is a 'hiring party' under FIFA."  Resp. at 4.  The Court conducts a *de novo* review of the portion of the R&R that

6

addresses Plaintiffs' FIFA claims.  As set forth below, the Court will reach the merits of those

claims and finds that Plaintiffs have sufficiently alleged that Con Edison is a hiring party.

While the Court adopts the R&R's ultimate recommendation not to dismiss Plaintiffs' FIFA

claims, it does so as modified with the analysis that follows.

### A.    The Court Reaches the Merits of Plaintiffs' FIFA Claim

In arguing that it is unnecessary to reach the merits of their FIFA claims, Plaintiffs

urge the Court to follow the lead of two other courts that have deferred ruling on alternative

claims when the primary claims were upheld.  *See* Resp. at 3 (first citing *Pierre v. City of New

York*, No. 20-cv-05116 (ALC), 2021 WL 3887912 (S.D.N.Y. Aug. 31, 2021); and then citing

*LaSalle Bank Nat'l Ass'n v. Citicorp Real Est., Inc.*, No. 02-cv-07868 (HB), 2003 WL

21671812 (S.D.N.Y. July 16, 2003)).  Plaintiffs also raise prudential considerations, pointing

to the limited case law interpreting the relevant provisions of FIFA and the lack of any

indication that addressing Plaintiffs' FIFA claims would materially streamline discovery.  *See*

Resp. at 3-4 (citing R&R at 60-61).  Con Edison disagrees with Plaintiffs' cited authorities,

arguing instead that the Court should still address the adequacy of Plaintiffs' alternative

claims.  *See* Obj. at 2-4.  Con Edison also counters Plaintiffs' prudential arguments by

suggesting that the deferral of Plaintiffs' FIFA claims may lead to unnecessary briefing at a

later stage of litigation.  *See* Reply at 8-9.

The Court agrees with Con Edison that the Court should address its present motion to

dismiss the alternative FIFA claims brought by the Plaintiffs.  Rule 8 affords litigants

"substantial leeway . . . to plead alternative, and even inconsistent, claims."  *Kwan v. Schlein*,

246 F.R.D. 447, 451 (S.D.N.Y. 2007) (citing *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95-96

(2d Cir. 1994)); *see also Schulte v. United States*, No. 21-cv-04042 (JMF), 2023 WL

2162320, at *3 n.1 (S.D.N.Y. Feb. 22, 2023) (similar).  Still, "each alternative theory must

itself be sufficient to state a claim." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 451 (E.D.N.Y. 2012) (quoting *Kwan*, 246 F.R.D. at 452); *accord Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 732 n.4 (S.D.N.Y. 2021); *Alam v. Fairstead Mgmt. LLC*, No. 24-cv-00849 (NRB), 2025 WL 622587, at *9 n.6 (S.D.N.Y. Feb. 26, 2025); *Bowen v. Veritas Techs., LLC*, No. 21-cv-00812, 2023 WL 2049067, at *7 (N.D.N.Y. Feb. 16, 2023); *Phila. Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 18-cv-00217, 2019 WL 1258918, at *2 (D. Conn. Mar. 18, 2019).  Thus, "while the Plaintiffs need not make a pretrial election between the [alternative] theories . . . , they still must adequately plead them each independently."  *Pecorino*, 934 F. Supp. 2d at 450-51; *see Henry*, 42 F.3d at 95-96 ("[E]ven if [plaintiff]'s claims were somehow inconsistent . . . we could and would entertain them both."); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 384 (S.D.N.Y. 2024) ("[A] claim pled in alternative 'must be sufficient standing on its own.'" (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001))); *Bruckman v. Greene County*, No. 19-cv-00670, 2020 WL 886126, at *6 (N.D.N.Y. Feb. 24, 2020) ("While Plaintiff may plead in the alternative, he must nevertheless provide 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (collecting cases)).  Accordingly, "[t]he notion that a pleading will not be dismissed if at least one of the alternative theories of relief is adequately pled, does not preclude the alternative claims from being dismissed if they do not state a cause of action."  *Pecorino*, 934 F. Supp. 2d at 450 (citing *Taylerson v. Am. Airlines, Inc.*, 183 F. Supp. 882, 884 (S.D.N.Y. 1960)). Indeed, under a deferral approach, a plaintiff could avoid having to adequately plead the necessary elements of a claim by simply including it as an alternative theory for relief.  *Cf.* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1282 (4th ed. 2025) (explaining that Rule 8's allowance for the pleading of alternative or hypothetical

claims must "be read in conjunction with" Rule 11 because "[t]he ability to plead hypothetically is not so broad as to allow a plaintiff to sue for a hypothetical injury" and does not "absolve the pleader from honoring the principle that there be good grounds to support the allegations in a complaint or answer"). Deferring may also inefficiently postpone the evaluation of legal issues that may be present, and could potentially be disposed of, at the pleading stage of a case, and permit discovery to proceed on claims that were not sufficiently pleaded (even if the parties here suggest that dismissal of the FIFA claims would not "materially streamline[]" discovery, R&R at 61). *Cf.* Fed. R. Civ. P. 1 (providing that courts should construe and administer the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Given the weight of this authority, the Court finds that it would be appropriate to address Con Edison's motion to dismiss Plaintiffs' alternative claims even though Plaintiffs have sufficiently pleaded their primary claims.

