**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
NASHAILY ORTIZ, individually, and on behalf :
of all others similarly situated, et al., :
 :
       Plaintiffs, :  22 Civ. 8957 (JLR) (GS)
 :
 - against - :  <u>OPINION & ORDER</u>
 :
CONSOLIDATED EDISON COMPANY OF :
NEW YORK, INC., et al., :
 :
       Defendants. :
-------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

  Before the Court is Plaintiffs' motion for an order conditionally certifying this

action as a collective action under the Fair Labor Standards Act ("FLSA"); directing

that notice be provided to potential members of the collective and that Defendants

be directed to provide contact information for those members; and equitably tolling

the statute of limitations.  (Dkt. No. 221).  The motion is opposed by Defendant

Consolidated Edison Company of New York, Inc. ("Con Edison"); Defendants CE

Solutions Group, LLC, CE Solutions Inc., NYC 2Way International Ltd. d/b/a CTG

Cars LLC, and Jeannine Napoleone-Colbert (the "CESG Defendants"); and

Defendants Concord Limousine Inc. and Concord Limousine 1, LLC (the "Concord

Defendants").

  For the reasons set forth below, Plaintiffs' motion for conditional certification

is **GRANTED** on the conditions set forth herein.  Plaintiffs' motion to equitably toll

the statute of limitations is **DENIED**.

## BACKGROUND

This action was commenced on October 20, 2022 (Dkt. No. 1) and has been the subject of two motions to dismiss filed by the CESG Defendants and Con Edison. (*See* Dkt. No. 202 (June 7, 2024 Report and Recommendation with respect to motions to dismiss Plaintiffs' First Amended Complaint ("FAC")); Dkt. No. 205 (order adopting June 7, 2024 Report and Recommendation); Dkt. No. 289 (August 8, 2025 Report and Recommendation with respect to motions to dismiss Plaintiffs' Second Amended Complaint ("SAC"))). Familiarity with the Court's prior rulings on the motions to dismiss is presumed.

In brief, the SAC's eight named Plaintiffs—Nashaily Ortiz, Isaura Lopez, Ruben Lemus Najarro, Nashemir Ortiz, Adrianna Gamboa, Steven Allicott, Roberto Rosario, Jr., and Stephanie Bundrick (collectively, the "Named Plaintiffs")—allege they worked as "flaggers" or "spotters" at jobsites operated by Con Edison in New York City and Westchester County. (Dkt. No. 210 (SAC) ¶¶ 141, 144, 292-93, 302). Plaintiffs assert claims under the FLSA, on behalf of themselves and a collective of similarly situated persons, for failure to pay overtime and failure to timely pay all wages owed. (*Id.* ¶¶ 692-709; *see also id.* ¶¶ 645-52 (collective action allegations)). Plaintiffs also assert claims under the New York Labor Law and, in the alternative, the New York City Freelance Isn't Free Act, as well as common law claims for failure to pay prevailing wages, on behalf of themselves and a class of similarly situated persons. (*Id.* ¶¶ 710-818; *see also id.* ¶¶ 653-91 (class action allegations)).

In addition to the eight Named Plaintiffs, 17 other individuals have filed consent forms opting in to become Plaintiffs in this action: Osiris Santos, Adonis Espinal, Miguel Sosa, Melvin Baria, Derrick Omaro, Roberto Rosario, Marvin Rosado, Pavell Rosado, Henri Paulino, Raymond Watson, Kevin White, Benjamin Franco, Sanju Philip, Jorge Cervantes, Hector Lopez, Doreen Polanco, and Rafael De La Cruz (the "Opt-In Plaintiffs").  (Dkt. Nos. 5, 11, 15, 52, 66, 95, 110, 126, 145, 148, 157, 179, 183).  These consent forms were filed between October 26, 2022 and December 20, 2023.  (*Id.*).  Thus, there are now a total of 25 Plaintiffs in this case.

The SAC names fifteen different Defendants who allegedly jointly employed Plaintiffs to work at Con Edison jobsites (collectively, "Defendants").  In addition to Con Edison, the CESG Defendants, and the Concord Defendants (collectively, the "Opposing Defendants"), the Defendants include CE Flagging Plus Corp., CE Reserve Corp., Argani Inc., and Hassan Sablini (the "Argani Defendants"); Nabih Koubaissay a/k/a Nabil Simba and A & M Transport Transpors Inc. (the "A&M Defendants"); 23 West Group Inc. ("23 West"); and Marvelous Mark Transportation Co., Inc. ("MMT").  (SAC at 1-2).

The SAC alleges that the CESG Defendants operate "a traffic control services company in Brooklyn, New York that provides Con Edison with Flaggers and Spotters."  (*Id.* ¶ 1).  The CESG Defendants provide these flaggers and spotters to Con Edison through various subcontractors, including the Argani Defendants, the Concord Defendants, the A&M Defendants, 23 West, and MMT (collectively, the "Subcontractors").  (*Id.* ¶ 2; *see id.* ¶ 242).  The Named Plaintiffs worked for Con

Edison, the CESG Defendants, and one or more of the Subcontractors at various times between August 2018 and April 2023. (*Id.* ¶¶ 18, 20, 23, 26, 28, 30, 32, 35). The SAC alleges that Defendants jointly employ approximately 400 to 500 flaggers and spotters (defined as "Employees") at any given time. (*Id.* ¶¶ 1, 153).

Plaintiffs originally moved for conditional certification of an FLSA collective on October 26, 2022, less than a week after filing their first Complaint. (Dkt. Nos. 6-9). The Honorable Gabriel W. Gorenstein, the Magistrate Judge then designated to this case, denied that motion without prejudice until after all Defendants had responded to the Complaint. (Dkt. No. 12). Plaintiffs renewed their motion for conditional certification on October 13, 2023, after the filing of their FAC. (Dkt. Nos. 153-56). However, on June 24, 2024, the Honorable Jennifer L. Rochon adopted the undersigned's Report and Recommendation (Dkt. No. 202) and, *inter alia*, dismissed Plaintiffs' FLSA claims as against the CESG Defendants, with leave to amend. (Dkt. No. 205). At the same time, Judge Rochon denied as moot Plaintiffs' then-pending motion for conditional certification of a collective action, without prejudice to refiling the motion within 60 days from the filing of the SAC. (*Id.* at 2).

On August 7, 2024, Plaintiffs filed the SAC (Dkt No. 210), and on September 18, 2024, Plaintiffs filed the instant motion (Dkt. No. 221), along with a supporting memorandum of law (Dkt. No. 222 ("Pl. Br.")) and a declaration from their counsel, Camilo M. Burr (Dkt. No. 223 ("Burr Declaration" or "Burr Decl.")). To the Burr Declaration were attached declarations from seven of the Named Plaintiffs and two

of the Opt-in Plaintiffs (Burr Decl. Exs. 2-10 ("Plaintiffs' Declarations")); Proposed
Notices of Pendency and Consent to Join Forms to be sent to members of the
collective via U.S. mail, email, and text message and posted on the CESG
Defendants' and Concord Defendants' smartphone applications (Burr Decl. ¶¶ 37-40
& Exs. 11-14); and a number of documents submitted in support of Plaintiffs'
motion (Burr Decl. Exs. 11-43).