The Court is not persuaded by Plaintiffs' cited authorities to the contrary. First, in *LaSalle Bank National Ass'n v. Citicorp Real Estate, Inc.*, a third-party plaintiff asserted a claim for breach of contract and an alternative claim for breach of the implied covenant of good faith. 2003 WL 21671812, at *2. Because the court sustained the claim for breach of contract, it briefly stated, without citing to any authority, that it was "not necessary to reach" the alternative claim for breach of the implied covenant, which was concededly duplicative. *Id.* at *5. The Court does not find *LaSalle* to be particularly instructive given its lack of analysis or reliance on any caselaw. It is also distinguishable, as the court there determined that the alternative and primary claims were duplicative. *See id.* "Two claims are duplicative of one another if they arise from the same facts . . . and do not allege distinct damages." *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, 575 F. Supp. 3d 445, 470 (S.D.N.Y. 2021) (omission in original) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns,*

9

*LLC*, 537 F.3d 168, 175 (2d Cir. 2008)).  Thus, duplicative "claims rise and fall together," *Doe v. Indyke*, 465 F. Supp. 3d 452, 459 (S.D.N.Y. 2020), which may explain why the *LaSalle* court did not find it necessary to reach the merits of the alternative claim.  The *LaSalle* opinion is also somewhat unclear as it appears that the *LaSalle* court may have in fact dismissed the implied-covenant claim as duplicative of the contract claim rather than allow it to proceed past the pleading stage, as Plaintiffs here suggest.  While the *LaSalle* court did state that it was "not necessary to reach" the implied-covenant claim brought by Citicorp against third-party defendants Criimi and Orix, 2003 WL 21671812, at *5, the court ultimately concluded that Criimi's and Orix's motions to dismiss were denied "with respect to [the] claim for breach of contract and granted *in all other respects*," *id.* at *7 (emphasis added), suggesting that the court did not "reach" the implied covenant claim with an extended discussion but may have dismissed it as concededly duplicative.  Indeed, in a subsequent summary-judgment opinion, the *LaSalle* court summarized its prior decision on Criimi's and Orix's motions to dismiss, confirming: "With respect to Criimi and Orix, Citicorp claimed 1) breach of contract or breach of the implied duty of good faith and 2) indemnification . . . . Citicorp's breach-of-contract claim was upheld *and the other claims dismissed*."  *LaSalle Bank Nat'l Ass'n v. Citicorp Real Est., Inc.*, No. 02-cv-07867 (HB), 2003 WL 22047891, at *4 (S.D.N.Y. Aug. 29, 2003) (emphasis added) (citing *LaSalle*, 2003 WL 21671812, at *3-5).  This is consistent with the way other courts have treated similar duplicative claims. *Cf. Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) ("[C]ourts routinely dismiss a claim for breach of an implied covenant of good faith 'as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." (omission in original) (quoting *TVT Recs. v. Island Def Jam Music Grp.*, 244 F. Supp. 2d 263, 277 (S.D.N.Y. 2003))).

In any event, here, in contrast, Plaintiffs have not conceded, nor have Defendants argued, that Plaintiffs' FIFA claims are duplicative of their other claims. Rather, Plaintiffs have pleaded their FIFA claims in the alternative due to the disputed premise that Defendants improperly classified them as independent contractors rather than employees. *See* R&R at 9. In other words, Plaintiffs' FIFA claims assume that they were properly classified as independent contractors, whereas Plaintiffs' FLSA and NYLL claims assume that they were not. Plaintiffs' claims thus rest on distinct factual predicates under statutes with different available damages: FIFA "will only apply" if Plaintiffs are "later determined to be . . . independent contractor[s]." *Ward v. Cohen Media Pubs. LLC*, No. 22-cv-06431 (JLR), 2023 WL 5353342, at *17 (S.D.N.Y. Aug. 21, 2023); *see In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019) ("A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other."). Where, as here, an alternative claim depends on underlying facts that are not shared with the primary claim, courts will reach the merits of both claims. *See, e.g.*, *Franko v. Lewnowski*, No. 21-cv-06115 (VSB), 2023 WL 2989050, at *5 (S.D.N.Y. Apr. 18, 2023) (finding that alternative claim for breach of implied covenant was not duplicative with claim for breach of contract because the claims rested on different factual predicates due to contractual dispute over plaintiff's status as an at-will employee, and reaching merits of both claims); *Ward*, 2023 WL 5353342, at *17 (reaching merits of alternative FIFA claim that was not alleged to be duplicative).

Finally, Plaintiffs' second cited case, *Pierre v. City of New York*, does not warrant a different conclusion. In *Pierre*, the court determined that it was "not necessary to reach" the plaintiff's alternative FIFA claim because the Court had upheld his alternative FLSA and NYLL claims. *See* 2021 WL 3887912, at *9 (citing *LaSalle*, 2003 WL 21671812, at *5). In reaching that conclusion, the court simply cited solely to *LaSalle* and did not otherwise

11

explain its reasoning.  Because the Court is not persuaded by *LaSalle* for the reasons just described, the Court finds *Pierre* to be equally unpersuasive.

Accordingly, the Court will reach the merits of the motion to dismiss Plaintiffs' FIFA claims.

### B.    Plaintiffs Have Sufficiently Alleged FIFA Claims Against Con Edison

Having determined that it is appropriate to address the merits of Con Edison's motion to dismiss Plaintiffs' FIFA claims, the Court now turns to the central issue raised — the parties' dispute over the meaning of the term "hiring party" in FIFA.  As explained below, the Court finds that Plaintiffs have plausibly alleged that Con Edison is a "hiring party." Plaintiffs have thus stated FIFA claims against Con Edison.