Con Edison, the CESG Defendants, and the Concord Defendants filed their
oppositions to Plaintiffs' motion on October 15 and 16, 2024. (Dkt. No. 240
("Concord Br."); Dkt. No. 241 ("Con Ed Br."); Dkt. No. 243 ("CESG Br.")). Con
Edison also submitted a declaration from counsel. (Dkt. No. 242). Plaintiffs filed
their reply brief on November 8, 2024 (Dkt. No. 255 ("Pl. Rep.")), together with
another declaration from their counsel (Dkt. No. 256 ("Burr Rep. Decl.")).

## LEGAL STANDARDS

### A. Conditional Certification

Section 216(b) of the FLSA provides that "[a]n action to recover the liability
prescribed [under the statute] may be maintained against any employer . . . by any
one or more employees for and in behalf of himself or themselves and other
employees similarly situated." 29 U.S.C. § 216(b). The statute further specifies
that no employee shall be a party plaintiff to such an action "unless [the employee]
gives [his or her] consent in writing to become such a party and such consent is filed
in the court in which such action is brought." *Id.*

"While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to permit notices to be sent to potential plaintiffs informing them of the option to join the suit." *Lorenzo v. Dee Mark Inc.*, 702 F. Supp. 3d 194, 200 (S.D.N.Y. 2023); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (holding that "district courts have discretion, in appropriate cases, to implement [Section 216(b)] . . . by facilitating notice to potential plaintiffs"); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, we hold that it makes more sense, in light of the 'opt-in' provision of [Section 216(b)], to read the statute as permitting, rather than prohibiting, notice in an appropriate case.").

Orders which authorize notice pursuant to Section 216(b) are referred to as orders "certifying" a collective action, "even though [the] FLSA does not contain a certification requirement." *Wood v. Mike Bloomberg 2020, Inc.*, 484 F. Supp. 3d 151, 156 (S.D.N.Y. 2020) (citation omitted). "The act of 'certifying' a collective action, however, means only that this court has 'exercised . . . its discretionary power . . . to facilitate the sending of notice' to potential members of the collective." *Lorenzo*, 702 F. Supp. 3d at 200 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (cleaned up)).

"'The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action.'" *Id.* (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). As such, "no showing of numerosity, typicality, commonality and

representativeness need be made." *Id.* (citation omitted).  Further, "in contrast to the procedures for a class action under Fed. R. Civ. P. 23, in a collective action, only plaintiffs who affirmatively opt in can benefit from the judgment." *Wood*, 484 F. Supp. 3d at 156 (cleaned up).

The Second Circuit employs a two-step process in FLSA cases involving a proposed collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law.  At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs.

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citations omitted).  The motion before the Court is a step-one motion.  At this early, pre-discovery stage of the case, "the threshold issue . . . is whether plaintiffs have demonstrated that there are other employees who are 'similarly situated.'" *Lorenzo*, 702 F. Supp. 3d at 201 (quoting *Glatt*, 811 F.3d at 540).

When deciding whether a plaintiff has met this threshold standard, a court "should not weigh the merits of the underlying claims" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (cleaned up).  Rather, a court narrowly decides whether the plaintiff has made a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro,*

*Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  Where, as here, plaintiffs have not yet had the benefit of discovery, "courts consider the pleadings as well as supporting affidavits" to evaluate whether plaintiffs have made the required "modest factual showing."  *West v. LaserShip, Inc.*, No. 21 Civ. 5382 (LTS) (SLC), 2025 WL 2555496, at *8 (S.D.N.Y. Sept. 5, 2025).

"Although the plaintiff bears a low burden of proof, 'the burden is not non-existent.'"  *Adam v. Bloomberg L.P.*, No. 21 Civ. 4775 (JLR) (JLC), 2023 WL 3814252, at *3 (S.D.N.Y. June 5, 2023) (quoting *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010)); *see also Mata v. Foodbridge LLC*, No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015) ("'certification is not automatic'" (quoting *Romero v. H.B. Auto Grp., Inc.*, No. 11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012))).  "Even at the conditional certification stage, a plaintiff's burden under [Section] 216(b) 'cannot be satisfied simply by unsupported assertions,' or with 'conclusory allegations.'"  *Zhongle Chen v. Kicho Corp.*, No. 18 Civ. 7413 (PMH) (LMS), 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020) (quoting *Myers*, 624 F.3d at 555, and *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006)).  "Instead, a plaintiff must offer 'actual evidence of a factual nexus' between [his] situation and those of other allegedly similarly situated employees."  *Adam*, 2023 WL 3814252, at *3 (quoting *Qing Gu v. T.C. Chikurin, Inc.*, No. 12 Civ. 2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)).

**B. Equitable Tolling**

"Unlike Rule 23 class actions, in a FLSA collective action the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014); *see* 29 U.S.C. 256(b) (providing that for persons other than named plaintiffs in complaint, an FLSA action is considered to be commenced on the "date on which [the claimant's] written consent is filed in the court in which the action is commenced"). However, the doctrine of equitable tolling "'allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances.'" *Son v. Hand Hosp.*, 768 F. Supp. 3d 526, 544 (S.D.N.Y. 2025) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)).

"Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Muhammad v. Alto Pharm. LLC*, No. 23 Civ. 11315 (KHP), 2025 WL 1276566, at *6 (S.D.N.Y. May 1, 2025) (citation omitted); *see Iavorski v. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000). The Second Circuit has instructed that, "[w]hen determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (cleaned up). The litigant seeking equitable tolling bears the burden of establishing these two elements. *Lorenzo*, 702 F. Supp. 3d at 205.

## DISCUSSION

### A.    Motion for Conditional Certification

In their motion, Plaintiffs seek to conditionally certify a collective defined as "[a]ll current and former Flaggers and Spotters who worked for" Defendants from October 26, 2019 to the present.  (Burr Decl. Ex. 11 at 1).  The Opposing Defendants argue that Plaintiffs' motion should be denied both because it is premature and because Plaintiffs have not made the requisite showing to warrant conditional certification.  (Con Ed Br. at 2-22; CESG Br. at 6-15; Concord Br. at 2-7).  They also object to Plaintiffs' proposed methods of notice on various grounds.  (Con Ed Br. at 22-26, 29-30; CESG Br. at 15-18; Concord Br. at 9).  The Court considers the Opposing Defendants' arguments in turn.

#### 1.    Prematurity

The Opposing Defendants argue that it is premature to decide Plaintiffs' motion for conditional certification for two reasons.

First, the Opposing Defendants argue that the Court should resolve Con Edison's and the CESG Defendants' motions to dismiss the SAC before addressing the issue of conditional certification, because if Plaintiffs cannot state an FLSA claim against those Defendants, it would be futile to send notice to other potential plaintiffs.  (Con Ed Br. at 3; CESG Br. at 6; Concord Br. at 2-3).  The Court largely agrees, which is why it did not rule on Plaintiffs' previously filed motion for conditional certification while the motions to dismiss the FAC were pending, and why it has not ruled on Plaintiffs' pending motion until now.

10

In the Report and Recommendation ("R&R") issued last month, the undersigned recommended that both Con Edison's and the CESG Defendants' motions to dismiss the FLSA claims in the SAC be denied because Plaintiffs have properly alleged that these Defendants were their joint employers. (Dkt. No. 289 at 16-56). Although the R&R is now before Judge Rochon for her review, neither Con Edison nor the CESG Defendants filed any objections to the R&R's recommendation with respect to the FLSA claims.[1] Accordingly, the motions to dismiss the SAC no longer present a persuasive ground for deferring a ruling on Plaintiffs' motion for conditional certification.