#### 1.  Background of FIFA

"Enacted November 16, 2016 and effective May 15, 2017, FIFA is the first act of its kind in this country to provide legal protections for freelance workers against nonpayment for work performed."  *Chen v. Romona Keveza Collection LLC*, 173 N.Y.S.3d 201, 204 (App. Div. 2022) (citation omitted).  The law "provides protections to any individual hired or retained as an independent contractor to provide services for compensation" and, among other things, "establishes two key rights": the "right to be paid on time and in full" and the right to a written contract with certain key terms (for contracts valued at or above $800).  N.Y.C. Dep't of Consumer & Worker Prot., *5-Year Report on NYC's Freelance Isn't Free Act* 2 (2023);[2] *see* N.Y.C. Admin Code §§ 20-928 to -929.  According to the New York City Department of Consumer Affairs (now the Department of Consumer and Worker Protection), FIFA also serves to reduce employers' incentive "to hire independent contractors or to misclassify

---

[2] Available at https://www.nyc.gov/assets/dca/downloads/pdf/workers/DCWP-Freelance-Isnt-Free-Act-Five-YearReport-2023.pdf [https://perma.cc/8A7Z-DVJ5].

employees as independent contractors as a means to skirt obligations employers have in traditional employment arrangements."  N.Y.C. Dep't of Consumer Affs., *Demanding Rights in an On-Demand Economy: Key Findings from Year One of NYC's Freelance Isn't Free Act* 9 (2018) ("2018 DCA Report");[3] *see also* N.Y.C. Dep't of Consumer Affairs, *The State of Workers' Rights in New York City* 25 (2017)[4] (noting that FIFA enables workers who are misclassified as independent contractors "to enjoy [the] wider set of protections" that are available to "employees under labor and employment laws").

In the wake of FIFA, similar laws have been enacted at the municipal level in other jurisdictions and, more recently, at the state level in Illinois, New York, and California.  *See* 820 Ill. Comp. Stat. 193/1 *et seq.* (effective July 1, 2024); N.Y. Gen. Bus. Law § 1410 *et seq.* (effective Aug. 28, 2024); Cal. Bus. & Prof. Code § 18100 *et seq.* (effective Jan. 1, 2025); Working Today Inc., *The State of Freelance Isn't Free*, Freelancers Union: Blog (May 10, 2023)[5] (noting that freelance-worker ordinances have been enacted in Los Angeles, Columbus, Seattle, and Minneapolis).

### 2.  Relevant Provisions and the Instant Dispute

In relevant part, FIFA defines "hiring party" as "any person who retains a freelance worker to provide any service," subject to certain exceptions that are inapplicable here. N.Y.C. Admin Code § 20-927.  "Freelance worker," in turn, "means any natural person or any organization composed of no more than one natural person . . . that is hired or retained as an

---

[3] Available at https://www.nyc.gov/assets/dca/downloads/pdf/workers/Demanding-Rights-in-an-On-Demand-Economy.pdf [https://perma.cc/ML5Y-TMPY].

[4] Available at https://www.nyc.gov/assets/dca/downloads/pdf/workers/StateofWorkersRights-Report-2017.pdf [https://perma.cc/55Y9-VF5E].

[5] Available at https://blog.freelancersunion.org/2023/05/10/freelance_isnt_free_2023_updates [https://perma.cc/6HK7-TP5N].

independent contractor by a hiring party to provide services in exchange for compensation," also subject to certain exceptions not relevant here. *Id.*

Con Edison contends that the definition of "hiring party" is limited to entities that directly hired the freelance workers. *See* Obj. at 4-6. It thus argues that it is not a hiring party because the "the SAC concedes that Plaintiffs were not hired by Con Edison, but instead were 'hired by one of the Subcontractors directly or by one of the owners and/or managers of [the CESG Defendants].'" *Id.* at 5 (quoting SAC ¶ 225). Con Edison also relies on the R&R's uncontested finding that Plaintiffs failed to "'sufficiently plead that Con Edison . . . had the requisite power to hire' [Plaintiffs]," *see id.* at 6 (quoting R&R at 46), at least for purposes of establishing joint-employer liability under the FLSA and NYLL. Plaintiffs, however, believe that Con Edison's reading of FIFA is too narrow, arguing instead that FIFA's definition of "hiring party" also encompasses entities that retain the services of freelance workers and pay for those services. Accordingly, Plaintiffs maintain that "Con Edison qualifies as a hiring party" because the flaggers and spotters were hired on behalf of Con Edison to do work for Con Edison, that Con Edison "retain[ed]" them "to ensure safety at Con Edison jobsites located on or near public roadways and sidewalks," Resp. at 5, and that they were paid as independent contractors using 1099 Forms maintained "on behalf of Con Edison," SAC ¶¶ 262; *see* Resp. at 5. Plaintiffs also disagree that Judge Stein's finding as to Con Edison's lack of hiring power for purposes of joint-employer liability is dispositive as to Con Edison's status as a hiring party under FIFA, *see* Resp. at 5-6, reasoning that "this argument clearly cuts the plain and ordinary meaning of the word 'retain' out of the statute entirely," *id.* at 6.

### 3. *FIFA's Text and Purpose*

New York courts interpret the New York City Administrative Code as they would any other state law, starting first with "the language of the statute itself." *Lynch v. City of New*

*York*, 159 N.E.3d 213, 216 (N.Y. 2020) (quoting *Yatauro v. Mangano*, 955 N.E.2d 343, 346 (N.Y. 2011) (per curiam)).  As the New York Court of Appeals has explained, "[w]hen presented with a question of statutory interpretation, a court's primary consideration 'is to ascertain and give effect to the intention of the Legislature,'" and "[t]he statutory text is the clearest indicator of legislative intent."  *Nadkos, Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, 132 N.E.3d 568, 571 (N.Y. 2019) (second alteration in original) (first quoting *Lemma v. Nassau Cnty. Police Officer Indem. Bd.*, 105 N.E.3d 1250, 1254 (N.Y. 2018); and then quoting *DaimlerChrysler Corp. v. Spitzer,* 860 N.E.2d 705, 708 (N.Y. 2006)).  Accordingly, under New York principles of statutory interpretation, "the literal language of a statute controls 'unless the plain intent and purpose of [the] statute would otherwise be defeated.'"  *Lynch*, 159 N.E.3d at 216 (alteration in original) (quoting *Anonymous v. Molik*, 109 N.E.3d 563, 568 (N.Y. 2018)).[6]