Second, the Opposing Defendants argue that Plaintiffs' motion is premature because it "fails to explain how certifying [Plaintiffs'] proposed collective will not interfere with" a putative class action pending in New York state court, *Richardson v. CE Solutions Group, LLC*, No. 653369/2021 (Sup. Ct. N.Y. Cnty. filed May 21, 2021), and a putative FLSA collective and class action pending in the Eastern District of New York, *Butskhrikidze v. CE Solutions Group, LLC*, No. 24 Civ. 6855 (RER) (MMH) (E.D.N.Y. filed Sept. 27, 2024). (Con Ed Br. at 3-4; CESG Br. at 6-7; Concord Br. at 3). Those cases are also brought on behalf of flaggers and/or spotters at Con Edison jobsites, and certain of the defendants overlap with the Defendants in this case: CE Solutions Group, LLC is a defendant in both *Richardson* and *Butskhrikidze*, Con Edison and MMT are defendants in *Richardson*, and the A&M

---

[1] The only objection filed to the R&R is a limited objection by Con Edison contending that the R&R erred in failing to substantively address whether the SAC's alternatively-pled FIFA claims are sufficiently alleged as to Con Edison. (Dkt. No. 291).

Defendants are defendants in *Butskhrikidze*.  *See Richardson v. CE Solutions Group, LLC*, No. 653369/2021, 2024 WL 4467705 (Sup. Ct. N.Y. Cnty. Oct. 10, 2024); First Amended Complaint, *Butskhrikidze*, No. 24 Civ. 6855, Dkt. No. 31 ¶¶ 648-72 (April 14, 2025) ("*Butskhrikidze* FAC").

But the plaintiffs in the *Richardson* case do not assert any FLSA claims.  And while the plaintiffs in the *Butskhrikidze* case do assert FLSA claims (among others), *see Butskhrikidze* FAC ¶¶ 648-72, that case was filed nearly two years after this action.  According to the docket, no motion for conditional certification (or class certification) has been filed in that action.  The Opposing Defendants do not explain how conditionally certifying an FLSA collective in this case would "interfere" with either *Richardson* or *Butskhrikidze*, nor does the Court see how it would.[2]  Thus, this argument likewise presents no valid reason for deferring a ruling on Plaintiffs' motion.

### 2.  Adequacy of Plaintiffs' Showing

As noted above, Plaintiffs have submitted declarations from seven of the Named Plaintiffs and two of the Opt-In Plaintiffs in support of their motion for conditional certification.  (Burr Decl. Exs. 2-10).  Plaintiffs' Declarations explain when and for which Subcontractor each Plaintiff worked (*see, e.g.*, Burr Decl. Ex. 2

---

[2] The Concord Defendants cite cases from this District that have "applied either the *Colorado River* abstention doctrine or the first-filed rule to stay later-filed federal litigation in favor of prior pending and overlapping state court litigation." (Concord Br. at 3-4).  But the cited cases have nothing to do with certification of an FLSA collective (they are not even FLSA cases), and no party has filed a motion to stay this action on the basis of either *Colorado River* abstention or the first-filed rule in deference to the *Richardson* state court case.  Nor do the Concord Defendants provide any reason to believe that such a motion would have merit.

¶ 3) and set forth facts regarding how Con Edison, the CESG Defendants, and the Subcontractor controlled various aspects of the Plaintiffs' employment, including, for example, assignment of shifts (*id.* ¶¶ 9-20); direction and supervision of their work (*id.* ¶¶ 21-23); tracking Plaintiffs' hours through submission and verification of timesheets and rectifying discrepancies (*id.* ¶¶ 24-29, 46); and control over the hiring, firing, and discipline of Plaintiffs (*id.* ¶¶ 30-44). These assertions echo the allegations made, at somewhat greater length, in the SAC, including on behalf of the other Named Plaintiff. (SAC ¶¶ 161-293, 510-35).

In addition, Plaintiffs allege, both in the SAC and in their Declarations, that they routinely were not paid overtime despite working more than 40 hours per week, providing examples of specific weeks when this was the case. (*Id.* ¶¶ 357-62, 400-05, 447-52, 490-96, 518-22, 549-54, 586-95, 618-26; *see also, e.g.*, Burr Decl. Ex. 2 ¶¶ 49-57). Plaintiffs also allege that they routinely were not paid their wages on time and had to wait up to two weeks after they were supposed to be paid, again providing specific examples in their declarations. (SAC ¶¶ 160, 336, 371, 411, 458, 500, 526, 634; *see also, e.g.*, Burr Decl. Ex. 2 ¶¶ 58-66). Further, Plaintiffs' Declarations aver, in essentially identically vague terms, that Plaintiffs all had "countless" (or, in one case, "numerous") conversations with unidentified "other Employees" who "confirmed" that Defendants "regularly denied them overtime by paying them at a straight-time rate for hours worked in excess of 40 hours in a single workweek or by failing to pay them for all hours worked, and paid their wages after their regularly scheduled paydays." (*Id.* ¶ 67; Ex. 3 ¶ 66; Ex. 4 ¶ 65; Ex.

5 ¶ 57; Ex. 6 ¶ 56; Ex. 7 ¶ 60; Ex. 8 ¶ 64; Ex. 9 ¶ 57; Ex. 10 ¶ 59).

Lacking any details about the declarant's conversations with other Employees, each of these latter averments, if considered in isolation, would have little probative value on this motion. *See Adam*, 2023 WL 3814252, at *5 ("Where a plaintiff bases her assertions regarding similarly situated employees upon her own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred."). Taken together, however, Plaintiffs' declarations have considerably greater force. *See Hunter v. Next Level Burger Co.*, No. 23 Civ. 3483 (HG), 2024 WL 686929, at *2 (E.D.N.Y. Feb. 20, 2024) ("While it is true that any one of these declarations, standing alone, would be insufficient to permit the case to proceed as a collective action, the fact that there are four hourly workers who state that they were not provided their portion of tips equivalent to the amount of cash that they observed customers put into the tip jar is sufficient at this stage to find Plaintiffs are similarly situated with respect to the alleged FLSA violation."); *Pierre v. City of New York*, No. 20 Civ. 5116 (ALC) (VF), 2022 WL 4482295, at *6 (S.D.N.Y. Sept. 27, 2022) ("'[W]here there are declarations from multiple plaintiffs, with each plaintiff corroborating or supporting each other's statements, even if somewhat thin on details, such proof is sufficient to meet the low factual threshold for FLSA collective certification.'" (quoting *Lubas v. JLS Grp., Inc.*, No. 18 Civ. 6611 (KAM) (SJB), 2020 WL 4210754, at *7 (E.D.N.Y. July 22, 2020))).