The Court thus turns first to the "literal language" of FIFA.  "In the absence of a statutory definition, '[New York courts] construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase.'"  *People v. Bay*, 232 N.E.3d 168, 175 (N.Y. 2023) (quoting *Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.*, 51 N.E.3d 521, 524 (N.Y. 2016)).  To support their competing interpretations of the term "retain," the parties cite to a variety of dictionary definitions.  These dictionaries are not particularly helpful in resolving any ambiguity, however, as they confirm that "retain" is susceptible to multiple meanings that could plausibly support either side's position.  For

---

[6] The Court notes that FIFA's implementing rules do not provide any guidance as to the scope of the term "hiring party."  *See* 6 R.C.N.Y. § 7-501(a) ("As used in this chapter, the term[] . . . 'hiring party' shall have the same meaning[] as set forth in [FIFA].").

example, *Merriam Webster* defines "retain" as "to keep in one's pay or service" or "to employ by paying a retainer." *Retain*, *Merriam-Webster*, https://www.merriam-webster.com/ dictionary/retain [https://perma.cc/24NJ-WXUB]. This definition aligns with Plaintiffs' position that one can "retain" a freelance worker without necessarily having hired the worker. Likewise, *Black's Law Dictionary* defines "retain" as "to engage a lawyer, an accountant, an employee, etc. for the provision of services." *Retain*, *Black's Law Dictionary* (12th ed. 2024). But *Black's* also defines "retain" as "to hire," which supports Con Edison's position that FIFA extends only to entities that directly hire freelance workers. *Id.* Similarly unilluminating is the *American Heritage Dictionary*, which defines "retain" as both "[t]o hire a person for (that person's services)" and "[t]o keep in one's service or pay." *Retain*, *The American Heritage Dictionary* (5th ed. 2022).

In any case, dictionary definitions are instructive but "not controlling,'" *People v. Badji*, 165 N.E.3d 1068, 1073 n.3 (N.Y. 2021) (quoting N.Y. Stat. Law § 234), and the Court finds that Plaintiffs have the better reading of the text because it avoids surplusage. As the New York Court of Appeals has explained, "'meaning and effect should be given to every word of a statute' and . . . an interpretation that renders words or clauses superfluous should be rejected." *Mestecky v. City of New York*, 88 N.E.3d 365, 367 (N.Y. 2017) (quoting *Leader v. Maroney, Ponzini & Spencer*, 761 N.E.2d 1018, 1024 (N.Y. 2001)); *accord Bainbridge Fund Ltd. v. Republic of Argentina*, 37 F.4th 847, 851 (2d Cir. 2022); *see also Nadkos*, 132 N.E.3d at 571 ("It is . . . our well-established rule that 'statutory language should be harmonized, giving effect to each component and avoiding a construction that treats a word or phrase as superfluous.'" (quoting *Lemma*, 105 N.E.3d at 1254)); N.Y. Stat. Law § 231 ("[W]ords are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning."). Plaintiffs' proposal that "retain" should mean something other than

"hire" avoids surplusage in the definitions section.  Specifically, FIFA defines "freelance

worker" as a person that is "hired *or* retained" to furnish services, N.Y.C. Admin Code

§ 20-927 (emphasis added), and giving both words the same meaning would render "retained"

unnecessary.  *See also People v. Corr*, 251 N.E.3d 1226, 1228 (N.Y. 2024) ("[W]here the

same word or phrase is used in different parts of a statute, it will be presumed to be used in the

same sense throughout . . . ." (quoting N.Y. Stat. Law § 236)).  While the "or" in "hired or

retained" could theoretically be introducing "retained" as an appositive — "a word or phrase

that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped

Cruser')" — the "ordinary use [of 'or'] is almost always disjunctive, that is, the words it

connects are to 'be given separate meanings.'"  *United States v. Woods*, 571 U.S. 31, 45

(2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).  Indeed, the Court of

Appeals has recently affirmed that "[c]anons of construction ordinarily suggest that terms

connected by a disjunctive be given separate meanings, unless the context dictates otherwise."

*People ex. rel. Ellis v. Imperati*, --- N.E.3d ---, 2025 WL 1687717, at *3 (N.Y. June 17, 2025)

(quoting *Reiter*, 442 U.S. at 339).  Con Edison's view that "retain" and "hire" should be

understood as synonymous throughout FIFA violates that principle because it "would have

[the Court] ignore the disjunctive 'or' and rob the term ['retained'] of its independent and

ordinary significance."  *Reiter*, 443 U.S. at 338-39.

FIFA's stated definition of "hiring party" also refers only to retention.  N.Y.C. Admin.