Moreover, the nine declarants are joined by another 16 Employees who have elected to be Plaintiffs in this lawsuit. Thus, dozens of Employees have asserted that they have been subjected to the same allegedly unlawful employment practices described in Plaintiffs' pleading. This is more than sufficient to meet Plaintiffs' step-one burden to demonstrate that they and other similarly situated flaggers and spotters were "victims of a common policy or plan that violated the law," *see Myers*, 624 F.3d at 555. Other courts have granted conditional certification motions for collectives of flaggers at Con Edison jobsites on showings even less robust than that made by Plaintiffs here. *See Moses v. Griffin Indus., LLC*, No. 18 Civ. 1200 (ALC) (OTW), 2020 WL 5813737, at *1, *3-4 (S.D.N.Y. Sept. 30, 2020) (conditionally certifying collective of flaggers who worked for supplier of flagging services for Con Edison jobsites based on allegations in complaint and declarations from eight plaintiffs of FLSA unpaid overtime and minimum wage violations); *Ballast v. Workforce7 Inc.*, No. 20 Civ. 3812 (ER), 2021 WL 5999202, at *1, *4 (S.D.N.Y. Dec. 20, 2021) (finding that three plaintiffs had "met their modest burden for certification of a collective of Workforce7 flaggers who worked on Con Ed" jobsites for plaintiffs' FLSA unpaid wage and unpaid overtime claims).

The Opposing Defendants' arguments that Plaintiffs have failed to make the "modest factual showing" necessary for conditional certification are unavailing.

The CESG Defendants contend that Plaintiffs' Declarations fail to establish that Plaintiffs and other workers are "similarly situated" because the Declarations "do not specifically allege for whom the other workers were employed, whether the

other workers had similar job responsibilities, or at which jobsite they worked."
(CESG Br. at 9).  But the Declarations state that the Plaintiffs spoke with "other
Employees"—defined in the Declarations to mean "Flaggers and Spotters" —
employed by Con Edison, the CESG Defendants, and the Subcontractor in question.
(*E.g.*, Burr Decl. Ex. 2 ¶¶ 6, 67).  It is, furthermore, a reasonable inference that
Plaintiffs had these conversations with other flaggers and spotters at the same Con
Edison jobsites Plaintiffs worked at.  And even if that were not the case, it would
not much matter, because there is no indication that Defendants' employment
practices differed from jobsite to jobsite.

The CESG Defendants also complain that Plaintiffs' Declarations "do not
claim that the workers for any and all available jobs were interviewed by the same
individual or even the same corporate defendant."  (CESG Br. at 9).  But all but one
Named Plaintiff, and both Opt-In Plaintiffs who submitted Declarations, were
interviewed at CESG's office by a CESG manager or employee.  (R&R at 35; Burr
Decl. Ex. 9 ¶ 31, Ex. 10 ¶ 31).  That they were not all interviewed by the *same*
representative of the CESG Defendants does not even begin to suggest they are not
"similarly situated" for purposes of the collective certification analysis.  Likewise
immaterial is the fact that one (or more) Plaintiffs were interviewed by a
representative of a Subcontractor.  What matters is that all Plaintiffs adequately
allege that their employment conditions and those of other members of the proposed
collective were jointly controlled by Defendants and they were subject to the same
unlawful employment practices.  *See Ballast*, 2021 WL 5999202, at *4 ("[A]s long as

'named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment.'" (quoting *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 516 (2d Cir. 2020))).

The CESG Defendants' arguments that Plaintiffs have not adequately alleged a common policy or practice violative of the FLSA are no more convincing. Here again, the CESG Defendants amplify minor variations in Defendants' practices— *e.g.*, that "not all Defendants" asked Plaintiffs to form a separate corporation so they could be classified as independent contractors; that some Plaintiffs used "a different mobile application" and "a different form of time sheet" depending on which Subcontractor they worked for; that Plaintiffs "did not all have uniform pay periods and did not all have the same regularly-scheduled pay day"; and that in some instances Plaintiffs were denied overtime pay and in others they were denied both overtime and regular-rate pay (CESG Br. at 11-12)—while ignoring the larger picture presented by Plaintiffs, which shows a substantial degree of commonality in the FLSA violations allegedly experienced by similarly situated Employees. *See Ballast*, 2021 WL 5999202, at *7 ("[T]he common policy Plaintiffs must show is that Defendants had policies to underpay them, not that there was one exact manner in which potential collective members may have had to sign in to be assigned jobs.").

Otherwise, the CESG Defendants regurgitate the arguments made in their motion to dismiss the SAC, claiming that the SAC engages in impermissible group pleading and fails to adequately allege that the CESG Defendants were joint

employers.  (CESG Br. at 13-14).  This Court has already rejected those arguments in the R&R and determined that the SAC adequately pleads that the CESG Defendants jointly employed Plaintiffs together with Con Edison and the relevant Subcontractors.  (R&R at 19-26, 34-45).  And it would be manifestly inappropriate for the Court to consider at this pre-discovery stage whether Plaintiffs ultimately will be able to prove their joint employment allegations.  *See Ballast*, 2021 WL 5999202, at *7 ("Plaintiffs are correct that whether or not [defendants] are joint employers 'is a highly fact-specific inquiry' that is not properly before the Court at this time." (quoting *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, No. 09 Civ. 6831 (RJH) (MHD), 2010 WL 1778794, at *5 (S.D.N.Y. Apr. 29, 2010))).

For its part, Con Edison relies almost entirely on the same arguments it made in seeking to dismiss the SAC on the ground that Plaintiffs had failed to adequately plead that Con Edison was their joint employer.  (Con Ed Br. at 6-22). Thus, Con Edison argues that Plaintiffs have failed to present sufficient evidence that Con Edison controlled Plaintiffs' rates of pay or method of payment (*id.* at 8-10), that Con Edison had the power to hire or fire Plaintiffs (*id.* at 10-12), that Con Edison controlled Plaintiffs' work schedules (*id.* at 13-14), that Con Edison controlled Plaintiffs' terms of employment (*id.* at 14-17), that Con Edison maintained Plaintiffs' employment records (*id.* at 17-19), and that Con Edison meets any other factors indicative of joint employment (*id.* at 19-22).

Again, the Court rejected these arguments in ruling in the R&R that the SAC sufficiently alleges that Con Edison was Plaintiffs' joint employer.  (R&R at 27-29,

18

45-56).  To the extent Con Edison argues the Court should find that Plaintiffs have adduced insufficient "evidence" to prove their allegations that Con Edison is liable for the alleged FLSA violations, or should credit Con Edison's factual assertions that it is not responsible for those violations (Con Ed. Br. at 9, 21-22), it is, as noted, inappropriate for the Court to resolve those questions on this motion.  *See Moses*, 2020 WL 5813737, at *6 (conditionally certifying FLSA collective of flaggers who worked at Con Edison jobsites with respect to claims against Con Edison and others); *Ballast*, 2021 WL 5999202, at *11 (same); *see also Lazar v. Anthem Cos.*, 678 F. Supp. 3d 434, 439 (S.D.N.Y. 2023) ("In exercising its discretion at the conditional certification stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" (quoting *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10 Civ. 7557 (JGK), 2011 WL 2207517, at *3 (S.D.N.Y. June 6, 2011))).