Code § 20-927 ("The term 'hiring party' means any person who *retains* a freelance worker to

provide any service . . . ." (emphasis added)).  If the City Council wanted to categorically

exclude entities that did not participate in the hiring process, it could have instead defined

"hiring party" to mean "any person who *hires* a freelance worker to provide any service,"

subject to the enumerated exceptions.  It did not do so, and the definition of "freelance

worker" demonstrates that "retain" and "hire" have separate meanings. *See id.* (defining "freelance worker" as someone who "is *hired or retained* as an independent contractor by a hiring party to provide services in exchange for compensation" (emphasis added)). This indicates that the City Council intended to give "retain" a distinct — and broader — meaning than just "hire" in the definition of "hiring party." *See People v. Tiger*, 110 N.E.3d 509, 514 (N.Y. 2018) ("[A]n inference must be drawn that what is omitted or not included was intended to be omitted and excluded." (quoting *Chem. Specialties Mfrs. Ass'n v. Jorling*, 649 N.E.2d 1145, 1151 (N.Y. 1995))). Were the Court to collapse the meanings of these two separate words, it would be reading a restriction into FIFA that the City Council presumably "did not see fit to enact," absolving entities that retained a worker's services, but may not have actually initially hired the worker, from FIFA liability. *Corr*, 251 N.E.3d at 1228 ("Courts 'cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the [l]egislature did not see fit to enact.'" (alteration in original) (quoting *People v. Hardy*, 157 N.E.3d 117, 122 (N.Y. 2020))); *James B. Nutter & Co. v. County of Saratoga*, 209 N.E.3d 1255, 1259 (N.Y. 2023) ("Courts 'may not create a limitation that the legislature did not enact.'" (quoting *Theroux v. Reilly*, 803 N.E.2d 364, 366 (N.Y. 2003))).

Plaintiffs' interpretation of "retain" and "hiring party" not only avoids surplusage and unnecessary limitations, but it is also more consistent with FIFA's purpose. *See, e.g.*, *DCH Auto v. Town of Mamaroneck*, 192 N.E.3d 1141, 1146-48 (N.Y. 2022) (reviewing legislative history to ascertain meaning of statutory language with multiple reasonable interpretations); *Nadkos*, 132 N.E.3d at 574 ("[T]he legislative history of an enactment may also be relevant and is not to be ignored." (quoting *Tompkins Cnty. Support Collection Unit ex rel. Chamberlin v. Chamberlin*, 786 N.E.2d 14, 19 (N.Y. 2003))); *Town of Aurora v. Village of East Aurora*, 116 N.E.3d 64, 68 (N.Y. 2018) ("[W]e should inquire 'into the spirit and

purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." (quoting *Albany L. Sch. v. N.Y. State Off. of Mental Retardation & Dev. Disabilities*, 968 N.E.2d 967, 974 (N.Y. 2012))); *see also* N.Y. Stat. Law § 235 ("When a word is susceptible of two or more significations, the meaning to be given must be determined from the context of the statute, the purpose and spirit of it, and the intention of the lawmakers.").  "FIFA was passed to ensure that people working in the city are afforded protection in an economy where workers are increasingly hired for discrete or short-term tasks rather than for full-time employment."  *Turner v. Sheppard Grain Enters., LLC*, 127 N.Y.S.3d 260, 264 (Sup. Ct. 2020).  Put differently, FIFA sought to expand the scope of legal remedies available to freelancers who could not seek protection from existing labor laws when they were denied compensation by those for whom they worked.  *See* Comm. on Consumer Affs., 2016 City Council, Committee Report on Proposed Int. No. 1017-C, at 4-5 (Oct. 26, 2016) ("Committee Report")[7] (remarking on inadequacy of existing legal remedies available to freelance workers and emphasizing testimony from freelance workers that FIFA "would greatly increase the likelihood that [they] would avail themselves of their rights in state court"); *StClair v. Sansal*, 155 N.Y.S.3d 712, 714 (Civ. Ct. 2021) ("The purpose of FIFA is to 'protect freelance workers who were denied compensation . . . .'" (quoting *Turner*, 127 N.Y.S.3d at 262)); Caitlin M. Baranowski, *Freelance Isn't Free*, 12 Brook. J. Corp. Fin. & Com. L. 439, 442-43 (2018) ("FIFA seeks to ensure basic protections for freelancers," and "imposes stringent requirements on hiring parties, who are broadly defined as any person who retains a freelance worker to provide any service." (footnotes omitted)).

---

[7] Available at https://legistar.council.nyc.gov/View.ashx?M=F&ID=4746382&GUID=
4F62986F-AFE5-4702-9CE1-CA2F40578E4B [https://perma.cc/L42Y-SWTC]

Given that FIFA was passed to protect freelance workers who "struggled with nonpayment and delayed payment for work rendered," Committee Report at 3-4, it makes the most sense to adopt a definition of "retain" that focuses on the "provi[sion]" of "services in exchange for compensation," N.Y.C. Admin. Code § 20-927, rather than solely on the act of initial hiring.  And contrary to FIFA's purpose, Con Edison's preferred definition of "retain" to mean only "hire" would allow an entity that controls a worker's compensation and receives and retains the worker's services to escape liability for nonpayment so long as it did not directly hire the worker.  This would be appreciably narrower than the relief available to traditional employees under the FLSA and NYLL, which permit the maintenance of wage-violation suits against multiple employers simultaneously, including those who did not participate in the hiring process, pursuant to the joint-employer doctrine.  *See Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) ("Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer."); *see, e.g.*, *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 258 (S.D.N.Y. 2012) ("[A]n entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees . . . ." (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 70 (2d Cir. 2003)); *Mayes v. Gerber Grp. LP*, 228 N.Y.S.3d 922, at *3 (Sup. Ct. 2025) (denying motion to dismiss NYLL claim where plaintiff "was assigned to perform work for defendants through a third-party agency" but "was not hired directly by defendants"); R&R at 55-56 (concluding that "Plaintiffs have plausibly alleged that Con Edison was their joint employer when they worked as flaggers or spotters at Con Edison jobsites," despite Con Edison's lack of involvement in the hiring process).