Finally, the Concord Defendants argue that only two of the eight Named Plaintiffs claim to have worked for the Concord Defendants and that Plaintiffs' "only allegation" about the Concord Defendants is that Concord Limousine issued timesheets to flaggers and spotters.  (Concord Br. at 1, 6).[3]  But Plaintiffs' allegations go well beyond this.  Plaintiffs Lopez and Najarro (the two Plaintiffs who worked for the Concord Defendants) assert in their declarations that, while they did so, the Concord Defendants controlled various aspects of their employment,

---

[3] Even as to this allegation, the Concord Defendants claim (without citation to the record) that the timesheets "do not mention Concord Limousine," but contain only its address and phone number. (*Id.* at 6).  But this is simply incorrect.  The timesheets supplied by Plaintiffs on this motion are prominently emblazoned "Concord Limousine 1 LLC."  (Burr Decl. Exs. 16, 26, 43 at 4, 6).

failed to pay overtime when required, and failed to timely pay them their wages. (Burr Decl. Ex. 3 ¶¶ 3, 7, 10-11, 21-22, 24-30, 40-41, 44-45, 58 (Lopez); Burr Decl. Ex. 4 ¶¶ 3, 7, 10-11, 21-22, 24-30, 38-39, 42, 44-46, 60-64 (Najarro)).  Plaintiffs have also submitted documents indicating that Lopez and Najarro continued to interact with the CESG Defendants while they were working shifts at Con Edison jobsites for the Concord Defendants, lending support for Plaintiffs' claim that the Concord Defendants were part of the same alleged common scheme to violate the FLSA. (Burr Decl. Exs. 26, 43).

The Concord Defendants also argue that Plaintiffs have failed to make an adequate showing that the Concord Defendants directed or controlled their conditions of employment or committed an FLSA violation.  (Concord Br. at 6-7). Notably, however, the Concord Defendants did not move to dismiss any of Plaintiffs' complaints on these grounds.  While the Concord Defendants' role in the alleged FLSA violations is not as well delineated, and Plaintiffs' showing as to the Concord Defendants' involvement is far less robust, it is nonetheless sufficient to clear the "low bar," *see Son*, 768 F. Supp. 3d at 543, for conditional certification.[4]

---

[4] This case is unlike those cited by the Concord Defendants where courts, while granting collective certification as to certain defendants, denied the motion as to other defendants who were not sufficiently connected to the alleged FLSA violations.  (*See* Concord Br. at 6-7).  In *Johnson-Cradle v. KPS Affiliates Inc.*, No. 22 Civ. 1052 (PGG) (SLC), 2023 WL 3091675 (S.D.N.Y. Apr. 26, 2023), for example, certification was denied as to one corporate defendant because the single plaintiff's reported "experiences and observations [were] only indicative of the compensation policies" of the other corporate defendant and the plaintiff provided no allegations "that would allow the Court to infer that she has any knowledge of the compensation policies" of the defendant in question.  *Id.* at *5.  In another case cited by the Concord Defendants, the relevant plaintiffs' FLSA claims related to a project that only began *after* they had stopped working for the corporate defendant in question. *Lubas*, 2020 WL 4210754, at *11; *see also Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 487 (S.D.N.Y. 2016) ("boilerplate allegations" of joint employment insufficient).

Accordingly, the Court finds that Plaintiffs have made the "modest factual showing" required to justify conditional certification of an FLSA collective. At the same time, however, the Court finds that Plaintiffs' definition of the collective is too broad, albeit perhaps immaterially so.

Specifically, as noted above, Plaintiffs' proposed notices provide for notice to be sent to "[a]ll current and former Flaggers and Spotters who worked for" any of the Defendants from October 26, 2019 to the present. (*E.g.*, Burr Decl. Ex. 11 at 1). Read literally, this would include *any* flaggers and spotters who worked for Con Edison during the relevant period, even those having no affiliation with the CESG Defendants or any of the Subcontractors. It also would include flaggers and spotters who worked for the CESG Defendants but not at Con Edison jobsites, and flaggers and spotters who worked for any Subcontractor on matters having nothing to do with the CESG Defendants or Con Edison.

This lawsuit has a more limited scope. It is brought on behalf of flaggers and spotters employed pursuant to contracts that the CESG Defendants had with Con Edison and additional agreements entered into between the CESG Defendants and the Subcontractors that enabled the CESG Defendants to carry out their contracts with Con Edison. (SAC ¶¶ 1-4, 12, 141-43). It may be that the parties agree that the Notices will only be sent to this group of flaggers and spotters. If that is the case, then the overbreadth in Plaintiffs' definition of the FLSA collective would not matter. As part of the meet-and-confer process regarding the Notices (*see infra*), the

parties are directed to discuss whether any change in the definition of the collective is warranted.

### 3. The Proposed Notices

Plaintiffs and the Opposing Defendants also disagree over numerous aspects of the proposed Notices to be sent to members of the collective. (*See* Con Ed Br. at 22-26; CESG Br. at 15-18; Concord Br. at 9 (joining in co-defendants' objections); Pl. Rep. at 15-23; *see also* Burr Decl. Exs. 11-14 (proposed Notices)). The Court considers the Opposing Defendants' objections below.

### a. Content of the Notices

The Opposing Defendants contend that the Notices should be provided in Georgian and Spanish, in addition to English, given the predominant languages spoken by members of the proposed collective. (Con Ed Br. at 22). As Plaintiffs are amenable to making this change (Pl. Rep. at 15), the Court agrees it should be made.

The Court also agrees that the Notices should be revised to include a statement to the effect that "Defendants deny that they violated the law, and the Court has not taken any position regarding the merits of the lawsuit." *See Severino v. Avondale Care Grp., LLC*, No. 21 Civ. 1720 (LGS) (SDA), 2022 WL 16555372, at *5 (S.D.N.Y. Oct. 29, 2022); Con Ed Br. at 22-23 & n.22; CESG Br. at 16; Pl. Rep. at 15 n.18, 16 n.20.

Further, the Court agrees that the Notices should include a statement to the effect that "If you choose to join this case, you may be required to provide

information, appear for a deposition, and/or testify in court." *See Severino*, 2022 WL 16555372, at *6; *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012); Con Ed. Br. at 24 & n.24; CESG Br. at 16; Pl. Rep. at 17 n.22.

In all other respects the Opposing Defendants' objections are overruled.  In particular, the Court finds that:

- the opt-in period should be 60 days rather than 30 days (*see Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 134 (S.D.N.Y. 2022) ("The standard opt-in period in this Circuit, following conditional certification, is 60 days."); CESG Br. at 16; Pl. Rep. at 16);

- further disclosure of a potential opt-in plaintiff's right to hire his or her attorney is unnecessary, as the Notices already state: "You have the right to hire your own attorney and/or file an independent lawsuit" (Con Ed Br. at 23-24; CESG Br. at 15; Pl. Rep. at 16);

- the Notices need not inform potential opt-in plaintiffs that they may have responsibilities for legal costs should Plaintiffs not prevail (*see Severino*, 2022 WL 16555372, at *4 (rejecting defendants' proposed statement to this effect because of its potential *in terrorem* effect); Con Ed Br. at 25-26; Pl. Rep. at 17);

- the Notices should not include contact information for Defendants' counsel (*see Martinenko v. 212 Steakhouse Inc.*, No. 22 Civ. 518 (LJL), 2022 WL 1227140, at *7 (S.D.N.Y. Apr. 26, 2022); *Hong*, 582 F. Supp. 3d at 134; Con Ed Br. at 24; CESG Br. at 15-16; Pl. Rep. at 17); and

- opt-in plaintiffs should be instructed to mail their opt-in forms to

Plaintiffs' counsel, not the Court (*see Nahar v. Dozen Bagels Co. Inc.*, No. 15 Civ.