Although the Court need not decide whether an analogous "joint hiring party" doctrine is

available under FIFA, or the precise contours of such a test, adopting a narrow definition of

"retain" that is solely synonymous with "hire" — despite FIFA's separate use of both

terms — would inappropriately limit the class of entities against whom a freelance worker

could assert a FIFA claim when seeking to recover denied or delayed compensation.  Such an

interpretation does not comport with the statutory language and would conflict with FIFA's

purpose of strengthening the payment obligations owed to freelance workers who cannot avail

themselves of ordinary labor and employment laws.  *See* 2018 DCA Report at 9 (noting that

FIFA serves to discourage employers from "hir[ing] independent contractors or . . .

misclassify[ing] employees as independent contractors as a means to skirt obligations

employers have in traditional employment arrangements").  While defining "hiring party" to

include more than those who hire may seem counterintuitive at first glance, it was the City

Council's choice to supply a more expansive definition, and the Court must remain faithful to

that intent as evidenced by the law's language and purpose.

### 4.  Relevant Caselaw

Plaintiffs' broader reading of the term "hiring party" is also consistent with the limited

caselaw interpreting FIFA's definitions section.  *Chen v. Romona Keveza Collection*, a case

from the First Department of the New York Supreme Court, Appellate Division, evaluated the

sufficiency of a complaint based on the definitions of "hiring party" and "freelance worker."

*See generally* 173 N.Y.S.3d 201.  This is the first and, as of yet, only Appellate Division

decision to have grappled with the contours of the definition of "hiring party" under FIFA.

*See Sutton v. Tapscott*, 120 F.4th 1115, 1119-20 (2d Cir. 2024) ("'Although we are not strictly

bound' by the decisions of intermediate New York courts, those decisions are 'a basis for

ascertaining state law which is not to be disregarded by a federal court unless it is convinced

by other persuasive data that the highest court of the state would decide otherwise.'" (quoting

*DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005))).  In *Chen*, plaintiff Dina Kozlovska,

who was represented by a nonparty modeling agency, asserted a FIFA claim against defendant

Romona Keveza Collection LLC ("RKC"), alleging that RKC "failed to pay her for her

modeling services."  173 N.Y.S.3d at 204; *see id.* at 203-04.  RKC moved to dismiss the

claim, arguing in relevant part that it did not "fit within the statutory definition of 'hiring

party'" because Kozlovska was in contractual privity with her modeling agency rather than

with RKC.  Reply Memorandum of Law at 2, *Chen v. Romona Keveza Collection LLC*, 2021

N.Y. Misc. LEXIS 4720 (Sup. Ct. March 4, 2021) (Index No. 153413/2020), 2020 NY S. CT.

MOTIONS LEXIS 6866; *see id.* at 3-4, 3 n.3.  RKC also argued that Kozlovska was "not a

'freelance worker' within the meaning of FIFA," averring that she was more properly

considered an employee of her agency rather than an independent contractor.  *Id.* at 4.  In

opposition, Kozlovska maintained that she was an independent contractor, not an employee of

her agency, and that RKC was a hiring party because it retained the benefit of the services she

performed on its behalf.  *See* Memorandum of Law in Opposition at 1-2, 8, 13, *Chen*, 2021

N.Y. Misc. LEXIS 4720 (Index No. 153413/2020), 2020 NY S. CT. MOTIONS LEXIS 6859.

She argued that FIFA's definition of hiring party was broad enough to encompass multiple

entities, including RKC, regardless of any contractual relationship she may have had with her

agency.  *Id.* at 8-10, 14-15.  The trial court disagreed with Kozlovska, agreed with RKC, and

granted RKC's motion to dismiss "for the reasons stated in [RKC's] motion papers."  *Chen*,

2021 N.Y. Misc. LEXIS 4720, at *1.

On appeal, the First Department reversed in part, holding that Kozlovska had

sufficiently stated a FIFA claim against RKC, even though the record indicated that her

"[h]iring agreement was made through . . . [her] modeling agency" rather than with RKC

directly. *Chen*, 173 N.Y.S.3d at 206. While acknowledging that "FIFA's text is silent as to how to factor an agent into the calculus of whether someone is a freelance worker," the court reasoned that FIFA "does not mandate direct contracting between a freelance worker and the hiring party." *Id.* at 207. The court also noted that testimony regarding "the plight of [workers represented by agents] was . . . before the City Council when it passed FIFA" and observed that "persons who are represented by an agent are not included in [FIFA's] finite list" of workers excluded from the law. *Id.*; *see* N.Y.C. Admin Code § 20-927 (excluding sales representatives, attorneys, and licensed medical professionals from the definition of "freelance worker"). While acknowledging that discovery could provide further clarity, the First Department concluded that Kozlovska had adequately stated a FIFA claim against RKC as a hiring party because her "complaint alleged that [she] furnished services" to RKC, who "did not conclusively refute this allegation." *Chen*, 173 N.Y.S.3d at 207.

While *Chen* did not directly opine on the meaning of "retain," the court drew several conclusions that are consistent with Plaintiffs' position that a "hiring party" includes entities that retain the services of a freelance worker, regardless of their involvement in hiring. First, the *Chen* court concluded that FIFA "does not mandate direct contracting between a freelance worker and the hiring party," *id.* at 207, which Judge Stein likewise observed in his prior R&R that assessed the first amended complaint, *see Ortiz v. Consol. Edison Co. of N.Y.*, No. 22-cv-08957 (JLR) (GS), 2024 WL 3086161, at *34 (S.D.N.Y. June 7, 2024) ("[A] written contract is not required to bring a [FIFA] claim . . . for failure to pay compensation and late payment of compensation, as Plaintiffs do here."), *report and recommendation adopted*, 2024 WL 3105686 (S.D.N.Y. June 24, 2024). That a contract is not required to assert a FIFA claim for late or unpaid compensation contradicts Con Edison's argument that FIFA does not extend "beyond . . . the parties to a freelancer contract." Reply at 7. Second,