1613 (ALC) (FM), 2015 WL 6207076, at *7 (S.D.N.Y. Oct. 20, 2015) (stating that a

requirement to mail opt-in forms to the Court "is unnecessary and would be

burdensome to the Court"); CESG Br. at 16; Pl. Rep. at 18).[5]

### b. Method of Providing Notice

As noted, Plaintiffs propose providing four forms of notice to the collective,

via U.S. mail, email, text message, and posting on mobile phone apps used by

Employees to check for available shifts.  (Pl. Br. at 24; Burr Decl. Exs. 11-14).  The

Opposing Defendants object to the latter two forms of notice, contending that notice

by mail and email is sufficient.  (Con Ed Br. at 25; CESG Br. at 17-18; Concord Br.

at 9).

Courts in this Circuit generally do not authorize notice via text message to an

FSLA collective absent a showing by the plaintiff as to the need for such notice.

*See, e.g.*, *Reilly v. City of New York*, No. 23 Civ. 521 (AS), 2024 WL 4125360, at *1

(S.D.N.Y. Aug. 7, 2024); *Chicas v. Kelco Constr., Inc.*, No. 21 Civ. 9014 (PAE) (SDA),

2023 WL 2072026, at *6 (S.D.N.Y. Feb. 19, 2023).  However, notice via text message

has been permitted where, for example, "the nature of the employer's business

facilitated a high turnover rate among employees," *Kucher v. Domino's Pizza, Inc.*,

No. 16 Civ. 2492 (AJN), 2017 WL 2987216, at *6 (S.D.N.Y. May 22, 2017), or where

---

[5] The Court also agrees with Plaintiffs' arguments in opposition to the CESG Defendants' objection to the subject line of the email Notice and the CESG Defendants' proposal to include language stating: "This notice does not mean that you are entitled to any monetary recovery."  (CESG Br. at 16-17; Pl. Br. at 16 n.19, 18 n.26).

the collective includes "relatively low-paid, somewhat transient, non-English speaking immigrants," *Mendez v. Sweet Sam's Baking Co. LLC*, No. 18 Civ. 9910 (JMF), 2019 WL 13394599, at *1 (S.D.N.Y. May 23, 2019); *see also Anchahua v. M D Bldg. Servs., Inc.*, No. 25 Civ. 35 (LJL), 2025 WL 1654630, at *8 (S.D.N.Y. June 11, 2025) (authorizing notice by first-class mail, email, and text message).

The Court finds that text message is an appropriate form of alternative notice under the circumstances of this case. Plaintiffs assert that there is a high rate of turnover among flaggers and spotters and note, in support of that assertion, that none of the nine Plaintiffs who submitted declarations on this motion remains employed by Defendants. (Pl. Rep. at 18). This action has been pending for nearly three years, and notice will be sent to flaggers and spotters who worked for Defendants going back another three years, to October 2019, increasing the likelihood that collective members have changed their residence and/or email address in the interim. *See Kucher*, 2017 WL 2987216, at *7 (authorizing text message notice where "the action has been pending for a prolonged period of time"). Moreover, the SAC contains numerous exhibits reflecting hundreds of text messages between Plaintiffs and Defendants, suggesting that text messaging was a routine and even preferred method for Employees to communicate about work-related matters. (SAC Exs. B, C, D, E, F, I, J, L, O, S, T, U, V, W). Thus, a sufficient showing has been made as to the need for text message notice.

The Court reaches a different conclusion with respect to Plaintiffs' request that notice be disseminated via the CESG Defendants' Smartphone App and the

25

Concord Defendants' Concord App.  Plaintiffs argue that notice via the Smartphone
App and the Concord App would serve as the "digital equivalent" of "a workplace
posting."  (Pl. Br. at 26; Pl. Rep. at 20).  (Workplace postings are a common form of
notice in FLSA cases, but ineffectual in this case, given that Employees do not
routinely report to a central workplace.)  For several reasons, the Court disagrees
that notice via these apps is appropriate in this case.

First, the CESG Defendants represent that they have "discontinued their
use" of the Smartphone App and, as a result, "would be unable to post a notice
thereon."  (CESG Br. at 17).  Plaintiffs understandably take issue with this
representation, noting that the CESG Defendants provided no supporting evidence
and asserting that the Smartphone App can still be downloaded in the "App Store"
on both iPhone and Android.  (Pl. Rep. at 21; Burr Rep. Decl. ¶ 5).  Still, Plaintiffs
do not provide any evidence that flaggers and spotters employed by the CESG
Defendants continue to use the Smartphone App, and the Court is reluctant to
discount a representation made by counsel for the CESG Defendants as officers of
the Court.[6]

Second, as noted above, the relevant timeframe goes back to October 2019
and, as Plaintiffs themselves emphasize, there was "a high turnover rate" among
Employees and "*none* of the [nine] declarants are still employed by Defendants."

---

[6] There is no indication that the Concord App is not still in use.  However, it appears that only a
relatively small proportion of Employees worked for the Concord Defendants: of the ten Named
Plaintiffs and Opt-In Plaintiffs who have identified what Subcontractors they worked for, only two
worked for the Concord Defendants.  There would be little point in authorizing alternative service
via an app that would reach only a small slice of the putative collective.

(Pl. Rep. at 18) (emphasis in original & citation omitted).  This suggests that notice via the Smartphone App or Concord App will be of limited utility in reaching members of the collective.

Third, the Court is authorizing a robust series of alternative forms of notice including notice by U.S. mail, email, and text messaging.  Plaintiffs do not explain why the additional method of notice via the Smartphone App and Concord App is needed in this case; instead, they justify it on the ground that it will "ensure that as many Employees as possible are made aware of this action."  (Pl. Rep. at 22).  But casting as wide a net as possible cannot be a sufficient basis to justify a proposed method of notice to an FLSA collective.  As noted above, courts require a showing of need before authorizing text messaging notice in FLSA cases.  No less should be required when evaluating a request that the defendants post notice on a smartphone app.

Fourth, Plaintiffs do not cite any cases authorizing notice of the type they seek.  Rather, they cite cases authorizing notice through means such as "websites and social media applications."  (Pl. Br. at 26).  But those cases are different in a critically important respect: they involve providing notice through a channel of communication controlled by the prospective *plaintiffs* and/or their counsel.[7]  Here,

---

[7] *See, e.g.*, *Huer Huang v. Shanghai City Corp.*, No. 19 Civ. 7702 (LJL), 2020 WL 5849099, at *16 (S.D.N.Y. Oct. 1, 2020) (authorizing plaintiffs to post notice "on their [counsel's] website and on social media platforms"); *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18 Civ. 5448 (ER), 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (requiring defendants to produce, for notice purposes, WhatsApp, WeChat ID and/or Facebook user names "for putative collective members"); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17 Civ. 4661 (PGG) (DF), 2019 WL 3759126, at *12 (S.D.N.Y. July 25, 2019) (same); *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) (finding that "Plaintiffs are authorized . . . to post the notice on a website"); *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 5557489, at *4 (S.D.N.Y.

Plaintiffs seek to require certain *Defendants* to provide notice to putative collective members using Defendants' own proprietary smartphone applications used for business purposes. While the Court cannot say that this method of notice would never be appropriate, Plaintiffs have not adequately shown that it is a proper form of notice in this case. *See Mark*, 2014 WL 5557489, at *4 (rejecting plaintiffs' request to require defendants to post notice on defendants' websites and blogs, as such notice "would be overbroad" and would "extract[] a cost from Defendants, and has the potential to appear punitive").