*Chen* stands for the proposition that a freelance worker does not lack a cause of action against a defendant just because her hiring agreement was made through a third party such as an agency. *See* 173 N.Y.S.3d at 206-07 (noting that while Kozlovska's "[h]iring agreement was made through [a] third party, [her] modeling agency," FIFA does not exclude workers represented by agents and does not require direct contracting with a hiring party). Applied here, Judge Stein's undisputed finding that the SAC "lack[s] . . . allegations about [Con Edison's] involvement in the hiring process," R&R at 46, is not fatal to Plaintiffs' FIFA claims because freelance workers who are hired by third-party agents are not categorically excluded from FIFA, *see Chen*, 173 N.Y.S.3d at 206 (noting that Kozlovska stated in her administrative complaint to the New York Office of Labor Policy and Standards ("OLPS") that her hiring agreement was made through a third party, but that OLPS still "issued a rebuttable presumption in Kozlovska's favor," which suggested that this was "not fatal to her FIFA claim"). Third, the *Chen* court held that the trial court "erred in dismissing Kozlovska's claims against all defendants" because her "complaint alleged that she furnished services to all defendants." *Id.* at 207. This aligns with a broader definition of "retain" that means something along the lines of "[t]o keep in one's service or pay." *Retain, Merriam-Webster, supra.*[8]

---

[8] Following discovery, RKC moved for summary judgment, seeking dismissal of Kozlovska's FIFA claim on the bases that she was not a "freelance worker" and that RKC was not a "hiring party," among other arguments. *Chen v. Romona Keveza Collection LLC*, No. 153413/2020, 2024 WL 2106985, at *5 (N.Y. Sup. Ct. May 6, 2024), *aff'd as modified*, 234 N.Y.S.3d 138 (App. Div. 2025) ("*Chen II*"), *appeal dismissed,* No. 2025-378, 2025 WL 2670237 (N.Y. Sept. 18, 2025) (dismissing motion for leave to appeal because the trial-court order was not finally determinative of the action). In relevant part, RKC argued that Kozlovska was not a "freelance worker" because her agency's standard modeling agreement provided that models rendered services on the agency's behalf rather than in their individual capacities. *Id.* at *8. The trial court rejected these arguments and concluded that factual disputes regarding the nature of plaintiff's relationship with her agency precluded summary judgment. *See id.* at *8-9. On appeal, the First Department affirmed in part and granted

### 5.   *Plaintiffs Sufficiently Allege that Con Edison Is a Hiring Party*

Based on the foregoing, the Court finds that Plaintiffs have sufficiently alleged that Con Edison is a "hiring party" under FIFA because Plaintiffs allege that they were retained to "furnish services" to Con Edison, who supervised the provision of Plaintiffs' services, in exchange for compensation over which Con Edison exerted control. *Chen*, 173 N.Y.S.3d at 207; N.Y.C. Admin Code § 20-927. The SAC establishes that the Plaintiffs were retained to provide flagging and spotting services "to ensure safety at Con Edison jobsites located on or near public roadways and sidewalks." SAC ¶ 1; *see id.* ¶¶ 384, 386, 437, 439, 476, 479-480, 510, 513, 536, 570, 609; *see also Ortiz*, 2024 WL 3086161, at *33 ("[Plaintiffs] allege throughout the FAC they were hired by Defendants to 'provide services' in the form of flagging and spotting at Con Edison jobsites 'in exchange for compensation,' and specify these allegations for each named Plaintiff."). As Judge Stein notes, Con Edison supervisors were "physically present" at these jobsites, R&R at 50 (citing SAC ¶ 194-195), and in general, flaggers and spotters, "and at least most of the Plaintiffs, worked full-time and exclusively for Con Edison" for up to seven days and ninety hours per week, *id.* at 53 (citing SAC ¶¶ 274, 288, 349). The parties also do not object to the R&R's conclusion that the SAC adequately

---

summary judgment in favor of Kozlovska on her FIFA claim against RKC. *See Chen II*, 234 N.Y.S.3d at 139. Because the defendants had not produced "a signed agreement between Kozlovska and [her agency] in which Kozlovska agreed not to do freelance work," the First Department declined "to consider what effect, if any, such a contract would have on [her] ability to bring a claim as a freelance worker under FIFA to recover payment claimed to be due." *Id.* at 140; *see also id.* (noting in any case that "any provision of a contract purporting to waive rights under [FIFA] is void as against public policy" (quoting N.Y. Admin. Code § 20-935(a)) (alteration in original)). While *Chen II*'s post-discovery fact pattern is less directly relevant to the instant case, the First Department did not disturb its earlier holdings, which the Court still finds instructive in ascertaining FIFA's proper application at the pleading stage. Indeed, the First Department reaffirmed in *Chen II* "that FIFA does 'not mandate direct contracting between a freelance worker and the hiring party.'" *Id.* (quoting *Chen*, 173 N.Y.S.3d at 207). *Chen II* also focused on the plaintiff's status as a "freelance worker," which is not the focus of the motion to dismiss here.

pleads that Con Edison exerted control over the Plaintiffs' provision of services. R&R at 48-52. The SAC also alleges that Con Edison set Plaintiffs' rates of payment for these services alongside the other Defendants. *See* SAC ¶¶ 385, 438, 477-478, 511, 537-538, 572-574, 610, 612. Specifically, Plaintiffs allege that "Con Edison and the CESG Defendants establish[ed] hourly rates" for the flaggers and spotters, R&R at 52 (quoting SAC ¶ 244), and Con Edison, in turn, "paid CESG on the basis of hourly rates for the hours worked by" those flaggers and spotters, *id.* at 52-53 (first citing SAC ¶ 251; and then citing BPA § 5(B)). "This stream of money was then used by the Subcontractors to pay [flaggers and spotters] on an hourly basis." *Id.* at 53 (citing SAC ¶ 253). The R&R also credits (without objection) Plaintiffs' allegations that Con Edison "worked together with" the other Defendants "in determining the number of hours [flaggers and spotters] worked and, thus, the amount they would be paid." *Id.* at 54 (first citing SAC ¶¶ 213-214, 219, 248-250; and then citing Dkt. 210-12 at 1-2). Plaintiffs were ultimately paid as independent contractors on 1099 Forms, *see* SAC ¶ 258, which were allegedly maintained by the other Defendants "on behalf of Con Edison," *id.* ¶ 262. The Court finds that, together, these allegations are sufficient to plead that Con Edison served as a "hiring party" of Plaintiffs by retaining them for the services they furnished in exchange for compensation at Con Edison jobsites.