### c. Contact Information for the Collective

Plaintiffs request that Defendants be ordered to provide the names of putative members of the collective during the relevant time period as well as their last known addresses, telephone numbers (home and mobile), email addresses, and dates of employment, in a computer-readable list. (Pl. Br. at 23). Such a request is standard and necessary for Plaintiffs to be able to provide notice to the collective. *See, e.g.*, *Reyes v. A.B. Bakery Rest. Corp.*, No. 23 Civ. 1612 (AS), 2023 WL 5918056, at *5 (S.D.N.Y. Sept. 11, 2023) ("'Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action.'" (quoting *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016)).

---

Nov. 3, 2014) (authorizing plaintiffs "to use dedicated social media pages" of their creation to provide notice on sites such as Facebook, LinkedIn, and Twitter).

Con Edison states that it does not have contact information for the proposed collective. (Con Ed Br. at 29-30). That may be. If so, Con Edison will have no information to produce. The Court will not, however, excuse Con Edison from the requirement to provide any relevant information it may, upon further review, determine that it does possess. That said, the Court presumes that it would be inefficient for each Defendant to separately search for and produce (or for Plaintiffs to receive and review) what would undoubtedly be duplicative contact information for all collective members. The Court envisions that Defendants will work collectively to deliver to Plaintiffs a single comprehensive list of the putative collective members along with their contact information. These mechanics, however, are best addressed in the first instance by the parties themselves.

*     *     *

The parties are directed to meet and confer to agree upon a revised form of Notices and a schedule for production of contact information consistent with the rulings above.

## B. Motion for Equitable Tolling of the Statute of Limitations

Plaintiffs seek equitable tolling of the statute of limitations dating back to October 26, 2022, the date this action was commenced. Plaintiffs argue that both prongs of the equitable tolling test are satisfied because (1) Plaintiffs have acted with "extreme diligence" in moving for conditional certification at the outset of the case and promptly renewing the motion twice thereafter; and (2) the circumstances here are "extraordinary" given the delays in deciding the motions to dismiss and the

motion for conditional certification. (Pl. Br. at 27-30). The Opposing Defendants generally, and Con Edison in particular, argue that equitable tolling must be decided on a case-by-case basis depending on whether a particular future *opt-in plaintiff*—not the existing Plaintiffs or their counsel—acted with diligence. (Con Ed Br. at 26-29; Concord Br. at 7-9; CESG Br. at 18-19).

The parties' arguments touch a nerve in this Circuit's jurisprudence of equitable tolling in FLSA cases. *See Huer Huang*, 2020 WL 5849099, at *13 (describing the "division of authority among the courts in this District" on this issue). Plaintiffs argue, in effect, for a rule of *categorical* equitable tolling for potential opt-in plaintiffs based on delays in deciding the conditional certification motion. Plaintiffs contend that "'equitable tolling is commonly granted upon the filing of a motion for conditional certification of a collective action" (Pl. Br. at 27 (quoting *Varghese*, 2016 WL 4718413, at *11)), and that "'[c]ourts routinely grant equitable tolling in the FLSA collective action context'" (*id.* at 28 (quoting *Yahraes v. Rest. Assocs. Events Corp.*, No. 10 Civ. 935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)); *see also* Pl. Rep. at 27 (contending that "the weight of authority in this Circuit" favors equitable tolling "during the pendency of a conditional certification motion").

Plaintiffs' characterization of the current state of the law is incorrect. If categorical equitable tolling once could have been described as "common[]" or "routine[]" in this Circuit, that description is no longer accurate. The decisional arc

30

has bent, especially since Magistrate Judge Gorenstein's decision in *Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017).

In *Contrera*, Judge Gorenstein emphasized that "the test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine." *Id.* at 724. In the case of an FLSA collective, that means it is the diligence of the potential opt-in plaintiffs that is relevant. Determining if equitable tolling is warranted for potential opt-in plaintiffs "is 'a highly factual issue that depends on what and when a plaintiff knew or should have known—an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed.'" *Id.* at 723-24 (quoting *Alvarado Balderramo v. Taxi Tours Inc.*, No. 15 Civ. 2181 (ER), 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017)). Since the potential future opt-in plaintiffs were not before him, Judge Gorenstein reasoned, there was "no basis for a ruling at this time" that equitable tolling was warranted because "there has been no showing that they have met the 'diligence' prong of the equitable tolling doctrine." *Id.* at 725. Accordingly, the plaintiffs' request for "a categorical ruling tolling the statute of limitations" was denied, "without prejudice to any application by a plaintiff for equitable tolling that conforms to the requirements of the equitable tolling doctrine." *Id.*

Since *Contrera*, numerous courts in this District have likewise concluded that equitable tolling in FLSA cases generally should be denied as a categorical matter, without prejudice to the rights of potential opt-in plaintiffs to make a future

application for tolling upon an appropriate showing of diligence and extraordinary circumstances.[8]  As summarized in one decision, "[b]ecause 'the application of the equitable tolling standard is highly case-specific, and the burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,' equitable tolling is generally not appropriate at the conditional certification stage."  *Muhammad*, 2025 WL 1276566, at *6 (quoting *Contrera*, 278 F. Supp. 3d at 726).

This Court agrees with the approach followed in these decisions and with Judge Gorenstein's analysis in *Contrera*.  Even assuming, *arguendo*, that Plaintiffs and their counsel here have acted diligently in pursuing conditional certification, and that the delay in ruling on Plaintiffs' motion for conditional certification could be described as extraordinary, those circumstances simply do not address or satisfy the first prong of the equitable tolling analysis: whether *the opt-in plaintiffs* have acted with reasonable diligence.  *See Contrera*, 278 F. Supp. 3d at 725 (finding cases that had equitably tolled the statute of limitations unpersuasive "because by focusing exclusively on the time it took the court to decide the conditional approval

---

[8] *See, e.g.*, *West*, 2025 WL 2555496, at *13; *Isayeva v. Diamond Braces*, No. 22 Civ. 4575 (KPF), 2025 WL 1903793, at *13 (S.D.N.Y. July 10, 2025); *Hossain v. Let's Eat, LLC*, No. 24 Civ. 4078 (JAV), 2025 WL 1718095, at *8 (S.D.N.Y. June 18, 2025); *Muhammad*, 2025 WL 1276566, at *6; *Son*, 768 F. Supp. 3d at 545-46; *Munoz v. Grp. US Mgmt. LLC*, 348 F.R.D. 192, 209 (S.D.N.Y. 2025); *Andujar v. SKYC Mgmt. LLC*, No. 23 Civ. 8764 (MKV), 2024 WL 4799893, at *4 (S.D.N.Y. Nov. 15, 2024); *Minyety v. TCK Sankar LLC*, No. 23 Civ. 9930 (JMF), 2024 WL 3498132, at *1 (S.D.N.Y. July 22, 2024); *Vilella v. Pup Culture LLC*, No. 23 Civ. 2291 (LJL), 2023 WL 7986562, at *8 (S.D.N.Y. Nov. 17, 2023); *Katz v. Equinox Holdings Inc.*, No. 20 Civ. 9856 (VEC), 2022 WL 2952143, at *3-4 (S.D.N.Y. July 26, 2022); *Moses*, 2020 WL 5813737, at *6; *Cuaya v. VI Dev. Grp., LLC*, No. 19 Civ. 4290 (JLC), 2020 WL 5494371, at *13-14 (S.D.N.Y. Sept. 10, 2020); *Taylor v. R.J.T. Motorist Serv., Inc.*, No. 19 Civ. 1155 (PMH), 2020 WL 4937483, at *4 (S.D.N.Y. Aug. 24, 2020); *Mogollan v. La Abundancia Bakery & Rest. Inc.*, No. 18 Civ. 3202 (GBD) (SDA), 2019 WL 1512714, at *5 (S.D.N.Y. Apr. 18, 2019).

motion, none make a finding that the opt-in plaintiffs for whom tolling is sought acted diligently in pursuing their rights").

To be sure, a good number of courts, post-*Contrera*, continue to find equitable tolling appropriate in FLSA cases based on the delay in deciding the conditional certification motion and the diligent efforts of the existing plaintiffs.[9]  If there is any decision that engages with and persuasively rebuts the reasoning of *Contrera*, however, the Court is unaware of it.  The fact that, absent equitable tolling, "'a substantial number of class members may now be time-barred through no fault of counsel or the class representative,'" *Santiago*, 2022 WL 476091, at *6 (quoting *Jackson*, 298 F.R.D. at 170), is not, in this Court's view, a sufficient justification for suspending the normal requirements of the equitable tolling doctrine in FLSA cases.  *See Contrera*, 278 F. Supp. 3d at 725-26 (discussing *Jackson*).  In fact, and importantly, an FLSA collective does *not* involve "class members" and the named plaintiffs in such a case are *not* "class representative[s]."  As the Second Circuit has emphasized, a collective action under Section 216(b) "is a nonrepresentative action" and, "[i]ndeed, Congress amended § 216(b) in 1947 expressly to put an end to

---

[9] *See, e.g.*, *Carrasquillo v. Westech Sec. & Investigation Inc.*, No. 23 Civ. 4931 (MKV) (VF), 2025 WL 1558920, at *10-11 (S.D.N.Y. Apr. 23, 2025); *Neor v. Acacia Network, Inc.*, No. 22 Civ. 4814 (ER), 2025 WL 958583, at *10 (S.D.N.Y. Mar. 31, 2025); *Orbetta v. Dairyland USA Corp.*, No. 20 Civ. 9000 (JPC), 2024 WL 3385640, at *6-9 (S.D.N.Y. July 12, 2024); *Lipstein v. 20X Hosp. LLC*, No. 22 4812 (DEH) (JW), 2024 WL 1073154, at *11 (S.D.N.Y. Jan. 24, 2024); *Hall v. City of New York*, No. 22 Civ. 10193 (GHW) (BCM), 2023 WL 6318082, at *15 (S.D.N.Y. Sept. 28, 2023); *Ademi v. Cent. Park Boathouse, LLC*, No. 22 Civ. 8535 (CM), 2023 WL 6211979, at *10 (S.D.N.Y. Sept. 25, 2023); *Tung v. Banzai Steakhouse Inc.*, No. 22 Civ. 5750 (KMK), 2023 WL 5827643, at *7 (S.D.N.Y. Sept. 8, 2023); *Santiago v. Info. Res. Inc.*, No. 20 Civ. 7688 (AT) (SN), 2022 WL 476091, at *6 (S.D.N.Y. Feb. 16, 2022); *King v. Fedcap Rehab. Servs., Inc.*, No. 20 Civ. 1784 (VSB), 2022 WL 292914, at *12 (S.D.N.Y. Feb. 1, 2022); *Mota v. Inter Connection Elec., Inc.*, No. 20 Civ. 7530 (GBD), 2021 WL 3188336, at *2 (S.D.N.Y. July 28, 2021); *O'Conner v. Agilant Sols, Inc.*, 419 F. Supp. 3d 739, 747-48 (S.D.N.Y. 2019).

representational litigation in the context of actions proceeding under § 216(b)."

*Scott*, 954 F.3d at 519.[10]

Relying on *Kassman v. KPMG LLP*, No. 11 Civ. 3743 (LGS), 2015 WL

5178400 (S.D.N.Y. Sept. 4, 2015), Plaintiffs argue in their Reply that an inquiry

into each opt-in plaintiff's level of diligence would be "impractical," "impossible,"

and "a pointless drain on resources." (Pl. Rep. at 25-26). But while *Kassman*

granted equitable tolling to over 1,000 opt-in plaintiffs, without requiring an

individual inquiry into their diligence, it did so *after* the motion for conditional

certification had been granted, notice had been provided, and the opt-in plaintiffs

had filed their consent forms. *Kassman*, 2015 WL 5178400, at *2. Here, these

things have yet to occur. The Court thus has no idea how many, if any, collective

members will submit opt-in forms and whether it would be appropriate to group

them together for equitable tolling purposes. *See Contrera*, 278 F. Supp. 3d at 726

(acknowledging opt-in plaintiffs could "share common circumstances that may allow

for an equitable tolling ruling that governs plaintiffs sharing those characteristics").

Plaintiffs also seem to suggest that the Court can rule now that all future

hypothetical opt-in plaintiffs exercised reasonable diligence in asserting their rights

because the collective "has no way of knowing about this action without the benefit

---

[10] In the class action context, under the rule of *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), the filing of a timely class action tolls the running of the statute of limitations for all class members. But given the stark differences in the statutory framework governing FLSA collective actions and traditional Rule 23 class actions, the *American Pipe* tolling rule has not been imported into the FLSA collective context, however desirable such a result might be from a policy perspective. *See Huer Huang*, 2020 WL 5849099, at *13-14 ("[T]he language of FLSA and the Supreme Court's holdings do not allow for a rule of equitable tolling similar to *American Pipe* whereby the statute stops running merely upon the filing of a FLSA claim or a motion for conditional certification").

of notice." (Pl. Rep. at 26). But it would be inappropriate for the Court to make such a factual determination now. Indeed, the present record precludes such a determination, as no fewer than 20 Employees have *already* opted into this action, *without* having had the benefit of a notice of its pendency.[11]

Equitable tolling may properly apply "'where the defendant has concealed the existence of a cause of action from the plaintiff.'" *Son*, 768 F. Supp. 3d at 545 (quoting *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014)). But Plaintiffs "have not alleged that Defendants actively concealed the existence of a cause of action from the opt-in plaintiffs." *Id.* (cleaned up). "Nor have Plaintiffs offered specific details as to any individual potential opt-in plaintiff who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights." *Id.* (citation omitted). Such circumstances, if alleged, will be considered if and when opt-in plaintiffs file consent forms and seek equitable tolling.

The Court therefore denies Plaintiffs' motion for categorical equitable tolling, without prejudice to an application for equitable tolling by members of the collective who may opt-in to this action.

---

[11] As noted above, the 25 Plaintiffs include eight Named Plaintiffs in the SAC and 17 Opt-In Plaintiffs. However, when the action was originally commenced there were only five named plaintiffs. (Dkt. No. 1). Three individuals who subsequently opted in (Plaintiffs Bundrick, Allicott, and Rosario, Jr.) were added as Named Plaintiffs in the FAC and then the SAC. (*See* Dkt. Nos. 11, 37, 67; FAC at 1; SAC at 1).

**CONCLUSION**

For the reasons stated above, (1) Plaintiffs' motion for conditional certification of an FLSA collective is **GRANTED** on the conditions set forth herein; and (2) Plaintiffs' motion for equitable tolling of the statute of limitations is **DENIED**.

The Clerk is respectfully requested to close the pending motion at Dkt. No. 221.

**SO ORDERED.**

Dated:        September 24, 2025
              New York, New York

_____
GARY STEIN
United States Magistrate Judge