Con Edison's cited cases are inapposite and do not alter this Court's analysis. First, Con Edison cites to *Frisch v. Likeopedia* for the proposition that "'FIFA imposes obligations only on [the actual] "hiring party,"'" not its managers, majority members, or alleged joint employers." Obj. at 5 (quoting *Frisch v. Likeopedia, LLC*, No. 24-cv-03904 (VM), 2024 WL 3938345 (S.D.N.Y. Aug. 26, 2024)). This stretches the two-sentence discussion in *Frisch* too far beyond its facts. In *Frisch*, the court determined that the manager and majority member of an LLC could not be held liable as hiring party where the agreement was formed between

plaintiff and the LLC itself, not the individual manager who signed and negotiated a consulting agreement with plaintiff on behalf of only the LLC. *See Frisch*, 2024 WL 3938345, at \*1, \*8-9; *see also SF Entities, Inc., v. Gamburg*, No. 23-cv-04881 (AMD) (LKE), 2025 WL 2625037, at \*5 (E.D.N.Y. Sept. 11, 2025) (similarly concluding that LLC's CEO could not be held liable as a hiring party under FIFA where, "aside from his signature," the CEO's name did not appear in the parties consulting agreement, and the LLC, not the CEO, retained plaintiff). There is no indication that the plaintiff in *Frisch* separately furnished any services to the manager, whereas here, Plaintiffs allege that they furnished services to Con Edison directly. Moreover, the Court disagrees with Con Edison that *Frisch* suggests that FIFA does not impose obligations on "alleged joint employers." Obj. at 5. *Frisch* makes no mention of joint-employer liability, and its brief discussion of "hiring party" does not purport to conduct any such analysis.

Con Edison's second cited case, *Monzano-Moreno v. Libqual Fence Co.*, is likewise unhelpful here. *See* No. 18-cv-00161 (MKB) (AKT), 2021 WL 730663 (E.D.N.Y. Feb. 5, 2021), *report and recommendation adopted*, 2021 WL 688295 (E.D.N.Y. Feb. 23, 2021). In that decision, the court concluded that the moving defendants were not the plaintiffs' joint employers for purposes of the FLSA and NYLL, *see id.* at \*17-18, and therefore, "for similar reasons," were not the plaintiffs' hiring parties for purposes of FIFA, *id.* at \*18. Judge Stein reached a similar conclusion as to the CESG Defendants in his last R&R concerning Plaintiffs' first amended complaint. *See Ortiz*, 2024 WL 3086161, at \*33 ("For similar reasons that lead the Court to conclude the FAC does not adequately allege that the CESG Defendants were Plaintiffs' 'employer,' the Court finds Plaintiffs do not sufficiently identify the CESG Defendants as a 'hiring party' under FIFA." (citation omitted)). As Judge Stein points out in his most recent R&R, however, it does not logically follow from *Monzano-*

*Moreno* that if an entity *is* plausibly alleged to be a joint employer, that entity cannot also be held liable as a hiring party. *See* R&R at 60 n.15. *Monzano-Moreno* is thus of no import here given that the SAC plausibly alleges that Con Edison was Plaintiffs' joint employer.

In sum, the Court finds that Plaintiffs have sufficiently pleaded that Con Edison is a "hiring party" under FIFA. Because it is otherwise undisputed for purposes of this motion that Plaintiffs have adequately pleaded that they were freelance workers and that Plaintiffs were denied all or timely compensation, Plaintiffs have plausibly alleged their FIFA claims against Con Edison.[9]

## CONCLUSION

The Court therefore adopts the R&R as modified herein. Con Edison's motion to dismiss is DENIED, the CESG Defendants' motion to dismiss is GRANTED as to the SAC's thirteenth and fourteenth causes of action for prevailing wages and is otherwise DENIED, and Plaintiffs' request for leave to file a third amended complaint is GRANTED. Plaintiffs' thirteenth and fourteenth causes of action for prevailing wages are thus hereby DISMISSED without prejudice to repleading, consistent with the R&R. *See* R&R at 71 n.18, 76 n.19, 86.

---

[9] For similar reasons, the Court finds that Plaintiffs have sufficiently alleged FIFA claims against the CESG Defendants. While the CESG Defendants did not file objections to the R&R, they did argue in their motion-to-dismiss briefing that they could not be considered hiring parties under FIFA because Plaintiffs did not plausibly allege that they were Plaintiffs' joint employers. *See* CESG Br. 16-17. The Court rejects that argument given the R&R's uncontested finding that Plaintiffs have plausibly alleged that the CESG Defendants were Plaintiffs' joint employers. In any event, the SAC pleads that all but one Plaintiff was interviewed and hired by a CESG manager or employee, and the CESG Defendants have not objected to the R&R's conclusion that the SAC adequately pleads that the CESG Defendants had the power to hire and fire the Plaintiffs. *See* R&R at 35-37.

The clerk of Court is respectfully directed to terminate the pending motions at

Dkts. 229 and 234.

Dated:  September 24, 2025
        New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge